**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:15-cv-765

EDWARD K. QUICK,

          Plaintiff,

v.

FRONTIER AIRLINES, INC.,
AND MICHELE ZEIER, AN INDIVIDUAL,

          Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

**THIS ACTION IS EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1).**

COMES NOW the Plaintiff, Edward K. Quick, by and through his attorneys, the Law Office of Thomas G. Jarrard, PLLC and Crotty and Son Law Firm, PLLC, and alleges:

**<u>PARTIES</u>**

1.    Plaintiff, Edward K. Quick (hereinafter "Quick" or "Plaintiff") resided in the State of Colorado at all times pertinent hereto.

2.    Defendant, Frontier Airlines, Inc., ("Frontier") is a corporation formed in, and licensed to conduct business within, the State of Colorado, with its principal office located at 7001 Tower Road, Denver, Colorado 80249, and its registered agent identified as Corporation Service Company, 1560 Broadway Ste. 2090, Denver, Colorado 80202.

3.      Defendant, Michele Zeier is the Labor Relations Director for Frontier Airlines.  Ms. Zeier works for Defendant Frontier at its Denver location and lives in the State of Colorado.

4.      For the purposes of 38 U.S.C. § 4303(4), each of the defendants are private employers.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is conferred on this Court by 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a Uniformed Services Employment and Reemployment Rights Act ("USERRA") action brought against a private employer.  This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under laws of the United States, and under 28 U.S.C. § 1343(a)(4), because Plaintiff seeks to secure relief under an Act of Congress that protects civil rights.

6.      Venue is proper in this district under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b)(2). Defendant Frontier, Inc. is a private employer that maintains places of business in the district of this United States District Court, and a substantial part of the events giving rise to the claims in this action occurred in this district.  Defendant Frontier maintains one of its primary transportation hubs at the Denver International Airport and employs persons who live in Denver, Colorado.

## CLAIMS FOR RELIEF

7.      Mr. Quick is a veteran of the United States Army and Reserve.

8.      All of Mr. Quick's military discharge records reflect honorable military service.

9.      Mr. Quick's applicable military service periods do not exceed 5 years.

10.     Mr. Quick began working for Frontier in March 15, 2004, in Denver, Colorado as a First Officer.  Mr. Quick's seniority date was later adjusted to March 4, 2002.

11.     Mr. Quick held the position of First Officer throughout his employment with Frontier.

12.     As a First Officer, Mr. Quick's primary responsibilities included flying a commercial passenger aircraft as an airline transport pilot.

13.     Frontier was at all relevant times on notice that Mr. Quick was a member of the Army Reserve.

14.     On June 18, 2007, Mr. Quick gave Frontier notice of his military service obligation for annual training of June 19, 2007 to September 30, 2007, and requested military leave.  His notice and request included specific notice to Frontier of his reemployment rights under USERRA.

15.     Mr. Quick left work at Frontier to perform his military obligations on June 19, 2007.

16.     On September 27, 2007, Mr. Quick gave Frontier another notice of his military service obligation for annual training October 1, 2007 to October 31, 2007, and requested military leave.  His notice and request included specific notice to Frontier of his reemployment rights under USERRA.

17.     During his military leave Mr. Quick received orders to deploy to Iraq.

18.     On November 8, 2007, Mr. Quick gave Frontier another notice of his military service obligation for deployment to Iraq, November 1, 2007 to May 1, 2008, and requested military leave.  His notice and request included specific notice to Frontier of his reemployment rights under USERRA.

19.    Mr. Quick received additional orders between May 2008 and June 28, 2014.  During these periods of military leave from Frontier, Mr. Quick piloted aircraft in support of combat operations in Iraq and Afghanistan as well as in support of operations in Columbia.

20.    Mr. Quick's military orders ended on June 28, 2014.

21.    On September 23, 2014, Mr. Quick spoke by phone with his supervisor at Frontier, Joseph Thibodeau.  Mr. Quick told Mr. Thibodeau about his (Mr. Quick's) USERRA rights. Mr. Quick gave Mr. Thibodeau notice of Mr. Quick's intent to return to work at Frontier on September 25, 2014.  Mr. Quick informed Mr. Thibodeau that he, Mr. Quick, had incurred disabilities on active duty that may impact his employment at Frontier.  Later that day, Mr. Quick emailed Mr. Thibodeau a notice of intent to return to work to on September 25, 2014.

22.    On September 24, 2014, Mr. Thibodeau responded to Mr. Quick's email, citing Department of Labor USERRA regulations, attaching the same - - citations that made clear that Defendants were required to reemploy Mr. Quick.  Mr. Thibodeau alleged in his email that, before Mr. Quick was eligible for reemployment Mr. Quick was required to: (1) produce military service records; (2) produce a medical certification; (3) undergo drug screening; and (4) attend a "New Hire Orientation class."   Mr. Quick responded that he would bring his military records with him when he reported to work the next day.  However, Mr. Thibodeau directed Mr. Quick to send documentation by U.S. mail or email, and reiterated that once the documents were received Mr. Quick was required to undergo a drug screening and other medical requirements before being reemployed.

23.    On September 25, 2014, Mr. Quick emailed copies of his military records to Mr. Thibodeau, along with a description of the pertinent USERRA reemployment requirements and

statutory citation - - - citations that made clear that Defendants were required to reemploy Mr. Quick regardless of company policy.

24.     Frontier did not reemploy Mr. Quick in September 2014.

25.     On October 1, 2014, Frontier's Director of Labor Relations, Michelle Zeier, emailed Mr. Quick, stating that she had received the military documentation that Mr. Quick had sent to Mr. Thibodeau, and requested to schedule a time to discuss questions that she had about the documents as well as Mr. Quick's medical status.  Mr. Quick responded that, "[a]nytime is fine for a phone call" or that he was willing to stop in at her office, and that he was "open to all options," to discuss his reemployment position.

26.     On about October 7, 2014, Ms. Zeier held an unpaid in-person meeting with Mr. Quick. In that meeting, Mr. Quick told Ms. Zeier about his USERRA rights, asked about his employment and retirement benefits, and requested to know what pay and position he would be returning to.  Rather than reemploy Mr. Quick, Ms. Zeier concluded the meeting and requested that Mr. Quick provide more military records documenting his military service.

27.     On October 15, 2014, Mr. Quick emailed his military discharge records to Ms. Zeier.

28.     On October 30, 2014, Ms. Zeier emailed Mr. Quick to request more copies of his military orders.  Mr. Quick promptly traveled to Office Depot, and scanned and emailed his orders to Ms. Zeier.

29.     Mr. Quick was not reemployed in October 2014.

30.     On November 12, 2014, Ms. Zeier emailed Mr. Quick, stating that an HR specialist would call him about beginning the "paperwork process for return to active status." (*i.e.* reemployment).

31.     Mr. Quick was required to satisfy company medical requirements and take "reentry drug and alcohol tests" unpaid.

32.     Mr. Quick was not reemployed in November 2014.

33.     On December 10, 2014, Mr. Quick emailed Ms. Zeier asking her to, "please let me know my report date to return to work?"

34.     On December 11, 2014, Ms. Zeier emailed Mr. Quick stating that she was confused, and, asked if Mr. Quick wanted to schedule a meeting to discuss "what you would like to do regarding position/LDT & leave of absence?"   On Friday, December 12, 2014, Mr. Quick responded:

> Hi Michele,
>
> Please give me your earliest report date as I eagerly wait my return to Frontier.   We can continue to discuss my pay rate upon my return.  I am available as early as this Monday the 15th.
>
> Thanks,
>
> Ed

35.     On December 12, 2014, Mr. Quick emailed Ms. Zeier again, stating he was ready to return to work.

36.     On December 23, 2014, Ms. Zeier directed Mr. Quick to attend a January 5, 2015, New Hire Orientation.

37.     Mr. Quick was not reemployed in December 2014.

38.     On January, 2015, Mr. Quick was required to attend a New Hire Orientation class unpaid.

39.     On January 16, 2014, Mr. Quick emailed Ms. Zeier asking her to confer, informally, with a Department of Labor Veterans Employment Training Service representative about his USERRA rights and rate of pay upon his return to employment.

40.     On January 26, 2014, Mr. Quick emailed Ms. Zeier about his USERRA rights and his employment status; not being returned to work, not being paid properly or given a proper rate of pay, seniority, retirement benefits and employee benefits not being reinstated immediately upon return as required under USERRA.  And, complaining that he has not been returned to work, and, that "not hearing back from you is troubling…Please respond."  Ms. Zeier responded by email from a smartphone, stating that she would check on the seniority and benefit issues.

41.     Mr. Quick asked again about his USERRA rights, his pay, and retirement benefits, informing Ms. Zeier that when he left for military service he was paid as a Captain in training, but that his proposed pay rate was reduced.  Ms. Zeier responded that the pay was based on the application of escalator principal (a term of art in USERRA litigation).  Mr. Quick again asked if Ms. Zeier was willing to discuss the matter informally with the DOL, or if she just wanted Mr. Quick to "file a formal DOL complaint."

42.     On January 27, 2014, Ms. Zeier responded to Mr. Quick's benefits complaint stating that she spoke with a Benefits Manager, "and determined that you are eligible to enroll in benefits. There is a 30 day waiting period after your return date before benefits become effective."  Ms. Zeier's email continued, stating that Mr. Quick was required to provide Frontier with leave of absence documentation by February 2, 2014.  The email includes a string of email addresses including, Jacklyn Peter and Brian Mumaugh, who are believed to be percipient witnesses in Mr. Quick's current and prior USERRA complaints against Frontier.

Mr. Quick responded.

[…] USERRA requires that returning service members are:

1.      Reinstated promptly (Normally within two weeks)

2.      Medical starts on the day of Reinstatement (All Medical)

3.      The retuning service member will be returned at the same rate of pay and escalator will be applied for the returning veteran.

4.      USERRA trumps any and all contracts because it is a floor not the ceiling as set out by Federal Law not State Law and the CBA.

5.      I do not wish to ask the Union (FAPA) to file an interpretation on my behalf because they are part of the problem.

Please let me know if the Company wishes to talk with DOL informally before I file a formal complaint.

43.     On January 28, 2014, Ms. Zeier responded, acknowledging that (under USERRA) there is no waiting period for benefits to be reinstated.  Ms. Zeier also alleged that, Frontier "followed all of the requirements under USERRA to complete your return.  You have not, however provided the paperwork that we have repeatedly asked you to provide.  Please do so by February 2."    Ms. Zeier also provided Mr. Quick the name and phone number of attorney Brian Mumaugh, as the company representative with regard to Mr. Quick's USERRA complaint.

44.     On January 29, 2015, Ms. Zeier sent Mr. Quick a corrected phone number for attorney Brian Mumaugh.

45.     On January 30, 2015, Mr. Quick emailed Ms. Zeier and requested a copy of the company Short and Long Disability Plans so he could review them.   And, still desiring to return to work, Mr. Quick inquired (again) what position of employment Frontier had for him.

46.     Mr. Quick was not reemployed in January 2015.

47.     On February 9, 2015, Ms. Zeier sent a several page email to Mr. Quick, which begins, "In further considering the issues related to your requested reemployment with Frontier Airlines […]"   Incredibly, the email goes on to state that "because you have indicated no interest in becoming reemployed […], Frontier has provisionally reemployed you as a First Officer" without work or pay.   The email further alleges that Mr. Quick is not medically qualified for a reemployment position, and, therefore must request long term disability.   The email continues, stating that if Mr. Quick wants to request reemployment and work in a non-pilot position he may search on the internet for open positions.   In closing, the email acknowledges that Mr. Quick gave Frontier all of his Military Discharge records, but, that orders for June 2007 to October 2007 were missing.

48.     Mr. Quick responded, immediately, providing a copy of his orders that he previously gave to Frontier in 2007.   Mr. Quick addressed his, newly alleged, reemployment status stating that the claim of "provisional reemployment" to an unpaid position was a fiction and violated USERRA.   Mr. Quick noted that he has been waiting, unpaid, for five months to be reemployed. Mr. Quick outlined the reemployment steps required by USERRA.   Mr. Quick again, requested copies of his employee benefits plan document, retirement plan documents and that required contributions be calculated and made to his retirement plans.

49.     Mr. Quick was not reemployed in February 2015.

50.     On March 31, 2015, Frontier paid Mr. Quick for 3.5 hours of work, although Mr. Quick did not work in the previous 30 days.

51.     Mr. Quick was not reemployed in March 2015.

52.     The benefits of employment as a pilot at Frontier Airlines include seniority and non-seniority based benefits and privileges.  The non-seniority based benefits include, accompanied travel benefits, participation in various retirement, pension and other savings plans, such as "FAPA Invest", and other defined benefit and partial company matching 401K defined contribution plans.

53.     Since September 2014, Mr. Quick has repeatedly requested: (1) reemployment; (2) access to his full employment benefits; (3) that contributions be made to his various retirement plans; and (4) asserted his rights under USERRA and informed Frontier that it was violating those rights, to no avail.

54.     At all times relevant hereto, Frontier maintained a posted notice where employers customarily place notices for employees as required by 38 U.S.C. § 4334.

55.     At all times relevant hereto, Frontier maintained policies that prohibit unlawful retaliation and discrimination.

56.     At all times relevant hereto, Frontier had a duty to act in compliance of the law of USERRA and ensure its agents follow the Act.

57.     As a result of Frontier's unlawful conduct in violation of USERRA, Mr. Quick has suffered a loss of earnings and other benefits of employment in an amount to be proved at trial.

58.     As a result of Frontier's unlawful conduct in violation of USERRA and the necessity of this action to seek a remedy, Mr. Quick fears further retaliation against his employment rights

by Frontier or its managers, directors or employees.  As such, the employment relationship that Mr. Quick enjoyed at Frontier prior to the filing of this action is irreparably damaged through no fault of Mr. Quick's.

59.     To the extent that Frontier alleges application of any agreement that constitutes any limitation on Mr. Quick's rights under USERRA, it is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. § 4302.

## CAUSES OF ACTION

60.     Frontier violated Mr. Quick's rights as guaranteed by the USERRA 38 U.S.C. §§ 4301 to 4335, including but not limited to: 38 U.S.C. § 4302(b) unlawful prerequisites; 38 U.S.C. § 4311 discrimination and retaliation in employment; 38 U.S.C. §§ 4312, 4313 reemployment rights; § 4316, and 20 C.F.R. § 1002.247, rights and benefits of persons absent from employment for service in the armed forces; 38 U.S.C. § 4318, denial of retirement and pension benefits; and 38 U.S.C. §4323(d), 20 C.F.R. § 1002.312(c), willful violations of his USERRA rights.

## (CAUSE OF ACTION NO. 1, DISCRIMINATION 38 U.S.C. § 4311(a))

61.     Plaintiff re-alleges paragraphs 1 through 60.

62.     Frontier's actions caused the violation of Mr. Quick's USERRA rights such that Mr. Quick's obligation to perform service in the uniformed service was a motivating factor in decisions by Frontier which adversely affected Mr. Quick's employment.

63.     Frontier unlawfully discriminated against Mr. Quick, among other ways, by denying Mr. Quick employment and benefits of employment on the basis of his membership, service, or obligation to perform service in the uniformed service, a right provided by USERRA.

**(CAUSE OF ACTION NO. 2, DISCRIMINATION/RETALIATION 38 U.S.C. § 4311(c))**

64.     Plaintiff re-alleges paragraphs 1 through 63.

65.     Frontier's actions caused the violation of Mr. Quick's USERRA rights such that Mr. Quick's action to enforce a protection afforded him under USERRA, or to exercise a right provided by USERRA, was a motivating factor in Defendant's decisions to deny Mr. Quick employment and benefits of employment.

66.     Frontier unlawfully retaliated against Mr. Quick, among other ways, by denying Mr. Quick employment, terminating his employment, and denying him benefits of employment because he took action to enforce a protection afforded to him under USERRA or to exercise a right provided by USERRA such as making complaints and contacting the Department of Labor regarding his USERRA rights.

**(CAUSE OF ACTION NO. 3, VIOLATION OF 38 U.S.C. §§ 4312 & 4313)**

67.     Plaintiff re-alleges paragraphs 1 through 66.

68.     Frontier action violated 38 U.S.C. §§ 4312 and 4313 of USERRA, among other ways, by failing or refusing to:

   (a) promptly reemploy Mr. Quick;

   (b) reemploy Mr. Quick in the position of employment which he would have been employed had his employment with Frontier not been interrupted by military service, or a position of like seniority, status and pay, the duties of which Mr. Quick was qualified to perform;

(c) reemploy Mr. Quick in any other position which is equivalent in seniority, status and pay, the duties of which Mr. Quick was qualified to perform or would become qualified to perform with reasonable efforts by Frontier;

(d) reemploy Mr. Quick in a position which is the nearest approximation to a position above;

(e) make reasonable efforts to accommodate Mr. Quick's disabilities;

(f) make reasonable efforts to train or assist Mr. Quick to be qualified for a reemployment position above; and

(g) violated USERRA by requiring Mr. Quick to undergo pre-reemployment evaluations, applications, and testing without pay or benefits.

**(CAUSE OF ACTION NO. 4 – VIOLATION OF 38 U.S.C. § 4316)**

69.     Plaintiff re-alleges paragraphs 1 through 68.

70.     Frontier violated 38 U.S.C. § 4316, among other ways, by denying Mr. Quick the rights and benefits determined by seniority and such other rights and benefits not determined by seniority Mr. Quick would have attained if he had remained continuously employed.

71.     Frontier violated 38 U.S.C. § 4316, among other ways, by terminating Mr. Quick's employment, without cause, within the protection period provided in the Act.

**(CAUSE OF ACTION NO. 6 – VIOLATION OF USERRA 38 U.S.C. § 4318)**

72.     Plaintiff re-alleges paragraphs 1 through 71.

73.     USERRA, 38 U.S.C. § 4318(a)(2)(B), (b)(1), provides that a service member's pension benefits will continue to accrue while he or she is engaged in uniformed services.

74.     USERRA, 38 U.S.C. § 4318(b)(3), mandates that the employer must make pension contributions "on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)." 38 U.S.C. § 4318(b)(3).

75.     Frontier's actions violate USERRA, because Frontier has failed to provide any retirement contributions, or reinstate any of Mr. Quick various retirement plans.

**(CAUSE OF ACTION NO. 7, WILLFUL VIOLATIONS – 38 U.S.C. § 4323)**

76.     Plaintiff re-alleges paragraphs 1 through 75.

77.     Frontier' conduct was willful as defined by 38 U.S.C. §4323(d), 20 C.F.R. § 1002.312(c), because Mr. Quick gave Frontier multiple notices that its actions violated USERRA and Frontier showed reckless disregard for the matter, and Frontier recklessly disregard their own policies and posted USERRA work-place notices.

## JURY TRIAL DEMAND

Mr. Quick hereby demands a trial by jury.

## REQUEST FOR RELIEF

Mr. Quick respectfully prays for:

A.      Compensation for all injury and damages suffered by Mr. Quick including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law.

B.      Plaintiff's reasonable attorney, expert fees, and costs, pursuant to 38 U.S.C. § 4323, and as otherwise provided by law.

C.      For such other and further relief as this Court deems just and equitable, including injunctive relief to preserve Mr. Quick's benefits of employment and to enjoin future violations of the USERRA under 38 U.S.C. § 4323.

Dated:  April 13, 2015

LAW OFFICE OF THOMAS G. JARRARD, PLLC

By: _____/s/_____
        THOMAS G. JARRARD
        1020 North Washington Street
        Spokane, WA 99203
        Telephone:  425 239-7290
        TJarrard@att.net

CROTTY & SON LAW FIRM, PLLC

By: _____/s/_____
        MATTHEW Z. CROTTY
        905 W. Riverside Ave. Ste 409
        Spokane, WA 99201
        Telephone: 509 850 7011
        Matt@crottyandson.com

Attorneys for Edward K. Quick