IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00765-REB-KMT

EDWARD K. QUICK,

    Plaintiff,

v.

FRONTIER AIRLINES INC. and MICHELE ZEIER, an individual,

    Defendants.

## DEFENDANTS' FIRST AMENDED ANSWER TO COMPLAINT AND JURY DEMAND

Defendants Frontier Airlines Inc. and Michele Zeier, by and through their attorneys Holland & Hart LLP and pursuant to Fed. R. Civ. P. 15(a)(1)(A), for their Amended Answer to Plaintiff Edward K. Quick's ("Quick") Complaint and Jury demand in the above-captioned matter, hereby admit, deny and state as follows:

### GENERAL ALLEGATIONS

1. Defendants are without knowledge or information sufficient to form a belief as to the allegations in paragraph 1 of the Complaint and, therefore, deny the same.

2. Defendants admit the allegations of Paragraph 2 of the Complaint.

3. Defendants admit the allegations of Paragraph 3 of the Complaint.

4. Defendants admit that Frontier is a statutory employer. Defendants deny that Ms. Zeier is a statutory employer.

### JURISDICTION AND VENUE

5. Defendants admit that jurisdiction is proper in this Court.

6. Defendants admit that venue is proper in this Court.

## CLAIMS FOR RELIEF

7. Defendants admit the allegations of paragraph 7 of the Complaint.

8. Defendants admit that all military records provided to them by Quick reflect honorable military service. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of paragraph 8, and therefore deny them.

9. Paragraph 9 contains a legal conclusion to which no response is required. To the extent the Court requires a response, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore deny them.

10. Defendants admit the allegations of paragraph 10 of the Complaint.

11. Defendants admit the allegations of paragraph 11 of the Complaint.

12. Defendants admit the allegations of paragraph 12 of the Complaint.

13. Defendants admit that Frontier is aware that Quick was a member of the Uniformed Services. Defendants lack knowledge and information sufficient to form a belief as to whether this is or was true at all "relevant times, and therefore deny the same.

14. Defendants admit that Quick provided Frontier with military orders documents on June 18, 2007 for the dates stated on those orders, requested leave, and that said orders included a USERRA notice.

15. Defendants admit that Quick left work at Frontier on June 19, 2007 with the

stated purpose of performing military obligations. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15, and therefore deny them.

16. Defendants admit that Quick provided Frontier with military orders on September 27, 2007 for the dates stated on those orders, requested leave, and that said orders included a USERRA notice.

17. Defendants admit that some of the military orders documentation provided to Frontier by Quick after his request for reinstatement in 2014 indicate deployment to Iraq.

18. Defendants admit that upon Frontier's lawful request after Quick requested reinstatement in 2014, Quick provided military orders for the dates stated in paragraph 18. Defendants lack information sufficient to form a belief as to whether these orders were provided to Frontier on November 8, 2007, and therefore deny the same.

19. Defendants admit that upon Frontier's lawful request after Quick requested reinstatement in 2014, Quick provided orders to Defendants for some or all dates within the period stated in paragraph 19. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19, and therefore deny them.

20. In response to paragraph 20 of the Complaint, Defendants admit Quick provided military orders documents to Frontier that appear to set forth a "retirement" date from the uniformed services consistent with the date stated in paragraph 20. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20, and therefore deny them.

21. Defendants admit that Quick communicated with Mr. Thibodeau, Chief Pilot, at

Frontier on or about September 24, 2014 regarding returning to work. Defendants also admit that on or about that day Quick also emailed Mr. Thibodeau stating he wished to "report" for work the next day. Defendants deny all remaining allegations of Paragraph 21.

22.     Defendants admit that Mr. Thibodeau responded to Quick's communication by email on or about the same day they were received, indicating that Frontier would begin the return to work process immediately, and requesting, per applicable law, copies of Quick's military orders proving that his request for reinstatement was timely and the character of his service was not disqualifying.  Defendants admit that Quick was informed that in order to facilitate his return at his former position of pilot and First Officer he would need to provide proof of continued FAA medical qualifications, pass a drug screening, and also attend an abbreviated employee orientation given his extended time away.  Defendants admit that Mr. Quick was informed that there was no need to actually report for work until his medical qualifications to fly could be ascertained, and that he could mail or email the documents requested.  Defendants deny that Quick was told to provide FAA medical information and a drug screen "before Mr. Quick was eligible for reemployment" and deny all remaining allegations of paragraph 22.

23.     Paragraph 23 contains a legal conclusion regarding the "reemploy" of Quick, to which no response is required.  To the extent the Court requires a response, Defendants deny this allegation.  Defendants admit that on September 25, 2014 Quick emailed military records to Mr. Thibodeau and cited certain provisions of USERRA, as well as disclosed that he had an unspecified disability which prevented him from obtaining FAA medical qualifications to fly. Defendants deny all remaining allegations of paragraph 23.

24. Defendants admit that it began the return to work process for Mr. Quick on or about September 24, 2014, but that he had not yet been returned to active employment status because Frontier had only learned on Thursday, September 25, 2014 that Quick believed he could not medically qualify to return to his former position as a pilot per FAA regulations. Frontier denies all remaining allegations of paragraph 24.

25. Defendants admit that on October 1, 2014, Ms. Zeier emailed Quick about his return to work, referred to Quick's statement that he was medically unable to resume duties as a First Officer, referred to questions Quick had asked of Mr. Thibodeau, referred to Quick's military paperwork, indicated she had some "follow-up questions" for Quick, and asked to schedule a call with Quick. Defendants also admit that Quick responded by email the same day, in which he stated he could not get FAA certification to fly and was on temporary disability, that he nevertheless wanted to return to work at Frontier, referred to his apparent desire to begin being paid as a Captain, and that he was open to all options. Defendants deny all remaining allegations of paragraph 25 of the Complaint.

26. Defendants admit that Ms. Zeier met with Mr. Quick on October 7, 2014, and Quick was not paid for the same. Defendants admit there was discussion about Quick's desire to file a long term disability claim ("LTD") with Frontier's carrier, his benefits per USERRA, his desire to be reemployed as a Captain, and that he realized Frontier would "need more time" to sort out all these issues. Defendants deny all remaining allegations of paragraph 26.

27. Defendants admit that on October 15, 2014 Quick emailed military records documents to Ms. Zeier, including a Form DD-214 dated October 29, 2010.

28. Defendants admit that on October 30, 2014 Ms. Zeier requested, and Quick then

emailed to her, copies of additional military records. Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 28, and therefore deny them.

29. Defendants admit that as of October 31, 2014 Quick was still undergoing the reinstatement process to return to active employment status, and that he had acknowledged that more time would be needed as the parties worked to resolve various issues. Defendants deny all remaining allegations of paragraph 29.

30. Defendants admit that on November 12, 2014, Ms. Zeier emailed Quick stating that an HR specialist would call him regarding return to active status paperwork, and that Ms. Zeier would also follow up with him regarding "other return detail." Defendants deny all remaining allegations of paragraph 30.

31. Defendants admit that Quick was required to take a post-leave drug test for which he was not paid, identical to all employees returning from extended leave. Defendants deny all other allegations of paragraph 31.

32. Defendants admit that as of November 30, 2014, Quick was still undergoing the reinstatement process to return to active employment status, and that he had acknowledged that more time would be needed as the parties worked to resolve various issues. Defendants deny all remaining allegations in paragraph 32.

33. Defendants admit the allegations of paragraph 33 of the Complaint.

34. Defendants admit that on December 11, 2014, Ms. Zeier emailed Quick to say she was "confused" given his conflicting requests to Frontier regarding filing an LTD claim and going on a related leave of absence, but then ignoring the application for LTD that he had

requested which he was sent on December 10, 2014, and asking instead when he should "report" to work. Defendants also admit that Quick then responded to Ms. Zeier with an email as quoted in paragraph 34. Defendants deny all remaining allegations in paragraph 34.

35. Defendants admit that on December 12, 2014 Quick emailed Ms. Zeier stating "I am willing to wait if needed for Frontier to give me a start date due to the logistics of my return and the Holidays if needed. The 15th was just to let you know I am ready when you are." Defendants deny all remaining allegations in paragraph 35.

36. Defendants admit that on December 23, 2014, Ms. Zeier directed Quick to attend a "New/Return from extended LOA Employee Orientation" on January 5th, 2015. Defendants deny all remaining allegations in paragraph 36.

37. Defendants admit that as of December 31, 2014, Quick was still undergoing the reinstatement process for return to active employment status, and that he had acknowledged that more time would be needed as the parties worked to resolve various issues, including in his December 12, 2014 email when he acknowledged the "logistics of my return" and stated "I am ready when you are." Defendants deny all remaining allegations in paragraph 37.

38. Defendants admit that Quick attended an orientation on January 5, 2015, but deny that the same was "unpaid." Defendants deny all remaining allegations in paragraph 38.

39. Defendants admit that Quick sent Ms. Zeier an email on January 26, 2015 indicating that a government representative was willing to talk to her informally about Frontier's "responsibilities" to returning service members and Quick's pay issues. Defendants deny all remaining allegations of paragraph 39 of the Complaint.

40. Defendants deny that Frontier's reinstatement of Quick to employment was not

compliant with USERRA.  Defendants admit that Quick sent an email to Ms. Zeier on January 26, 2014 at 11:51a.m. in which he inquired about his "status," raised issues about the status of his health benefits reinstatement and his seniority date, asked about his "pay rate" and if Ms. Zeier had "reached out to the DOL," and that he purported to not have not heard from Ms. Zeier.  Defendants admit that Ms. Zeier responded to this email the same day, stating that she would check on the purported benefits and seniority issues, reiterating Frontier's decision regarding pay classification, and asking why Quick had not filed the leave of absence paperwork as previously discussed.  Defendants deny all remaining allegations in paragraph 40.

41.     Defendants admit that Quick was reinstated to a First Officer classification in compliance with the "escalator principle" and applicable provisions of the applicable pilot collective bargaining agreement, pending identification of an appropriate reinstatement position given that Quick could not perform the First Officer position.  Defendants admit that Quick sent another email to Ms. Zeier on January 26, 2015 at 1:12pm in which he disputed Frontier's pay rate decision, raised issues about his retirement benefits status, referred to "going out on STD," and alleged various purported USERRA violations.  Defendants admit Quick sent Ms. Zeier another email on January 26, 2015 in which he asked if the Company was "willing to talk with the DOL informally" and referred to "fil[ing] a formal complaint."  Defendants deny all remaining allegations in paragraph 41.

42.     Defendants admit that on January 27, 2015 Ms. Zeier responded to Quick by email and referred to a 30-day waiting period for benefit eligibility.  This information was corrected the next day, as no waiting period applied.  Defendants also admit that Ms. Zeier reiterated to Quick the process for applying for a leave of absence given that he had stated he

was unable to perform the First Officer position.  Defendants admit that Jacalyn Peter is Director of Human Resources and Labor Relations for Frontier and may have relevant knowledge regarding the defense of Quick's claims.  Defendants deny that its defense counsel, Brian Mumaugh, communicated directly with Quick regarding his current claims, and deny that he is a necessary witness of any kind.  Defendants admit Quick sent an email to Ms. Zeier on January 27, 2015 which contains the statements quoted in paragraph 42.  Defendants deny all remaining allegations of paragraph 42.

43.   Defendants admit that Ms. Zeier clarified the lack of a benefit waiting period by email to Quick on January 28, 2015, and reiterating to Quick that he had not provided paperwork which he had been repeatedly asked to provide in connection with his reinstatement process. Defendants admit that Ms. Zeier provided contact information for Frontier's counsel only in connection with Quick's request that someone representing Frontier speak with the Quick's apparent contacts at the U.S. Department of Labor, and deny that Mr. Mumaugh's contact information was provided for any other purposes.  Defendants deny all remaining allegations of paragraph 43.

44.   Defendants admit that a corrected phone contact for Mr. Mumaugh was sent to Quick in regard to the purposes stated in Defendants' response to paragraph 43 of the Complaint, above, and for no other purposes.

45.   Defendants admit that on January 30, 2015, Quick emailed Ms. Zeier, in which he stated in part: "I would like to get a copy of the Short and Long Disability Plans for my review. In the mean time I am ready to return to work with my Disability and would like to know

what position you have for me? I will call Krista back on my benefits today." Defendants deny all remaining allegations of paragraph 45.

46. Defendants deny the allegations of paragraph 46 of the Complaint.

47. Defendants admit Ms. Zeier sent an email to Quick on February 9, 2015 which stated as follows:

Dear Ed,

In further considering the issues related to your requested reemployment with Frontier Airlines, and since you stopped by the General Office last Thursday, February 5, a brief summary of where things stand will be useful to all parties.

Prior to your military leave, you were employed as a First Officer at Frontier Airlines. When you notified us of your intent to return from military leave in September 2014, we began the process of returning you to active status. However, at the time you notified us of your intent to return, you also notified us that you were not able to hold an FAA First Class or Second Class Medical Certificate. As you know, a Medical Certificate is a necessary requirement for all pilots, including First Officers.

Under USERRA, an employee must be qualified for any reemployment position. Due to your inability to hold an FAA Medical Certificate, you are not qualified to work as a pilot for Frontier Airlines, either a First Officer or a Captain. In addition, and beyond the impediment of your inability to hold the required FAA Certificate, you have yet to address the successive and multiple training and upgrade failures that you experienced first in 2006, and then again in 2007 immediately prior to your departure for military leave. As you acknowledged in a recent email, you never successfully completed any of your previous attempts to upgrade to Captain. As reflected in your pilot training records, your most recent failure to upgrade to Captain was on June 18, 2007. Thus, even assuming you were able to obtain an FAA First Class Medical Certificate (which you have told us you are not), you would only be eligible for reemployment as a Captain if you were able to successfully train and complete the required upgrade to that position. Similarly, you would only be eligible for reemployment as a First Officer if you were able to successfully train and complete the required requalification training. You would also be subject to the possibility of having your training history reviewed through the Training Review Board (TRB) under the collective bargaining agreement under either of these scenarios.

Because you are unable to hold an FAA Medical Certificate, any attempt to place you into the required training – including upgrade training – to become reemployed as either a First Officer or a Captain would be unproductive. Furthermore, it is indisputable that you never successfully upgraded to Captain prior to your leave, and that you are not currently eligible or able to work as either a First Officer or Captain. If you believe you could qualify for reemployment as a First Officer or upgrade to Captain with reasonable efforts by Frontier (and notwithstanding your inability to hold an FAA Medical Certificate), please notify us immediately.

Currently, because you have indicated no interest in becoming reemployed into a different position at Frontier (*i.e.*, other than as a First Officer or Captain), Frontier has provisionally reemployed you as a First Officer with all of your accrued seniority. You are currently eligible to participate in and use your Frontier employee benefits. However, due to your inability to hold an FAA Medical Certificate, you are currently unable to work, and thus unable to receive First Officer's pay.

Based on our conversations and email exchanges, and because you are not medically qualified or currently trained to work as a pilot, you have indicated that you wish to apply for Long Term Disability (LTD). I have told you a

-10-

number of times that if you wish to apply for LTD benefits, you must complete the LTD paperwork and submit it. You have not responded to my requests for you to complete the LTD paperwork. We cannot do that for you. If you are having any difficulty completing the paperwork, please let me know. The ultimate decision as to whether you meet the qualifications for LTD benefits is up to the insurance carrier, not Frontier. Frontier anticipates that if you qualify for LTD benefits, these benefits will be awarded based on your current position as a First Officer, even though you are not qualified for that position (and even though you cannot become so through reasonable efforts by Frontier).

If you do not wish to apply for LTD benefits, but would rather return to work for Frontier in a capacity other than as a pilot, you may also pursue open positions for which you are qualified, or for which you could become qualified through reasonable efforts by Frontier. Because the position of pilot in the airline industry is unique, there are no jobs that are closely comparable. Without more information from you about your interests and abilities, it is impossible for us to know what open positions you are either interested in or qualified – with reasonable training – to hold. If you are sincere about pursuing other positions, please go to www.flyfrontier.com/careers and review if there are openings that you would like to discuss. We are available to meet to discuss open positions with you; please let me know if you would like to do that. We cannot guarantee how long any posted position will be available and the openings change frequently.

Finally, we are still missing some of your military paperwork. While you provided copies of orders and discharge papers for almost all of your leave period, we do not have copies of orders for the period from June of 2007 up through October 2007. Further, that period of time is not reflected in your discharge orders that you provided to us. If we missed something you have already provided that covers those months in 2007, please let us know.

Defendants deny all remaining allegations of paragraph 47.

       48.      Defendants admit that on February 11, 2015 Quick sent an email to Ms. Zeier which stated as follows:

Michelle,

I disagree with your summary on several points, I don't plan to argue with you. So I will simply clarify for you what has actually occurred since I requested reemployment back on September 23, 2014, and what USERRA requires.

In September, I timely gave Frontier notice of my intent to return to employment, I informed Frontier I am disabled and not able to fly, but I am qualified to perform many many other jobs at Frontier, and I want to return to work --- whether or not that takes a little reasonable accommodation or training, that is fine.

Instead, Frontier has made me wait around for five months, without pay, and I have jumped through each new hoop that is tossed my way. I have yet to be reemployed in any postion, or paid whatsoever. Frontier has not provided me with any information about how to reestablish my retirement benefits and it demands that I return disability paperwork, but won't provide me those plan documents even though I have asked for them several times.

As to the alleged provisional, unpaid job that you mention in your email, that is a fiction at best, and nowhere near qualifies as anything like reemployment as required by USERRA. Under USERRA Frontier must reemploy me FIRST, then we can work out the details of what job I may need to shift to after I am IN FACT reemployed. Once reemployed, THEN Frontier has the obligation to figure out what jobs I am qualified to do, and I am happy to help you with that. I am not, however, required to wait for months and months (coming up on a half year now) after asking for my job back, and apply to open jobs on the Frontier web-site, anybody can do that. But, a returning service member, and especially a disabled service member must be reemployed. That is what USERRA requires.

In sum, I have not been reemployed, and Frontier has the obligation to reemploy me. The below responds to your requests and repeats my requests to date. Please provide me the information I am requesting.

1) Please see the attached Military Service Records for the entire period 18 Jun 2007 through 28 Jun 2014. I provided all these records to Frontier on or about the dates they were created, so I am not sure what records you are missing. If you think there is a period of time missing from the attached records, then tell me the specific dates, and I will direct you to the record and page that covers those dates.

2) I have asked for a copy of the short and long term disability plan documents at least three times. Please attach those and email them to me so I have the information I need to make a decision about returning any related applications.

3) Please also email me the proper recoupment forms and copies of the plan documents for my 401K and the DC plan.

4) Please send to me the calculations of the contributions that will be made on my behalf to the two above retirement plans.

5) Please send to me a specific explanation for what is the purpose of subjecting me to a TRB when Frontier knows that I am disabled, seeking to return to work, but will not be able to fly for Frontier again? In other words, if I won't be flying for Frontier again, what is the purpose of telling me about a TRB?

Defendants deny all remaining allegations of paragraph 48.

49.     Defendants deny the allegations of paragraph 49 of the Complaint.

50.     Defendants admit that Quick was paid for his attendance at an orientation on January 5, 2015, and that Quick was otherwise unable to work as a First Officer. Defendants deny all remaining allegations of paragraph 50.

51.      Defendants deny the allegations of paragraph 51 of the Complaint.

52.     Defendants admit that pilots at Frontier are eligible for various seniority and non-seniority based benefits per Company policy and applicable collective bargaining agreements. Defendants deny all remaining allegations of paragraph 52.

53.     Defendants admit that Quick gave notice asking to be reinstated to employment at Frontier but also indicated he could not return to his former position as a pilot, and that he wanted to file an LTD claim. Defendants also admit that Quick requested reinstatement of

benefits and retirement contributions, and otherwise referred to USERRA.  Defendants deny all remaining allegations of paragraph 53.

54.     Defendants admit the allegations of paragraph 54 of the Complaint.

55.     Defendants admit the allegations of paragraph 55 of the Complaint.

56.     Defendants admit that Frontier complies with USERRA, but otherwise states that paragraph 56 contains legal conclusions to which no response is required. To the extent the Court requires a response, Defendants deny all allegations of paragraph 56.

57.     Defendants deny the allegations of paragraph 57 of the Complaint.

58.     Defendants deny the allegations of paragraph 58 of the Complaint.

59.     Defendants deny the allegations of paragraph 59 of the Complaint.

## CAUSES OF ACTION

60.     Defendants deny the allegations of paragraph 60 of the Complaint.

### (CAUSE OF ACTION NO. 1, DISCRIMINATION 38 U.S.C. § 4311(a))

61.     In response to paragraph 61, Defendants incorporate paragraphs 1-60 above as if fully set forth herein.

62.     Defendants deny the allegations of paragraph 62 of the Complaint.

63.     Defendants deny the allegations of paragraph 63 of the Complaint.

### (CAUSE OF ACTION NO. 2, DISCRIMINATION/RETALIATION 38 U.S.C. § 4311(c))

64.     In response to paragraph 64, Defendants incorporate paragraphs 1-63 above as if fully set forth herein.

65.     Defendants deny the allegations of paragraph 65 of the Complaint.

66.     Defendants deny the allegations of paragraph 66 of the Complaint.

### (CAUSE OF ACTION NO. 3, VIOLATION OF 38 U.S.C. §§ 4312 & 4313)

67. In response to paragraph 67, Defendants incorporate paragraphs 1-66 above as if fully set fort here herein.

68. Defendants deny the allegations of paragraph 68 of the Complaint, including all subparts.

### (CAUSE OF ACTION NO. 4 – VIOLATION OF 38 U.S.C. § 4316)

69. In response to paragraph 69, Defendants incorporate paragraphs 1-68 above as if fully set forth herein.

70. Defendants deny the allegations of paragraph 70 of the Complaint.

71. Defendants deny the allegations of paragraph 71 of the Complaint.

### (CAUSE OF ACTION NO. 6 *[SIC]* – VIOLATION OF USERRA 38 U.S.C. § 4318)

72. In response to paragraph 72, Defendants incorporate paragraphs 1-71 above as if fully set forth herein.

73. Paragraph 73 of the Complaint contains a legal conclusion to which no response is required.  To the extent the Court requires a response, Defendants deny all allegations of paragraph 73.

74. Paragraph 74 of the Complaint contains a legal conclusion to which no response is required. To the extent the Court requires a response, Defendants deny all allegations of paragraph 74.

75. Defendants admit that relevant retirement contributions are in process of determination and will be made as soon as practicable.  Defendants deny all remaining allegations of paragraph 75 of the Complaint.

### (CAUSE OF ACTION NO. 7, WILLFUL VIOLATIONS – 38 U.S.C. § 4323)

76. In response to paragraph 76, Defendants incorporate paragraphs 1-75 above as if fully set forth herein.

77. Defendants deny the allegations of paragraph 77 of the Complaint.

### ANSWER TO PLAINTIFF'S REQUEST FOR RELIEF

Defendants deny that Quick is entitled to any of the relief sought as alleged in the Complaint and Quick's Request for Relief, including but not limited to Defendants' denial of each and every element of damage prayed for in Paragraphs (A) through (C) of the Request for Relief.

### GENERAL DENIAL

Defendants deny all allegations of the Complaint not specifically admitted.

### SEPARATE AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim or claims upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's participation in the uniformed services was not a motivating factor in any decision taken by Defendants in response to Plaintiff's request for reinstatement under USERRA, and Defendants would have taken all relevant actions regardless of Plaintiff's participation in the Uniformed Services.

### THIRD DEFENSE

Plaintiff's claims for damages may be denied or reduced because Plaintiff has failed to mitigate his damages.

### FOURTH DEFENSE

Plaintiff's claim for damages may be offset or barred, in whole or in part, by the receipt of collateral income.

### FIFTH DEFENSE

Plaintiff's actions are barred by the doctrines of waiver, laches, estoppel, consent, acquiescence, ratification, and unclean hands.

### SIXTH DEFENSE

Plaintiff's right to reinstatement is barred by the provisions of 38 USC 4312(d)(1)(B).

### SEVENTH DEFENSE

Plaintiff's right to reinstatement is barred under the provisions of 38 USC 4312(d)(1)(A).

WHEREFORE, having fully answered Quick's Complaint, Defendants seek judgment against Plaintiff and an order from this court as follows:

a. Dismissing Plaintiff's claims with prejudice;

b. Awarding Defendants such other and further relief as this Court, under any applicable law or in its discretion and inherent power, deems just and proper.

Dated this 18th day of June, 2015.

        Respectfully submitted,

        *s/William R. Dabney*
        William R. Dabney
        HOLLAND & HART LLP
        555 Seventeenth Street, Suite 3200
        Denver, Colorado  80202
        Telephone:  (303)295-8000
        Facsimile:   (720) 235-0229
        wrdabney@hollandhart.com

        *s/Brian M. Mumaugh*
        Brian M. Mumaugh
        HOLLAND & HART LLP
        6380 South Fiddlers Green Circle, #500
        Greenwood Village, CO  80111
        Telephone:  (303) 290-1600
        Facsimile:   (303) 713-6255
        bmumaugh@hollandhart.com

        *s/Bradford J. Williams*
        Bradford J. Williams
        HOLLAND & HART LLP
        555 Seventeenth Street, Suite 3200
        Denver, Colorado  80202
        Telephone:  (303)295-8000
        Facsimile:   (720) 223-3271
        bjwilliams@hollandhart.com

        **ATTORNEYS FOR DEFENDANTS**

-18-

### CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Thomas Gregory Jarrard, Esq.
Law Office of Thomas G. Jarrard
1020 North Washington Street
Spokane, WA  99201-2237
tjarrard@att.net

Matthew Zachary Crotty
Crotty & Son, PLLC
421 West Riverside Avenue
Suite 1005
Spokane, WA  99201
matt@crottyandson.com

s/*William R. Dabney*
William R. Dabney
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado  80202

7851978_1