**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00765-REB-KMT

EDWARD K. QUICK,

        Plaintiff,

v.

FRONTIER AIRLINES, INC., and
MICHELE ZEIRE, an Individual

        Defendants.

---

**PROPOSED SCHEDULING ORDER**

---

**1.  DATE OF CONFERENCE AND APPEARANCES OF COUNSEL**

The scheduling conference was held on July 15, 2015 at 9:45 a.m.  Appearing for the

parties were:

    a.  For the Plaintiff:  Thomas G. Jarrard
       Law Office of Thomas G. Jarrard, PLLC
       1020 North Washington Street
       Spokane, WA 99203

    b.  For the Defendants: William R. Dabney
       HOLLAND & HART LLP
       555 Seventeenth Street, Suite 3200
       Denver, Colorado 80202
       Telephone: (303)295-8000
       Facsimile: (720) 235-0229
       wrdabney@hollandhart.com

7

## 2. STATEMENT OF JURISDICTION

Subject matter jurisdiction is conferred on this Court by 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a Uniformed Services Employment and Reemployment Rights Act ("USERRA") action brought against a private employer. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under laws of the United States, and under 28 U.S.C. § 1343(a)(4), because Plaintiff seeks to secure relief under an Act of Congress that protects civil rights.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.    Plaintiff:  Mr. Quick began working for Defendants (hereinafter "Frontier") in March 15, 2004, in Denver, Colorado as a First Officer.  Mr. Quick held the position of First Officer or Captain throughout his employment with Frontier.  Mr. Quick's primary responsibilities included flying a commercial passenger aircraft as an airline transport pilot.  Frontier was at all relevant times on notice that Mr. Quick was a member of the Army Reserve.  On June 18, 2007, Mr. Quick gave Frontier notice of a military service obligation and requested military leave.  His notice and request included specific notice to Frontier of his reemployment rights under USERRA. Subsequently, Mr. Quick received continuous sets of orders, and although under no obligation to do so, continued to give Frontier notice of the same.  Mr. Quick's military orders ended on June 28, 2014.  Mr. Quick's applicable military service periods did not exceed 5 years as defined in USERRA.  In September 2014, less than ninety days after his military service ended, Mr. Quick gave Frontier oral and written notice of his intent to return to work.  But, has never been reemployed.

8

Since September 2014, Mr. Quick has repeatedly requested: (1) reemployment; (2) access to his full employment benefits; (3) that contributions be made to his various retirement plans; and (4) asserted his rights under USERRA and informed Frontier that it was violating those rights, to no avail.

Frontier violated Mr. Quick's rights as guaranteed by the USERRA 38 U.S.C. §§ 4301 to 4335, including but not limited to: 38 U.S.C. § 4302(b) unlawful prerequisites; 38 U.S.C. § 4311 discrimination and retaliation in employment; 38 U.S.C. §§ 4312, 4313 reemployment rights; § 4316, and 20 C.F.R. § 1002.247, rights and benefits of persons absent from employment for service in the armed forces; 38 U.S.C. § 4318, denial of retirement and pension benefits; and 38 U.S.C. §4323(d), 20 C.F.R. § 1002.312(c), willful violations of his USERRA rights.

1.     Frontier's actions caused the violation of 38 U.S.C. § 4311(a).  Frontier unlawfully discriminated against Mr. Quick, among other ways, by denying Mr. Quick employment and benefits of employment on the basis of his membership, service, or obligation to perform service in the uniformed service, a right provided by USERRA.

2.     Frontier's actions caused the violation of 38 U.S.C. § 4311(c).  Frontier unlawfully retaliated against Mr. Quick, among other ways, by denying Mr. Quick employment, terminating his employment, and denying him benefits of employment because he took action to enforce a protection afforded to him under USERRA or to exercise a right provided by USERRA such as making complaints and contacting the Department of Labor regarding his USERRA rights.

3.     Frontier's actions violated 38 U.S.C. §§ 4302(b), 4312 and 4313 of USERRA, among other ways, by failing or refusing to: promptly reemploy Mr. Quick;

9

reemploy Mr. Quick in the position of employment which he would have been employed had his employment with Frontier not been interrupted by military service, or a position of like seniority, status and pay, the duties of which Mr. Quick was qualified to perform; reemploy Mr. Quick in any other position which is equivalent in seniority, status and pay, the duties of which Mr. Quick was qualified to perform or would become qualified to perform with reasonable efforts by Frontier;  reemploy Mr. Quick in a position which is the nearest approximation to a position above; make reasonable efforts to accommodate Mr. Quick's disabilities; make reasonable efforts to train or assist Mr. Quick to be qualified for a reemployment position above; and violated USERRA by requiring Mr. Quick to undergo pre-reemployment evaluations, applications, and testing without pay or benefits.

4.      Frontier violated 38 U.S.C. § 4316, among other ways, by denying Mr. Quick the rights and benefits determined by seniority and such other rights and benefits not determined by seniority Mr. Quick would have attained if he had remained continuously employed.

5.      Frontier violated 38 U.S.C. § 4316, among other ways, by terminating Mr. Quick's employment, without cause, within the protection period provided in the Act.

6.      Frontier's actions violated 38 U.S.C. § 4318 because Frontier has failed to provide any retirement contributions, or reinstate any of Mr. Quick various retirement plans.

7.      Frontier's conduct was willful as defined by 38 U.S.C. §4323(d), 20 C.F.R. § 1002.312(c), because Mr. Quick gave Frontier multiple notices that its actions

10

violated USERRA and Frontier showed reckless disregard for the matter, and Frontier recklessly disregard their own policies and posted USERRA work-place notices.

8.     To the extent that Frontier alleges application of any agreement that constitutes any limitation on Mr. Quick's rights under USERRA, it is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. § 4302.

          b.  Defendants:

Plaintiff Edward Quick had been a First Officer with Defendant Frontier Airlines until June, 2007, when he left for military service.  In September 2014 Plaintiff gave Frontier notice of his intent to return to work as a pilot, more than seven years after he departed. Prior to departing for military service, Plaintiff had begun the attempt to "upgrade" from First Officer to Captain.  However, Plaintiff had failed these training requirements, and was subject to a Training Review Board ("TRB") under the applicable collective bargaining agreement.  In light of the significant technical aviation deficiencies exposed by his failing attempts to achieve Captain status, the result of the pending TRB was likely to have been termination of Plaintiff's employment.  However, just prior to the advent of the TRB, Plaintiff suddenly notified Frontier that he was taking military leave, and departed a day later.

Pending discovery, Defendants do not concede at this time that Plaintiff's manner of taking leave, the period of his service, or his manner of notifying Frontier of his intent to return, are consistent with USERRA's requirements entitling him to job reinstatement.

Nevertheless, upon hearing from Plaintiff in 2014 that he intended to return to employment, Frontier began the process of reinstating Mr. Quick to active status as a

11

pilot and First Officer. Plaintiff would then be required to undergo the TRB proceedings that had been suspended when he took his military leave.  Plaintiff was asked to provide his current FAA medical certification in order to be reinstated as a First Officer. At that point, Plaintiff stated that he had sustained a "disability" and could not obtain any required medical FAA certification. Plaintiff did not at any time explain to Frontier what disability he had incurred.  Plaintiff did not indicate what new positions he felt he was qualified for or could perform, or offer any input whatsoever as to reemployment in any particular position.

Plaintiff did however repeatedly inquire about being reinstated as a Captain (despite his inability to pilot any aircraft per FAA requirements), and stated that he wanted to apply for Long-Term disability ("LTD") under Frontier's disability insurance plan.  Frontier disagreed that Plaintiff should be reinstated as a Captain. Absent any understanding from Plaintiff about what new position he might perform, Frontier proceeded to reinstate Plaintiff as a First Officer until such position could be identified. Plaintiff was reinstated to his health benefits and his other employee benefits, took a drug test and attended orientation.  Plaintiff was sent forms and information he requested regarding LTD and a leave of absence pending his LTD application's acceptance.

Despite the above, Plaintiff repeatedly and ambiguously inquired about when he should "report" for work, without offering any discussion about what position he could perform, what training he might need, or what disability accommodations he might require. He also never informed Frontier one way or the other about whether he intended to apply for the LTD benefits he had repeatedly asked about, and never

12

submitted leave of absence paperwork.

In an attempt to start a constructive dialogue, Frontier finally asked Plaintiff to review the airline's employment website and offer some input as to what job positions might be appropriate, so the parties could, if possible, identify a suitable position. Plaintiff never did so, and then filed this lawsuit.

Regardless, Defendants do not concede that Plaintiff, if he is even eligible for reinstatement under USERRA, would be entitled to reinstatement to any position other than his prior position as First Officer. Under the escalator principle, this would entail the continuation of the TRB process through to its completion.

Defendants deny that they have engaged in any discrimination or retaliation against Plaintiff, or otherwise violated USERRA in any manner.  Defendants deny any willful violation of the law, and deny that Plaintiff is entitled to any damages whatsoever.

      c.  Other Parties:  Not Applicable.

## 4.  UNDISPUTED FACTS

The following facts are undisputed:

1.      Edward K. Quick resided in the State of Colorado at all times pertinent hereto.

2.      Defendant, Frontier Airlines, Inc. is a corporation formed in, and licensed to conduct business within, the State of Colorado, with its principal office located at 7001 Tower Road, Denver, Colorado 80249, and its registered agent identified as Corporation Service Company, 1560 Broadway Ste. 2090, Denver, Colorado 80202.

3.      Defendant, Michele Zeier is the Labor Relations Director for Frontier Airlines.  Ms. Zeier works for Defendant Frontier at its Denver location and lives in the State of Colorado.

4.      For the purposes of 38 U.S.C. § 4303(4), Frontier is a private employer.

5.      Mr. Quick is a veteran of the United States Army and Reserve.

6.      The military discharge records provided to Frontier by Mr. Quick reflect honorable military service.

7.      Mr. Quick began working for Frontier in March 15, 2004, in Denver, Colorado as a First Officer.  Mr. Quick's seniority date was later adjusted to March 4, 2002.

8.      Mr. Quick held the position of First Officer throughout his employment with Frontier.

9.      As a First Officer, Mr. Quick's primary responsibilities included flying a commercial passenger aircraft as an airline transport pilot.

10.     Frontier was on notice that Mr. Quick was a member of the Army Reserve.

11.     On June 18, 2007, Mr. Quick gave Frontier notice of a military service obligation for annual training of June 19, 2007 to September 30, 2007, and requested military leave.   The notice and request provided to Frontier included specific notice to Frontier of his reemployment rights under USERRA.

12.     Mr. Quick left work at Frontier to perform his military obligations on June 19, 2007.

14

13.     On September 27, 2007, Mr. Quick gave Frontier another notice of military service obligation for annual training October 1, 2007 to October 31, 2007, and requested military leave.   The notice and request provided to Frontier included specific notice to Frontier of his reemployment rights under USERRA.

14.     Military orders provided to Frontier by Mr. Quick indicate deployment to Iraq.

15.     In 2014, Mr. Quick provided to Frontier military orders documents indicating service dates of November 1, 2007 to May 1, 2008.  .

16.     In 2014 Mr. Quick provided additional orders documents to Frontier stating additional dates between May 2008 and June 28, 2014.

17.     In 2014 Mr. Quick provided to Frontier military orders documents referencing military retirement effective June 28, 2014.

18.     On or about September 23, 2014, Mr. Quick spoke by phone with his supervisor at Frontier, Joseph Thibodeau.  .

19.     On September 24, 2014, Mr. Thibodeau responded to Mr. Quick's email.

20.     On September 25, 2014, Mr. Quick emailed copies of military records to Mr. Thibodeau, along with certain references to USERRA.

21.     On October 1, 2014, Frontier's Director of Labor Relations, Michelle Zeier, emailed Mr. Quick, stating that she had received the military documentation that Mr. Quick had sent to Mr. Thibodeau, and requested to schedule a time for discussion.

22.     On October 15, 2014, Mr. Quick emailed military records to Ms. Zeier, including a Form DD-214 dated October 29, 2010.

23.     On October 30, 2014, Ms. Zeier emailed Mr. Quick to request additional military orders.  Mr. Quick then emailed additional orders documents to Ms. Zeier.

24.     On November 12, 2014, Ms. Zeier emailed Mr. Quick, stating that an HR specialist would call him about the "paperwork process for return to active status."

25.     At all times relevant hereto, Frontier maintained a posted notice where employers customarily place notices for employees as required by 38 U.S.C. § 4334.

26.     At all times relevant hereto, Frontier maintained policies that prohibit unlawful retaliation and discrimination.

## 5.  COMPUTATION OF DAMAGES

Mr. Quick seeks the remedies of declaratory relief, economic and non-economic damages, interest, USERRA penalties and liquidated damages, attorney fees and costs pursuant to 38 U.S.C. § 4323(d), (e) and (h) as follows:

1.     An order to reemploy Mr. Quick at full pay and benefits.

2.     The value of back pay and unpaid employment benefits in an amount equal what Mr. Quick would have enjoyed had he been properly reemployed as required under USERRA, plus prejudgment interest from early October 2014 to the date this matter is resolved.  This value cannot be accurately calculated until some discovery is complete, but, to date is estimated to be not less than $150,000 and continues to accrue because Defendants have failed to make any substantial payment to Mr. Quick for wages or benefits since his return from military service in September 2014.

16

3.       The value of front pay and employment benefits in an amount equal to what Mr. Quick would have enjoyed had he been properly reemployed as required under USERRA from the date this matter is resolved through retirement, an amount determined by a finder of fact.  This value cannot be calculated until some discovery is complete, but is estimated to be not less than $1,000,000.00.

4.       The value of pension, 401K and other employee equity and retirement benefits and employer matching or employer contributions to the same that Mr. Quick would have enjoyed had he been properly reemployed as required under USERRA, plus prejudgment interest from early October 2014 to the date this matter is resolved. This value cannot be calculated until some discovery is complete, Defendants have failed to make any substantial payment to Mr. Quick for his retirement benefits since his return from military service in September 2014.

5.       The value of Pension, 401K and employee retirement benefits and employer matching or employer contributions to the same that Mr. Quick would have enjoyed had he been properly reemployed as required under USERRA from the date this matter is resolved through retirement, an amount to be determined by a finder of fact.

6.       Liquidated damages equal to the sum value of the items listed above in Nos. 1 to 5 above, for the willful violation of Mr. Quick's USERRA rights.  An amount determined by a finder of fact.

### 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.       Date of Rule 26(f) meeting:  June 26, 2015.

17

b.      Names of each participant and party represented: Plaintiff was represented by Thomas G. Jarrard of the Law Office of Thomas G. Jarrard, PLLC. Defendant was represented by William R. Dabney, Holland & Hart LLP.

c.      Statement as to when Rule 26(a)(1) disclosures were made or will be made: July 9, 2015.

d.      Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1): The Parties propose no changes to Rule 26(a)(1) disclosures.

e.      Statement concerning any agreements to conduct informal discovery: None at this time.

f.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:  The parties agree: (1) to produce all documents identified in initial disclosures with their initial disclosures, discovery requests, and all responses electronically whenever practicable; (2) to bate-stamp all records produced in discovery (Quick #### for Plaintiff and Frontier #### or Zier #### for Defendants); and (3) the to the Rules for Disclosure of Electronically Stored Information presented in ¶ g. below.

The Parties agree to accept service of notices of deposition for Party deponents through counsel.

Plaintiff agrees to preschedule all subpoenas for deposition with Defense counsel whenever practicable, and in compliance with Rule 30(b)(1) and LR 30.1 .

g.      Statement as to whether the parties anticipate that their claims or defenses will

18

involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:

Defendants Statement: This case is a single plaintiff employment case brought under USERRA.  The claims are essentially similar to most employment discrimination cases, and the central dispute involves the alleged failure to reinstate or reemploy the Plaintiff after his military service, and alleged related damages and claims.  Defendants do not believe these claims will involve an "extensive amount" of ESI.  At most there are emails between the parties which both parties already have, as well as any other non-privileged electronic communications by either party which may pertain to Plaintiff and the dispute.  Any such emails in the possession of either party can be readily gathered.  Any other personnel records and training records for Mr. Quick, and any other employment information related to Defendant Frontier's operation that may be relevant is all information that can be readily isolated and produced if appropriate, pursuant to properly formulated discovery requests. Defendants do not believe that extensive ESI discovery protocols such as those proposed by the Plaintiff are necessary for an employment case of this magnitude.

Plaintiff's Statement:

The following Rules for Discovery of Electronically Stored Information (ESI) are standard protocol for ESI derived from the Sedona Conference, used in most District Courts, avoid the potential of issues arising, and are not onerous.  The Plaintiff requests that the Court enter an order with the following provisions:

**General Principles:**

1.      An attorney's zealous representation of a client is not compromised by

19

conducting discovery in a cooperative manner.  The failure of counsel or the parties to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and may subject them to the risk of sanctions in this case.

2.    The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)C) applies to this discovery plan.   To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should reasonably targeted, clear, and as specific as practicable.

**Standard for ESI Disclosures:**

Within 30 days after the Rule 26(f) conference each party shall disclose:

1. Custodians. The custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.

2. Non-custodial data sources. A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. Third Party Data Sources. A list of third party data sources, if any, likely to contain discoverable ESI (e.g. third party email and/or mobile device providers, "cloud" storage, etc.) and for each such source, indicate the extent to which a party is (or is not) able to preserve information stored in the third party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i). Note: Section C(2)(a)-(h) below sets

20

forth data sources and ESI which are not required to be preserved by the parties. Those data sources and ESI do not need to be included on this list.

**Standard for Preservation of ESI:**

With respect to ESI, the following provisions apply:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control. All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (C)(2) or (D)(1)-(2) below).

2. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

   e. Back-up data that are duplicative of data that are more accessible

elsewhere.

f. Server, system or network logs.

g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

h. Electronic data (e.g. email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), *provided* that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

3. The parties must confer and agree to add any other categories to the non-preservation list above.

**Standard for Addressing Privilege:**

1. With respect to privileged or attorney work product information generated after the filing of the complaint, the parties are not required to include any such information in privilege logs.

2. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), and the parties are not required to include any such information in privilege logs.

3. Inadvertent disclosure.   Information that contains privileged matter or attorney work product shall be immediately returned to the producing party (i) if such information appears on its face that it may have been inadvertently produced or (ii) if the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

**Other ESI Discovery Protocols**:

1. On-site inspection of electronic media. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology.  Discovery requests may include the use of search terms reasonably necessary to located ESI likely to contain discoverable information. Parties shall try to reach agreement on appropriate search terms before any query is performed.

> a. A producing party shall disclose what search terms, if any, were used to locate ESI likely to contain discoverable information. If search terms were not used, a party shall disclose the search methodology used to locate ESI likely to contain discoverable information.

> b. If search terms were used to locate ESI likely to contain discoverable information, a requesting party is entitled to no more than 5 additional terms or queries to be used in connection with further electronic searches absent a showing of good cause or agreement of the parties. The parties shall confer in good faith on the 5 additional terms or queries. Focused terms and queries, rather than overbroad ones (e.g., product and company names), shall be employed.

> c. For the purposes of this Protocol, and absent a showing of good cause, search terms returning more than 250 megabytes of data are presumed to be overbroad. The producing party shall search non-custodial data sources, emails, and other ESI maintained by the

23

custodians identified above.

3. Format. ESI shall be produced to the requesting party with searchable text, in PDF format.

4. Native files. Unless otherwise agreed to by the parties, the only files that should be produced in native format are files not easily converted to image format, including Excel, Access files, and drawing files.

5. Metadata fields.  The parties agree that metadata fields need not be initially produced in discovery.  Should an issue relating to metadata arise, the parties shall confer and agree on whether metadata is to be produced and if so, what metadata will be produced.

6. Costs.  The costs of discovery shall be borne by each party.  The Court may, however, apportion the costs of discovery among the parties, including discovery of ESI that is not reasonably accessible, upon a showing of unequal burdens, unreasonable requests, or other good cause.

h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:  The parties have discussed the potential for prompt settlement and/or resolution and will exchange offers and demands as the case proceeds.  The parties may also agree to utilize private or magistrate mediation.

## 7.  CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8.  DISCOVERY LIMITATIONS

a.      Modifications which any party proposes to the presumptive numbers of

depositions or interrogatories contained in the Federal Rules:  None.

b.      Limitations which any party proposes on the length of depositions:  None.

c.      Limitations which any party proposes on the number of requests for production and/or requests for admission:   None at this time.

d.      Other Planning or Discovery Orders:  None.

## 9.  CASE PLAN AND SCHEDULE

a.      Deadline for Joinder of Parties and Amendment of Pleadings: August 29, 2015.

b.      Discovery Cut-off:  January 18, 2016 (except that depositions of expert witnesses shall not be subject to this deadline, but instead shall be completed no later than 45 days before trial).

c.      Dispositive Motion Deadline:  February 19, 2016.

d.      Expert Witness Disclosure:

1.      The parties shall identify anticipated fields of expert testimony, if any.

Plaintiff:  Economic expert regarding the value of lost employment wages and benefits, forensic expert regarding electronically stored information, and USERRA expert regarding the statutory and regulatory exemptions and authority under the Act.

Defendant: One or more rebuttal experts to any experts ultimately designated by Plaintiff; a medical expert regarding Plaintiff's alleged disability, including a possible

25

Fed. R. Civ. P. 35 medical exam.[1]

2.      Limitations which the parties propose on the use or

number of expert witnesses.

Plaintiff: Three experts per side.

Defendant: Three experts per side.

3.      The parties shall designate all experts and provide opposing

counsel and any pro se parties with all information specified in Fed. R.

Civ. P. 26(a)(2) on or before October 15, 2015.

4.      The parties shall designate all rebuttal experts and provide

opposing counsel and any pro se party with all information specified in

Fed. R. Civ. P. 26(a)(2) on or before November 16, 2015.

e.      Identification of Persons to Be Deposed:

Plaintiff's Deponents:

1.      Defendant, Michele Zier, 7 hours

2.      30(b)(6) Corporate agent/s of the Defendant Frontier

Airlines, 7 hours.

3.      Jacalyn Peter, 5 hours.

4.      Brian Mumaugh, 2 hours.[2]

---

[1] The Plaintiff will object to, oppose and defend against any attempt to conduct discovery or insinuate irrelevant and prejudicial matters, such as these, in this litigation.

[2] Defendants' statement: Brian Mumaugh is counsel for the Defendants in this matter. Defendants object to and will oppose by all available means, including by motion for protective order, and for sanctions if appropriate, any attempt to depose Mr. Mumaugh.  Mr. Mumaugh is not a necessary witness to any material disputed issue,

5.      Cassie Micklich, 2 hours.

6.      Joseph Thibodeau, 7 hours.

7.      To be determined, Pilot Payroll and Benefits Specialist/s

for Defendant, 5 hours.

Defendants' Deponents:

1.      Edward Quick, 7 hours

2.      To be determined: relevant military personnel officers

and/or commanding officer(s) for Plaintiff in regarding to the

circumstances and timeline of his military service.[3]

f.      Deadline for Interrogatories:  December 15, 2015.

g.      Deadline for Requests for Production of Documents and/or Admissions:

December 15, 2015.

## 10. DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates

and times:

_____.

b.      A   final   pretrial   conference   will   be   held   in   this   case   on

_____at  o'clock  _____m.  A  Final  Pretrial  Order  shall  be

prepared by the parties and submitted to the court no later than seven (7)

days before the final pretrial conference.

---

and has no non-privileged information about this matter that cannot be sought via
deposition of other appropriate witnesses.
[3] The Plaintiff will object to, oppose and defend against any attempt to conduct
discovery or insinuate irrelevant and prejudicial matters, such as these, in this
litigation.

## 11.  OTHER SCHEDULING MATTERS

a.       Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: See Defendants' Statement regarding any attempted deposition of defense counsel Brian Mumaugh, footnote 2 at section 9 (e)(4), and Plaintiff's Statements (footnotes 1 and 3) regarding the use of any medical expert and military persons to be deposed or other testimony.

b.       Anticipated length of trial and whether trial is to the court or jury: Plaintiff estimates five days for trial.   Defendant estimates four days for trial.

c.       Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building,103 Sheppard Drive, Durango, Colorado 81303-3439.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of

this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this _____ day of ____, 20___.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge

APPROVED:

_____
THOMAS G. JARRARD
Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington Street
Spokane, WA 99201
Telephone: 425.239-7290
Tjarrard@att.net

*s/  William R. Dabney*
_____
WILLIAM R. DABNEY
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303)295-8000
Facsimile: (720) 235-0229
wrdabney@hollandhart.com

29

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

William R. Dabney
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303)295-8000
Facsimile: (720) 235-0229
wrdabney@hollandhart.com

Brian M. Mumaugh
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, #500
Greenwood Village, CO 80111
Telephone: (303) 290-1600
Facsimile: (303) 713-6255
bmumaugh@hollandhart.com

Bradford J. Williams
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303)295-8000
Facsimile: (720) 223-3271
bjwilliams@hollandhart.com

/s/ *Thomas G. Jarrard*
THOMAS G. JARRARD
Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington Street
Spokane, WA 99201
Telephone: 425.239-7290
Tjarrard@att.net