IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00765-REB-KMT

EDWARD K. QUICK,

    Plaintiff,

v.

FRONTIER AIRLINES INC. and MICHELE ZEIER, an individual,

    Defendants.

## DEFENDANTS' MOTION TO COMPEL DISCOVERY OF MEDICAL RECORDS AND DISABILITY-RELATED INFORMATION

Defendants Frontier Airlines, Inc. ("Frontier") and Michelle Zeier (collectively "Defendants"), hereby move this Court for an order compelling Plaintiff Edward Quick to produce medical records, disability benefits applications, and other information related to the alleged "disability" which his Complaint accuses Defendants of "failing or refusing" to "make reasonable efforts" to "accommodate" under the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

**I.     Introduction.**

As required by D.C.COLO.LCivR 7.1(A) and Fed. R. Civ. P. 37(a), Defendants' counsel has repeatedly conferred with opposing counsel (Mr. Jarrard) in attempt to resolve this discovery matter.  Reaching impasse, both counsel contacted the Court (Judge Tafoya's chambers) regarding an informal conference.  The Court then asked that the parties' submit briefing.

The Parties also informed the Court at that time that they were in agreement to expedite the briefing on this matter, and that Plaintiff would file his Response within a few days after receiving this Motion. The Parties also requested that the Court expedite any hearing it deems necessary, so that this dispute might be resolved prior to November 20, 2015, when the Parties have scheduled Plaintiff's deposition. The Court instructed Defendants to include their desire for expedited hearing as part of this Motion to Compel, and the parties hereby request such hearing at the Court's earliest convenience after briefing is complete. The Parties will file a motion for such hearing when briefing is complete.

## II.     Factual Background

This USERRA case alleges that Defendants did not properly "reemploy" Plaintiff, in part by "failing" to "accommodate" unspecified "disabilities" he incurred sometime during his seven-year leave of absence for military service. Complaint, ¶¶ 21, 68. Upon contacting Frontier for reemployment in September, 2014 after this military leave, Plaintiff provided documents stating that he retired from the Army in June, 2014 due to "disability." He also stated to Frontier that he could no longer perform his prior position of First Officer and airline pilot, because he could not obtain required FAA medical certification. First Amended Answer, ¶ 23. Simultaneously, he stated that he wished to apply for long-term disability benefits from the airline's insurance plan. *Id.*, ¶ 26.

Since this litigation began Frontier has learned via documents obtained through a FOIA request that Plaintiff told the U.S. Dept. of Labor in 2014 that he had sustained a traumatic brain injury while in the military, suffers from post-traumatic stress disorder ("PTSD"), and also has sleep apnea. Exhibit 3, ¶¶ 13, 15. In addition, Plaintiff apparently applied for social security

disability in 2013, and began receiving benefits in October, 2014. Exhibit 4, Plaintiff's Expert Report, at 5. To receive his SSDI benefits, Quick would have been required to swear that he could not "engage in any substantial gainful activity because of a medically-determinable physical or mental impairment(s)."

Despite all of the above, Plaintiff himself refused at all times to provide to Frontier even the most basic factual information about the nature or extent of his unknown "disabilities." Moreover, he refused to offer any information as to what new position he preferred, was qualified for, or could perform, with or without additional efforts or accommodations by Frontier. Instead he ambiguously and repeatedly continued to insist only that he be "reemployed" to some unspecified "position."

To make matters more confusing, Plaintiff also made repeated demands that in connection with his "reemployment" Frontier was obligated under USEERA to start paying him as an airline Captain, since prior to the start of his military leave seven years ago he had been trying (and repeatedly failing) to upgrade from First Officer to Captain. He made these demands despite simultaneously stating that he could not medically qualify to resume a pilot's duties, let alone those of Captain. The entire issue of reemployment under USERRA in this case was rendered even more difficult because a pilot's job is unique in the industry. There are no other obviously similar jobs in status and pay for a career First Officer who can no longer fly, and who repeatedly failed even to achieve the basic qualifications for the Captain position.

As a result, Frontier reemployed Plaintiff to the extent possible under the circumstances by 1) reinstating him to active status, provisionally as a First Officer, with all attendant company seniority, pending identification of a suitable job he could perform, 2) sending him to return-

-3-

from-leave orientation and paying him for the same, 3) renewing his employee access and identification badge, and 4) maintaining and/or reinstating his health, dental, flight, and other benefits (which Plaintiff continues to use).  Defendants have now also made catch-up contributions to Plaintiff's retirement plan consistent with USERRA.  The parties continued to engage in protracted email and personal communications for several months, and on February 9, 2015, Frontier strongly reiterated that it could not unilaterally divine what positions might be appropriate without Plaintiff's cooperation, as follows:

> If you do not wish to apply for LTD benefits, but would rather return to work for Frontier in a capacity other than as a pilot, you may also pursue open positions for which you are qualified, or for which you could become qualified through reasonable efforts by Frontier. Because the position of pilot in the airline industry is unique, there are no jobs that are closely comparable. Without more information from you about your interests and abilities, it is impossible for us to know what open positions you are either interested in or qualified – with reasonable training – to hold. If you are sincere about pursuing other positions, please go to www.flyfrontier.com/careers and review if there are openings that you would like to discuss. We are available to meet to discuss open positions with you; please let me know if you would like to do that.

Defendants' First Amended Answer, ¶ 47.

Plaintiff responded that he could perform "many other jobs," and then paradoxically asked again for copies of the Company's disability plans.  *Id.* at ¶ 48.  He still did not identify or suggest any of these "other jobs," nor offer any disability information, or how it might affect his ability to perform any particular position.  Frontier made further fruitless attempts to obtain such basic information from Plaintiff through early March, 2015, but he ignored them, and instead filed suit on April 13, 2015.

Left with no reasonable method of determining Plaintiff's ability to perform any particular job, Frontier sent Plaintiff a letter in July, 2015 suggesting two positions for him to consider (Crew Scheduler and Aircraft Parts Buyer), even though Frontier had no factual information suggesting whether Plaintiff could perform those jobs, with or without additional

accommodations or training. Plaintiff made no response to that letter. Plaintiff remains an active employee at Frontier, but for obvious reasons is not currently assigned to any position.

Despite the above failures ever to communicate any relevant job information to Frontier, Plaintiff has now disclosed an expert damages report in this litigation, in which he finally identifies certain jobs he now apparently claims he "could have performed." These include SIM instructor, platform instructor, Director or Manager of Training, Assistant Chief Pilot or "other management positions since he has experience in those roles." Exhibit 4, at 3. Frontier had no information at any relevant time to suggest that Plaintiff "could have performed" any of these demanding, high-level jobs consistent with his unknown disabilities.

Further, given that Plaintiff is currently receiving social security disability, presumably due to some kind of traumatic brain injury and/or PTSD, this suggests substantial question as to what jobs or functions he can or cannot perform, and what accommodations may or may not be reasonable. Certainly, the key management and training jobs now alleged in Plaintiff's expert report (with their significant operations, management, and safety components), imply ample reason for concern as to whether Plaintiff possesses any of the necessary capabilities and qualifications for those jobs, as does his history of failing even the basic qualifications for an airline Captain.

The discovery which Defendants seek via this motion is designed, in part, to elicit information relevant to the questions of which, if any, essential job functions Plaintiff can perform relative to the positions in which he now claims Frontier unlawfully failed to reemploy or accommodate him. Also, this discovery is obviously relevant to the position-related front and back pay damages he apparently intends to seek.

**III.   Argument**

    **A.   Relevant Claims and Defenses.**

Plaintiff's USERRA Complaint alleges that after his return from military service, Defendants 1) failed to "reemploy" him as required by 38 USC § 4312, and 2) failed to reemploy him in an (unspecified) "position" under 38 USC § 4313. Most relevant here, Plaintiff alleges Defendants "violated §§ 4312 and 4313" by "failing or refusing to…to make reasonable efforts to accommodate Mr. Quick's disabilities." *Id.*, ¶¶ 68(a) through (f).  Plaintiff also incorporates into these claims factual allegations that he informed Frontier he "had incurred disabilities on active duty that may impact his employment at Frontier." *Id.*, ¶¶ 21, 67.

In defense, Defendants deny any liability to Plaintiff for failure to reemploy him or failure to reasonably accommodate disabilities incurred during military service.  *See* First Amended Answer, ¶ 68.  First, Defendants assert that, rather than "refuse" to "reemploy" Plaintiff, they did reinstate him to active status and full seniority, with all attendant "rights and benefits" as required by 38 USC § 4312(a), to the full extent possible without basic information from Plaintiff necessary to identify an appropriate reemployment position as specified in 38 USC § 4313.

Second, to the extent an appropriate reemployment position for Plaintiff may be as specified in 38 USC § 4313(a)(3), requiring "reasonable efforts" to "accommodate" Plaintiff's "disability," Defendants assert that they did make such reasonable efforts by first asking Plaintiff for basic disability and other job-related information necessary to help identify the appropriate position and any needed accommodations, but that Plaintiff thwarted those efforts.

Third, Defendants have also asserted the affirmative defense specified in 38 USC § 4312(d)(1)(B), involving whether any reasonable accommodations required by § 4313(a)(3) would pose an "undue hardship" to Frontier . First Amended Answer, p. 16, ¶ "Sixth."

**B.     Defendants Seek Discovery Regarding Alleged "Disabilities" Which They Allegedly Did Not "Accommodate" in Reemploying Plaintiff to a Position Under USERRA.**

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." *Simpson v. Univ. of Colo.,* 220 F.R.D. 354, 358 (D. Colo. 2004); *see also Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir.1995) ("[t]he scope of discovery under the federal rules is broad"). Thus, a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Given the claims and defenses outlined in § III(A), above, Defendants have propounded discovery requests seeking 1) medical records and information about Plaintiff's disabilities), 2) his ability to perform essential work functions, and 3) applications for and receipt of military, social security and any other disability benefits which he has sought or received during relevant time frames.[1] A protective order has been entered, and Defendants have no objection to treating all such information as "Confidential" under that Order.

---

[1] These Requests and the Objections thereto are set out in Exhibit 1 hereto. They include Interrogatory Nos. 4, 5, 6,13, and 15, and Requests for Production Nos. 4, 11 and 15. In addition, Exhibit 2 contains the subsequent Requests for Production Nos. 16 and 17, pertaining to social security disability records and a release for the same, to which Plaintiff is anticipated to object on the same basis he objected to the

Regardless, Plaintiff has objected, and refuses to provide the requested information. Defendant also intends to ask Plaintiff relevant questions in his deposition, including but not limited to the nature and extent of his disabilities, and any relevant limitations these conditions may impose regarding his ability to perform essential functions of the various management and training positions his expert has now indicated Plaintiff believes he could perform. Exhibit 2, at 3. Defendant also intends to inquire regarding Plaintiff's applications and receipt of other social security and disability benefits. Defendants anticipate that Plaintiff will object to, and refuse to answer, all such questions referred to above for the same reasons given for objecting to the relevant written discovery requests.

### C. Disability-Related Information is Relevant, and Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

On their face, the claims and allegations detailed in § III(A) above from Plaintiff's own Complaint put in issue the nature and extent of Plaintiff's alleged disabilities, whatever they may be. First, Plaintiff alleges he "incurred disabilities on active duty that may impact his employment at Frontier." Complaint, ¶ 21. He later told Frontier: "…I am disabled, seeking to return to work, but will not be able to fly for Frontier again."[2] First Amended Answer, ¶ 48. This may or may not be true. Yet Plaintiff insists Defendants are required to take his word for it.

---

(cont'd)..
prior requests for similar records and information. Defendant requests that the Court preemptively order Plaintiff to produce the information in this second set of requests as well.

[2] Plaintiff's former position as a pilot and First Officer is in the first priority job to which USERRA would require he be reemployed absent a disability. *See* 38 USC § 4313(a)(1)(A). Plaintiff seeks to bypass that job, on his own say-so, allegedly because he cannot do it any longer due to disability. Defendant is entitled to discovery on this point, if for no other reason than to explore whether Plaintiff has attempted to manipulate the process.

In reality, Defendants have not admitted that Plaintiff is in fact disabled, and indeed cannot do so given their lack of first-hand information. This alleged fact is in issue. Defendants are entitled to medical records, disability applications, and other requested discovery that is "reasonably calculated to lead to admissible evidence" that may prove or disprove whether Plaintiff has a relevant disability, or not. In the ADA context, this Court has analogously held a defendant employer was entitled to medical records discovery because they went directly to the issue of whether absenteeism attributed to an alleged disability was related to that condition, or a different condition. Kubie v. Target Corp., No. 09CV00669 ZLW KMT, 2009 WL 5216943, at *3 (D. Colo. Dec. 30, 2009)(Tafoya, J.).

Second, since Defendants are accused of failing to properly reemploy Plaintiff including by failing to put him in a position that reasonably accommodated his disabilities, then Defendants must, at a minimum, be entitled to discover medical records and disability benefits information about the extent of such disabilities, and how they may affect Plaintiff's ability to perform disputed reemployment positions under USERRA. Plaintiff's expert has now referred to various high-level management and training positions which Plaintiff claims he "could have performed." Exhibit 4, at 3. Defendants are entitled to, and would be severely prejudiced in testing these assertions without, the medical and disability benefits information they seek here.

Third, Defendants' assertions that it made "reasonable efforts" to meet its USERRA accommodation obligations by asking Plaintiff (without success) to provide relevant information, require information about how Plaintiff's disability may affect the [disputed] jobs he claims he could perform with reasonable accommodation. Similarly, Defendants' "undue hardship" defense, noted above, requires information about the alleged disability. Defendants cannot

evaluate such defense in relation to particular disputed reemployment positions without knowing how the disability, and any disputed accommodations, might affect Defendants' operations, safety, and the costs or other relevant factors involved.  *See* 20 CFR § 1002.5(i).

All of this would seem obvious, just as it is obvious that any returning disabled veteran legitimately seeking reemployment and/or accommodations would gladly inform the employer about the disability at issue, and offer any available facts about the position and/or accommodations desired.  Yet Plaintiff's objects that such information is "not relevant" to "properly reemploying Mr. Quick to an appropriate position." *See e.g.* Exhibit 1, p. 8 (objection to Interrogatory No. 4); Exhibit 1, p. 18-19 (objection to Request for Production No. 4).

Plaintiff's objection makes no sense.[3]  While authority on point is scarce in the USERRA context, cases under the ADA provide analogous guidance.  For example:

> In an action under the ADA, a plaintiff's medical history is relevant in its entirety. It is impossible to answer the most basic questions, such as whether the plaintiff was …otherwise qualified given a reasonable accommodation, or what a reasonable accommodation would have been, without full and complete access to the plaintiff's medical records. And since a defendant is entitled to defend the ADA action by claiming that plaintiff's inability to work without accommodation is the result of something other than the claimed disability, discovery along such lines must also be permitted… Defendant's discovery requests, including the questioning in deposition, are not merely highly relevant. They are entirely relevant, and may not be resisted if the case is to proceed.

Butler v. Burroughs Wellcome, Inc., 920 F. Supp. 90, 92 (E.D.N.C. 1996).

The information sought is also highly relevant to Plaintiff's damage claims.  Plaintiff seeks, among other items, front and back pay and lost benefits.  Complaint, p. 14.  Assuming

---

[3] Plaintiff also makes reference in the written objections cited above that the information sought is "potentially privileged." Defendants are unaware of what privilege Plaintiff is "potentially" asserting. However, federal common law recognizes no physician-patient privilege. Kubie, *supra,* at *3 (citations omitted).

Plaintiff ever succeeded in proving liability for failing to reemploy him, then these damages would of necessity have to be tied to some particular "reemployment position" under USERRA. Plaintiff's expert has now offered several positions which Plaintiff will allege he "could have performed." Defendant would be entitled to dispute that Plaintiff "could have performed" any of them. The discovery information sought would also be relevant to this disputed damages issue.

### D.        Plaintiff's Argument that Reemployment

Finally, Plaintiff's counsel cites *Brown v. Prairie Farms Dairy, Inc.,* 872 F. Supp. 2d 637 (M.D. Tenn. 2012) in his written objections to Defendants' discovery requests. Counsel argues the case stands for the proposition that Plaintiff's "qualifications" for a particular position (*i.e.* whether his disability prevents him from performing its essential functions, etc.) are not "relevant" where a defendant employer has in the first instance failed to "reemploy" the plaintiff. Plaintiff quotes the following language:

> Put differently, once Plaintiff has satisfied the prerequisites in § 4312 -which the Court has already found Plaintiff to have done-then Plaintiff must be reemployed, and only then, when determining the particular position in which to reemploy Plaintiff, can Defendant consider Plaintiff's qualifications."

*Id.* at 645.

This case is inapposite to the *discovery* issue at hand, for multiple reasons. First, the case is one denying defendant's summary judgment motion, not one refusing to allow discovery into a disputed issue of fact. Second, the defendant in that case admittedly terminated the employee upon his return from leave, and then refused later to "rehire' him, because he refused to provide *enough* medical information about his otherwise fully disclosed wrist injury, and did not provide a physician "release" to return to work, even though he did supply various (deemed unsatisfactory) medical records. *Id.* at 638-640.

-11-

Here, Frontier did no such thing. By contrast, Frontier contends that it *did* reemploy Plaintiff upon his return from leave, provided him all his seniority, benefits, retirement contributions, etc. *See supra,* § II. Upon doing so, Defendants then repeatedly sought disability and job-related information from Plaintiff to identify an appropriate position under the USERRA rubric. *Id.* Plaintiff refused to provide it, resulting in his not yet being assigned to any job. *Id.* Accordingly, to the extent *Brown* requires an employer to first "reemploy" and *then* explore what the appropriate position may be, Frontier did exactly that to the extent possible without Plaintiff's further cooperation.

Therefore, the medical and disability information sought here (plaintiff's "qualifications" in *Brown's* terminology) is entirely relevant in this case, even under the holding that Plaintiff cites. Plaintiff misapplies *Brown* by deciding a key disputed legal and factual issue in this case himself, *i.e.* that Frontier did not "reemploy" Plaintiff as required, and then he jumps to the conclusion that Frontier's discovery requests regarding medical and disability benefits information are therefore "irrelevant." In the context of this case, which differs mightily from the facts present in *Brown,* the requests are entirely relevant.

In any event, *Brown* is the only case which Defendants could locate that addressed the issue of whether and when a plaintiff's "qualifications," or abilities and disabilities, may come into play in the reemployment process. To the extent it holds that "reemployment" under § 4312 must happen first, and only afterward would the parties address the appropriate position, the *Brown* case does not correctly analyze the statutory provisions at issue. In reality, § 4312 and § 4313 are not entirely separable in practice in the way the *Brown* court appears to believe. The obligation to "reemploy" under § 4312 means *reemploy directly into a particular position* as

-12-

specified in § 4313. Nothing in § 4312 suggests any temporal or substantive separation in these steps.[4]  An employer cannot provide the full and complete "rights and benefits" of reemployment under §4312, and as defined in 38 USC § 4303(2), unless they are linked to the appropriate position under § 4313. And the employer simply cannot do so with respect to a disabled employee if it does not know what the disability is.

Therefore, a returning veteran must be obligated to cooperate to some degree in providing basic information that would allow the employer to identify the appropriate reemployment position.  At the very least, this must be true in cases where the employee makes known a disability that may need reasonable accommodation.  Otherwise, the employer is flying blind trying to ascertain what positions may be feasible "consistent with [the] circumstances of such person's case." 38 USC § 4313(3)(B)(4).  Moreover, the employee may be prematurely assigned, unknowingly to both parties, to a position which he or she cannot safely perform, endangering themselves or others.

This conclusion is bolstered by commentary of the U.S. Department of Labor, published in the Federal Register, addressing comments received upon publishing the final regulations implementing USERRA:

> In identifying an alternate position for a disabled service member, the focus should be on the returning service member's ability to perform the essential duties of the job. The position must be one that the person can safely perform without unreasonable risk to the person or fellow employees. ***The disabled service member is required to provide information on his or her education and experience, <u>the extent of the disability,</u> and his***

---

[4] *See e.g.* <u>Petty v. Metro. Gov't of Nashville-Davidson Cnty</u>., 538 F.3d 431, 440 (6th Cir. 2008)("Section 4312 sets forth the basic right of a returning veteran to be rehired by his past employer**…**Section 4313 sets forth the position of employment to which the returning veteran must be rehired and requires that the veteran be "promptly reemployed" *in that position.*")(emphasis added).

> *or her <u>present capabilities</u>.* The employer then has the duty to disclose all positions that the service member may be qualified to perform.
>
> …
>
> It is customary to assume that an employee seeking reemployment **will cooperate with the employer's reasonable efforts** to accommodate a disabled employee.

*See* 70 Fed. Reg. 75246, *75277 (Dec. 19, 2005), *available at* 2005 WL 3451172, *75277 (emphasis added). Accordingly, Defendants urge the Court to disregard Plaintiff's reliance on *Brown* under the circumstances of this case, and hold that the medical records and disability information sought is both relevant, and reasonably calculated to lead to the discovery of admissible evidence.

WHEREFORE, Defendants respectfully request that the Court enter an Order compelling Plaintiff Edward Quick to provide complete responses to Defendants first and second sets set of discovery requests as detailed herein, and to answer all deposition questions reasonably related to the information sought in those discovery requests, and awarding Defendants its reasonable costs and fees incurred in prosecuting this Motion.

In addition, the Parties are in agreement, and will request that the Court hold an expedited, forthwith hearing on this Motion as soon as the Court is able to do so after the Parties finish their expedited Response briefing.

DATED: October 30, 2015.

Respectfully submitted,

*s/William R. Dabney* __________________________
William R. Dabney
Brian M. Mumaugh
Bradford J. Williams
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303) 295-8000
Facsimile: (720) 235-0229
wrdabney@hollandhart.com
bmumaugh@hollandhart.com
bjwilliams@hollandhart.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Thomas Gregory Jarrard, Esq.
Law Office of Thomas G. Jarrard
1020 North Washington Street
Spokane, WA  99201-2237
tjarrard@att.net

Matthew Zachary Crotty
Crotty & Son, PLLC
421 West Riverside Avenue
Suite 1005
Spokane, WA  99201
matt@crottyandson.com

             s/*William R. Dabney*
             William R. Dabney
             HOLLAND & HART LLP
             555 Seventeenth Street, Suite 3200
             Denver, Colorado  80202

8183825_1

-16-