## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:15-cv-765-REB-KMT

EDWARD K. QUICK,

               Plaintiff,

v.

FRONTIER AIRLINES, INC., and MICHELE ZEIER, an individual,

               Defendants.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL;
## AND PLAINTIFF'S MOTION FOR PROTECTIVE ORDER[1]

---

Plaintiff, Edward K. Quick, by counsel, submits this Response to Defendant's October 30, 2015, Motion to Compel (Dkt. No. 30), and moves this Court pursuant to Fed. R. Civ. P. 26(c)(1)(C) and Fed. R. Civ. P 37(a)(5)(B)-(C) to grant an Order of Protection preventing any inquiry into Mr. Quick's private medical information.  A significant portion of the facts Frontier asserts in its motion are demonstrably false, and, more importantly, none of the purported issues raised by Frontier remotely touch upon the actual claims, defenses or damages in this case.  The discovery requests at issue are not relevant, will only cause embarrassment and harm to Mr. Quick, and, thus, Frontier's motion must be denied.    Accordingly, good cause exists to issue the accompanying Order of Protection.

---

[1]  As required by D.C. COLO. LCivR 7.1(A) and Fed. R. Civ. P. 37(a), the parties' counsel conferred in an attempt to resolve this discovery matter.

## I.      FACTS & PROCEDURE

In this action, Mr. Quick brought claims against his employer, Frontier, pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 - 4335 ("USERRA").   Mr. Quick's claims allege that Frontier willfully violated his USERRA rights: <u>first</u>, by failing to promptly and properly reemploy him following his honorable discharge from the United States Army, <u>second</u>, by discriminating against Mr. Quick because he exercised his rights under USERRA, and <u>third</u>, by failing to provide the benefits of employment required under USERRA.   Mr. Quick seeks reemployment, lost wages and benefits, and liquidated damages.   Under USERRA a plaintiff cannot seek (and Mr. Quick is not seeking) emotional distress or other general damages.

Mr. Quick returned from military service and timely requested reemployment in September 2014.  (Quick Decl. ¶¶ 1-7)  But, despite his repeated efforts, has not been reemployed in any manner and is not allowed to return to work.  (Dkt. 1; Quick Decl.  ¶¶ 8-18)  After months of trying to return to work, Mr. Quick was forced to file his Complaint on April 13, 2015. *Id.*  Frontier answered, and after a meet and confer regarding several alleged defenses, Frontier filed an Amended Answer. (Dkt. 16).  Therein, Frontier claims the liability defenses of ***impossibility***[2] and ***undue hardship*** and the damages defenses of ***offset*** and ***failure to mitigate***.[3]   Oddly, just prior to the scheduling conference Frontier said it wanted to inquire about Mr. Quick's medical information and to conduct a

---

[2]Frontier does not cite, or discuss any aspect of the "impossibility/changed circumstances" defense under 38 U.S.C. § 4312(d)(1)(A) in its motion.

[3] *See* Dkt. No. 16 at 16.  Mitigation is not addressed in Frontier's motion to compel.

Rule 35 examination. Mr. Quick's attorney staunchly opposed such inquiries, conferred with Frontier's attorney, and noted the issue for this Court's attention at the scheduling conference. (Dkt. 20 at n.1; n.3.)

However, on August 18, 2015, Frontier propounded discovery to "Describe in detail the factual basis for your allegation in paragraph 21 of the Complaint that you 'incurred disabilities on active duty' including the nature of any injury you claim you sustained or illness or disease you incurred, how such condition was sustained[…].[4] Mr. Quick succinctly, objected to this and the related requests, but still provided Frontier copies of his military orders and discharge which undisputedly[5] show that he suffered combat related injuries while on active duty and that he was discharged from the U.S. Army for those reasons.[6]   Thus, the Defendant's received a complete answer with definitive records to support the *facts* in ¶ 21 of the complaint.  Frontier also admits that, upon his attempt to return to work Mr. Quick informed Frontier that he had incurred a

---

[4] Dkt. 30-1 at 7-8.

[5] 38 U.S.C. § 4312(f)(2) provides: "Documentation of a matter referred to in paragraph (1) that satisfies the regulations prescribed by the Secretary shall satisfy the documentation requirements in such paragraphs.  The attendant regulation 20 C.F.R. § 1002.123 lists Mr. Quick's military records.  *See also Hall v. Chicago & E. I. R. Co.*, 240 F. Supp. 797, 800 (N.D. Ill. 1964)("[T]he Court is asked to go behind the Certificate of Discharge. This Court has no such authority under the Act. The language of the Act is clear that any person inducted into the Armed Forces for training and service who in the judgment of those in authority over him (and not in this Court's judgment) satisfactorily completes his period of military training and service shall be entitled to a Certificate to that effect upon the completion of such training and service. This Certificate is the key to the door of re-employment. That the veteran in this case received one is without dispute.); *Pittman v. DOJ*, 486 F.3d 1276, 1284-1285 (Fed. Cir. 2007)("Congress [..] made the military departments the sole judges of a person's military conduct, and it is for neither the employer nor this court to reevaluate military service that has already been deemed honorable."); *see also* 10 U.S.C. § 1168; 32 C.F.R. 45.1, *et. seq.*.

[6] Dkt. 30-1 at 8; Quick Decl. ¶ 9, citing EXHIBIT A, Military Orders and DD 214.

3

disability in service which prevented him from renewing one FAA certification required to fly passenger aircraft.[7]  Therefore, contrary to Frontier's argument (Dkt. 30 at 9), the facts alleged in ¶ 21 of the complaint, are not disputed and are not in issue.  At best, Mr. Quick's combat related injuries are an undisputed background fact.

Nevertheless, Frontier demands all of Mr. Quick's private medical information, a perfect description of his injuries and all his treatment records.  While there might be a case where a defendant is able to cobble together a lucid argument for why a service member's injuries are related to his USERRA reemployment claim, this is not that case.[8]  Mr. Quick's medical information is private and should not be used as fodder for far-fetched ideas, or manufactured are-after-the-fact defenses that do not exist in USERRA.

Now, in support of its motion, Frontier also makes various factual claims that are demonstrably false.  First, contrary to the claim made throughout its motion, (DKT. No. 30 at 3, ¶ 2; 4 at ¶ 3: 6 ¶ 3: 9 ¶ 3 and 12 ¶ 1; 13 ¶ 2) Frontier never made a single inquiry about Mr. Quick's service connected disabilities - - - that is until late August when its lawyers served the discovery requests that are at issue in this motion.  (Quick Decl. at ¶¶ 19-22)[9]  Second, Frontier also claims that after the filing of this lawsuit it sent Mr. Quick a letter in July and that "Plaintiff made no response to that letter."  (DKT. No. 30 at 4-5).  Mr. Quick's Declaration and the letter he sent to Frontier's attorney over two months ago shows that is not true.  (Quick Decl. ¶ 23 citing EXHIBIT B, September 8,

---

[7] *Compare* DKT 1 at ¶ 21 *and* 16 at ¶¶ 23, ¶ 25.

[8] Indeed, in numerous discussions regarding this issue, Mr. Quick's counsel requested over and over, some authority that medical information is relevant to a USERRA reemployment claim, none was provided.  Jarrard Decl. at ¶ 5-6, citing Exhibits.

[9] *See also*, Jarrard Decl. at ¶ 8. When asked to verify a source for these assertions, Defense counsel did not respond.

2015 Letter)  <u>Third</u>, Frontier now claims that it reemployed Mr. Quick and that he is "an active employee."  (DKT. No. 30 at 3 ¶ 4; 5 ¶ 1; 6 ¶ 2).  These assertions are not only absurd, but proved false by the fact that as of November 1, 2015 (and throughout this case) Mr. Quick remains listed as on Leave of Absence status at Frontier.  (Quick Decl. at ¶¶ 1-25, citing EXHIBIT C, November 1, 2015, Frontier Airlines Pilot List).  How these false facts are needed to resolve the issue of the relevance of medical information in a USERRA reemployment case is a mystery, but the Court should not consider them.

## II.   LEGAL STANDARD

While Fed. R. Civ. P. 26(b)(1) permits liberal discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" or any information that "appears reasonably calculated to lead to the discovery of admissible evidence", the information requested must be "relevant to the claims at issue in the case."[10]  Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[11]  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[12]

---

[10] *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)(citing *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D. Mass. 1984)).
[11] *See, e.g., Sheldon v. Vermonty,* 204 F.R.D. 679, 689-90 (D. Kan. 2001).
[12] *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 360 (D. Colo. 2004).

On the other hand, when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[13]

### III.   ARGUMENT

Mr. Quick's medical information is not relevant to the claims, defenses or any issue of damages in this USERRA case.   "An application of Rule 26(b)(1) must start with an explication of the **specific claims and defenses asserted**."[14]   In another USERRA case from this Circuit the court addressed a motion to compel all "military personnel records (excluding any medical records) by the U.S. Army", the court denied the motion as a fishing expedition and noted that military personnel files are, in general, entitled to heightened protection.[15]   Here, Mr. Quick has not placed the existence of a disability at issue and none of the issues in this case turn upon the use of medical information.   The only possible outcome from using such information would be to unfairly prejudice, embarrass or harm Mr. Quick.   (Quick Decl. ¶¶ 2, 20)

A. <u>Medical Information is Not Relevant to any Claim or Defense in this case</u>.

<u>First</u>, this is not an ADA disability discrimination case.[16]   Unlike the ADA, the elements of USERRA *reemployment* claim do not "touch upon the most private and

---

[13] *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC,* 2008 U.S. Dist. LEXIS 20656, at 2 (D. Kan. 2008) (citation omitted).

[14] *Simpson v. Univ. of Colo.*, 220 F.R.D. at 359 (emphasis added in bold).

[15] *Weems v. Corr. Corp. of Am.*, No. 09-vc-443-JHP, 2010 U.S. Dist. LEXIS 65875 (E.D. Okla. June 30, 2010).

[16] To the contrary, "claims of discrimination based on a disability arising from military service are not cognizable under USERRA." *Carroll v. Del. River Port Auth.*, 2015 U.S. Dist. LEXIS 24455 (D.N.J. Mar. 2, 2015).

intimate details of a plaintiff's life."[17]  To prove his reemployment claim, Mr. Quick must show he: (a) was a member of the Armed Forces; (b) gave notice to his employer of his military obligations; (c) received an honorable discharge; (d) gave timely notification of his intent to return to work; and, (e) served less than five years with the military.[18]  And, that he was not reemployed.  Unlike the elements of an ADA discrimination claim, medical information has no bearing on the elements that Mr. Quick must prove.

Further, in opposite to an ADA claim, Mr. Quick has not waived and there is no authority that could conceivably support the proposition that a USERRA plaintiff waives any "privileges and privacy interests related to their claim by virtue of filing the complaint."[19]  The Act, 38 U.S.C. § 4302, speaks directly to the relation between USERRA and other laws or rules; it preempts any infringement that would impose a limit or otherwise eliminate any of the rights provided under USERRA.[20]  Moreover, Frontier's assertion that a USERRA reemployment claim is analogous to (or should be analyzed under) ADA regulations[21] is rejected in the very same regulatory commentary they cited; "the Department received a suggestion that it employ the ADA's regulatory standards, in particular, the ADA's provisions concerning a 'qualified individual with a

---

[17] *See e.g. Kubie v. Target Corp.*, No. 09-cv-00669-ZLW-KMT, 2009 U.S. Dist. LEXIS 123298 (D. Colo. Dec. 30, 2009).
[18] *See* 38 U.S.C. § 4312.  There is no serious dispute regarding these elements. *Compare* Dkt. 1, Complaint, at ¶¶ 7-23 *and* Dkt. 16, Amended Answer at ¶¶ 7- 23.
[19] *See Kubie v. Target Corp.*, 2009 U.S. Dist. LEXIS 123298 at *8.
[20] 38 U.S.C § 4302(b); 20 C.F.R. 1002.7(b).
[21] *See e.g.* Dkt. 16 at 10 ¶ 3, and 13-14.

disability' and 'reasonable accommodations.'  The Department declines this suggestion because neither term is used in USERRA."[22]

Second, Frontier does not actually address any element of its undue hardship defense, § 4312(d)(1)(B), connect medical information to such an element, and there is no other liability defense at issue in the pending motion.[23]   To avoid liability for reemployment on undue hardship grounds, Frontier bears the burden of proving an undue hardship as defined in 38 U.S.C.§ 4303 (15).[24]  Undue hardship is defined only in terms of the actions taken by a defendant that impose great difficulty on the financial resources of a defendant.[25]  Contrary to Frontier's argument (Dkt. 30 at 9 ¶ 3) the undue hardship defense does not require any information about disability.[26]  There is no mention anywhere in the pertinent statute or regulations (38 U.S.C. § 4303(15); 20 C.F.R. § 1002.5(n)) that even touches upon a plaintiff's medical information, and for good reason, it is not relevant.  Indeed, Frontier concedes that is can find no authority on the issues is states are "obvious" to an undue hardship defense (see Dkt. 16 at 10), and the only other possible support it offers for its relevance claim is the DOL regulatory comments which, read in full, succinctly dispel Frontier's very argument. Supra.

---

[22] See 70 Fed. Reg. 75246, *75277 (Dec. 19, 2005), copy attached to Jarrard Decl. ¶ 9, EXHIBIT K.

[23] Supra at n2. See also Jordan v. Air Prods. & Chems., Inc., 225 F. Supp. 2d 1206, 1208 (C.D. Cal. 2002) (holding "[a]s the plain language of the statute makes clear, [reemployment] is subject only to the defenses enumerated in § 4312, i.e. reemployment is unreasonable, impossible or creates an undue hardship.")

[24] 38 U.S.C. § 4312(d)(2); 20 C.F.R. §1002.39(d).

[25] 38 U.S.C. § 4303 (15); 20 C.F.R. § 1002.5(n).  "Only after the employer makes reasonable efforts, as defined in § 1002.5(i), may it determine that an employee is not qualified for the reemployment position.  These reasonable efforts must be made at no cost to the employee."  20 C.F.R. § 1002.198(b).

[26] Id.

Third, to the extent that Frontier argues that Mr. Quick's medical information is relevant to the "essential job functions Plaintiff can perform" (Dkt. 30 at 5), Frontier has never asserted such a defense in this case[27], it is not a defense in this case, and it is not a proper defense to a USERRA reemployment claim. *Supra.* Neither the words, nor the meaning of, "essential" or "functions" appears anywhere in the Complaint or Answer. Further, to the extent that Frontier, *now alleges* (as it has never alleged it before), that Mr. Quick's medical information may be used as a pre-screening device before reemployment, such an argument is directly opposite to the law of USERRA. At the point at which Mr. Quick was entitled to prompt reemployment under § 4312, "[Frontier] had no basis on which to question his qualifications." *In re Petty*, 538 F.3d 431, 443 (6th Cir. Tenn. 2008).

The *Petty* case, cited by Frontier, is an excellent example of an employer, like Frontier, that violated USERRA by impermissibly imposing additional perquisites to reemployment beyond those provided in the Act. As the *Petty* court explains:

> Petty had satisfied the only prerequisites to § 4313 -- those specified in § 4312--and Metro's attempt to impose additional prerequisites through its return-to-work process was, as we have already explained, wholly impermissible. *See* 38 U.S.C. § 4302(b) (USERRA supersedes local policies). The process, then, including Petty's alleged "dishonesty" therein, cannot serve as a basis for delaying or otherwise limiting Petty's right to reemployment. *Id.*

Frontier is not "flying blind", simply because it *may not* impose prerequisites to Mr. Quick's reemployment (that the Act condemns); those unlawful prerequisites are irrelevant.

---

[27] *See* Dkt. 16 at 15-16.

Fourth, it is perfectly clear that Frontier asserts, as a general denial, that it did reemploy Mr. Quick --- as far-fetched as that sounds.  Nevertheless, it is equally clear that Mr. Quick's medical information has no possible bearing on that general denial.

Mr. Quick's Complaint states only claims for violations of USERRA and requests no damages other than lost pay, benefits, liquidated damages for willful the violation of his USERRA reemployment rights.  Although Frontier argues that medical information is relevant to illustrating their motives or intent, neither the claims, as set forth in the Complaint, nor Frontier's alleged defenses, as set forth in the Amended Answer, require that a Plaintiff prove Defendants' motives or intent because those have absolutely no bearing on a USERRA reemployment claim. *See* 20 C.F.R. 1002.33.[28]

B. *Mr. Quick's Medical Information Is Not Relevant to Damages*.

"Generally, discovery requests seeking an employment discrimination plaintiff's medical and psychological records are held to be relevant as to both causation[29] and the extent of plaintiff's alleged injuries and damages for emotional pain, suffering, and mental anguish."[30]  Mr. Quick's damages claims seek only lost wages and benefits. Further, a USERRA plaintiff is not entitled to seek emotional distress or general

---

[28] "This debate should be put to rest by the Department of Labor's December 2005 promulgation of its final USERRA regulations, [...] and stated that "a person seeking relief under section 4312 need not meet the additional burden of proof requirements for discrimination cases brought under section 4311." *Woodard v. N.Y. Health & Hosps. Corp.*, 554 F. Supp. 2d 329, 350 16 (E.D.N.Y. 2008); *Coffman v. Chugach Support Servs.*, 411 F.3d 1231, 1235 (11th Cir. Fla. 2005).

[29] No causation analysis is contemplated anywhere in USERRA.  *Supra.*

[30] *Owens v. Sprint/United Management Co.*, 221 F.R.D. 657, 659-660 (D. Kan. 2004); *Lefave v. Symbios, Inc.*, 2000 U.S. Dist. LEXIS 22278, 2000 WL 1644154, at *2 (D. Colo. April 14, 2000); *Fox v. Gates Corp.*, 179 F.R.D. 303 (D. Colo. 1998); *Simpson*, 220 F.R.D. at 359.

damages[31] and Mr. Quick has no such claims against Frontier. (Dkt No. 1 at 14-15). Additionally, to the extent that Frontier argues that Mr. Quick's medical information or disability benefits are somehow related to an *offset* to his damages, those arguments are completely without merit as the Tenth Circuit applies the collateral source rule these public entitlements.[32]   Thus, Mr. Quick's private medical information has extremely questionable relevance to his USERRA claims or damages.

### IV.    GOOD CAUSE EXISTS TO ISSUE A PROTECTIVE ORDER

Even if this Court found that Mr. Quick's private medical information had some slight relevance to an issue in this case, the harm occasioned by the disclosure significantly outweighs the ordinary presumption of broad disclosure.

Fed. R. Civ. P. 26(c) provides, ". . .[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…"   The Supreme Court has noted that this rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."[33]   When, as here, claims are asserted in a

---

[31] 38 U.S.C. § 4323(d)(1)(b); *Barreto v. ITT World Directories, Inc.*, 62 F. Supp. 2d 387, 395-96 (D.P.R. 1999)(Emotional distress damages are not recoverably under USERRA.)

[32] "Our cases have always treated payments from the public treasury, at least when funded by a tax scheme to which the injured party contributed, as from a collateral source."   *Green v. Denver & R.G. W. R.R.*, 59 F.3d 1029, 1032 (10th Cir. Utah 1995)(collecting cases);   *FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070, 1083 (10th Cir. 1994)(Plaintiff entitled to seek full recovery from a tortfeasor even though an independent source may compensate the plaintiff  in part for the loss); *Steckler v. United States*, 549 F.2d 1372, 1379 (10th Cir. 1977) (social security disability payments); *In re Adventure Bound Sports*, Inc., 858 F. Supp. 1192, 1208-09 (S.D.Ga. 1994)(Social Security and Veterans benefits).

[33] *Seattle Times Co. v. Rinehart,* 467 U.S. 20, 36, 81 L. Ed. 2d 17 (1984).

motion to compel discovery that would constitute an unjustified invasion of privacy and are irrelevant to the claims before the court, the court may prohibit such discovery.[34] Even if the requested information is "remotely relevant, [the court] may find 'good cause,' consistent with the court's authority under Fed. R. Civ. P. 26(c) to deny Defendant's expansive request for production."[35]   Good cause exists in this case because disclosure of Mr. Quick's private medical information will only cause embarrassment to Mr. Quick.  (Quick Decl. ¶¶ 2, 20).

The court may also issue a protective order pursuant to Fed. R. Civ. P 37(a)(5)(B)-(C) if it denies Frontier's motion to compel in whole or in part.  An order of protection should be granted under this standard as well because good cause exists.

First, Frontier seeks to use Mr. Quick's medical information to argue its undue hardship defense (or its general denial) to Mr. Quick's USERRA reemployment claim, but his private medical information is not relevant to the claims, proper defenses, or damages in this case.  *Supra.*

Second, the prejudice or harm that will befall Mr. Quick is abundantly clear. (Quick Decl. at ¶¶ 2, 20 and 22).  Mr. Quick has already suffered humiliation in this case when Frontier filed records containing his private medical information on the public docket for any person or the media to see.  (Dkt. Nos. 30 at 2-3, 30-3)[36]  Mr. Quick rightfully questions why that occurred when there is a protective order in place that

---

[34] *See Simpson*, 220 F.R.D. at 362.
[35] *Id.*
[36] Notably, Mr. Quick's birth date was blacked out of the expert report Frontier filed at Dkt. No. 30-4 at 1.

would naturally cause this information to be protected from public disclosure.[37]   (Quick Decl. at ¶ 20).   The reason is clear, Frontier failed to treat Mr. Quick's medical information as confidential, or they choose not to follow the procedures outlined in the stipulated protective order (Dkt. No 29).   Alternatively, and despite dozens of exchanges and phone calls regarding this matter, Frontier did not bother to give Mr. Quick's attorneys any notice whatsoever that it intended to publically file records containing Mr. Quick's private medical information.   At a minimum, that would have allowed Mr. Quick's lawyer the opportunity to at least attempt to designate such records as confidential pursuant to the stipulated protective order.   Indeed, Frontier knows that the protective order was approved by the court.[38]   If, Frontier was acting in good faith or with common decency, then it would have informed Mr. Quick's counsel and Mr. Quick's private medical information would not be sitting on the docket right now.   Instead, it may have been filed under seal for *in camera* review; with no embarrassment to Mr. Quick or any other burden to the parties.   *See* Dkt. 29 at ¶¶ 8-9.

Third, Mr. Quick is retired from the military.   So, even if Mr. Quick had custody of his military medical records, which he does not, those records and information are not only private, they are subject to heightened protections as a "*military* personnel file"

---

[37] Dkt. No. 29 at 3, ¶ 3 ("medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial and/or proprietary information, including information that may affect any relevant third parties, that is not publicly available.")
[38] Dkt 16 at 7.

under the "federal Privacy Act."[39]   The court should find good cause and grant a protective order pursuant Fed. R. Civ. P 37(a)(5)(B)-(C).

## V.   CONCLUSION

For the foregoing reasons, Mr. Quick respectfully asks this Court to deny Defendant's Motion in its entirety, including any award of costs.  Further, Mr. Quick asks that the Court make a finding of good cause and grant his motion for a protective order pursuant to Fed. R. Civ. P. 26(c) and/or Fed. R. Civ. P 37(a)(5)(B)-(C), and enter the attached proposed findings and order.

Respectfully submitted,

LAW OFFICE OF THOMAS G. JARRARD, PLLC

By: _____/s/_____

THOMAS G. JARRARD
1020 North Washington Street
Spokane, WA 99203
Telephone:  425 239-7290
Facsimile:  509 326-2932

---

[39] *See Weems v. Corr. Corp. of Am.*, 2010 U.S. Dist. LEXIS 65875 at * 4 (*citing* 5 U.S.C. § 552a(b)(11); "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be … pursuant to the order of a court of competent jurisdiction[.]")

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

William R. Dabney
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303)295-8000
Facsimile: (720) 235-0229
wrdabney@hollandhart.com

Brian M. Mumaugh
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, #500
Greenwood Village, CO 80111
Telephone: (303) 290-1600
Facsimile: (303) 713-6255
bmumaugh@hollandhart.com

Bradford J. Williams
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303)295-8000
Facsimile: (720) 223-3271
bjwilliams@hollandhart.com

/s/ *Thomas G. Jarrard*
THOMAS G. JARRARD
Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington Street
Spokane, WA 99201