IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00765-REB-KMT

EDWARD K. QUICK,

     Plaintiff,

v.

FRONTIER AIRLINES INC. and MICHELE ZEIER, an individual,

     Defendants.

## DEFENDANTS' REPLY ON MOTION TO COMPEL DISCOVERY AND RESPONSE TO MOTION FOR PROTECTIVE ORDER

Defendants  Frontier Airlines, Inc. ("Frontier") and Michelle Zeier (collectively "Defendants"), hereby submit their Reply on their Motion to Compel (Dkt. # 30) and Response to Plaintiff's Response and Motion for Protective Order (Dkt. # 33)("Response").

### A. Plaintiff Ignores and Distorts the Pertinent "Disability" Allegations in his Own Complaint.

Plaintiff's Response makes no mention of Paragraph 68(d) of his Complaint.  There he claims Defendants violated USERRA by "failing to make reasonable efforts to accommodate his disabilities." *Id.* Plaintiff is clearly not dismissing this claim, but he deliberately ignores it for purposes of this motion.  The claim, and Frontier's denial of it, unmistakably put the facts surrounding these alleged "disabilities" into issue.   Further, Defendants have *not* admitted that Plaintiff is, in fact, disabled.  *See* Response at 3-4.  They have merely admitted that it was Plaintiff who "disclosed" an "unspecified disability" to Frontier, and who "believed" he could

not return to his pilot position for related lack of FAA medical certification.[1]  Therefore,

Plaintiff's argument that his alleged disability is merely "an undisputed background fact"

(Response, at 4) is plainly wrong.  Defendants seek rightful discovery on the nature and extent of

Plaintiff's alleged disabilities and any applications for disability benefits because this

information is squarely relevant to claims and allegations disputed on the face of the pleadings.

Plaintiff's proffer of military records referring to an unspecified "disability" only magnifies the

relevance of the information sought here.  Plaintiff's military records and allegations of disability

are the beginning, not the end, of an appropriate discovery inquiry given the claim at issue.[2]

### B. Defendants' Right to Discovery is Not Limited by Plaintiff's Rigid View of the Information Contained in Initial Pleadings.

As Plaintiff admits he cannot resume his prior pilot position[3], the type of reemployment

position at issue here is as specified under § 4313(a)(3).  This requires Defendants to make

"reasonable efforts" to allow Plaintiff to "qualify " for an "equivalent" position, or one that is the

"nearest approximation."  *Id.*  Accordingly, Defendants would not be required to reemploy

Plaintiff such non-pilot position if Plaintiff were not alleging a service-connected disability.

Nothing in USERRA requires Defendants to take Plaintiff's word for it that he has an

---

[1] *See* First Amend. Answer, ¶¶ 23, 24 (Dkt. # 16).

[2] Plaintiff's authorities at p.3, note 5 of his Response are inapplicable.  No cited provision prohibits an employer from learning in civil discovery the nature of a veteran's military disability relevant to a claim of failure to make reasonable efforts to accommodate such disability. Plaintiff cites the *Hall* case, but it says nothing about the scope of discovery in a disability reemployment case. It is an order on cross-motions for summary judgment, and pertains to arguments and documents having nothing to do with disability issues.

[3] Plaintiff's prior pilot position (and any interim "escalator" change during military leave) comprises the first and second "priority" positions to which the reemployment requirement otherwise applies.  *See* 38 USC § 4313(2)(A) and (B); 20 CFR 1002.197(a) and (b).

undisclosed disability which entitles him to reemployment in a non-pilot position. And this is even more certain in the context of litigation over the issue, where normal discovery rules apply.

Moreover, Defendants would not have to reemploy Plaintiff *at all* if he could not "after reasonable efforts…qualify for the appropriate reemployment position." 20 CFR § 1002.226(a). "Qualified" means Plaintiff has the "ability to perform the essential tasks of the position." 38 USC § 4303(9). "Reasonable efforts" means efforts that do not impose an undue hardship on the employer. 38 USC § 4303(10).

At this discovery stage, Defendants deny Plaintiff's claims and generally assert that it did begin "reasonable efforts" to "qualify" him for an appropriate position by asking him to basically explain his disability situation and help identify an appropriate job. But Plaintiff's failure to provide basic and timely information on his abilities and disabilities, and Defendants resulting inability to determine whether Plaintiff could perform the essential tasks of *any* particular positon to which he wished to be reemployed, thwarted those "reasonable efforts." This is an entirely logical, valid reason why Plaintiff has not yet been assigned to any position under USERRA, and why Defendants are not liable for failure to reemploy him or to make "reasonable efforts" to accommodate a disability.

Moreover, Defendant is entitled to argue that USERRA contemplates that a returning veteran was required to "provide information on his or her education and experience, the extent of the disability, and his or her present capabilities."[4] Plaintiff cannot unilaterally decide what discovery is or is not relevant based on his own restricted views of what information may be sought or provided by the parties in the USERRA reemployment process. While case law is

---

[4] *See* 70 Fed. Reg. 75246, *75277 (Dec. 19, 2005); 2005 WL 3451172, *75277.

-3-

certainly scarce on the issue, Defendant may nevertheless make these arguments based on the authority at note 4, *supra,* and its good faith view of how the law should be interpreted.  Hence, discovery relevant to those issues must be allowed.

Stated another way, Defendants are entitled to the disability information sought in order to vindicate the logical reasons why Plaintiff was required to provide it but did not, and that Defendants "efforts" to acquire this information in order to identify an appropriate position were "reasonable" as contemplated by the reemployment process in 38 USC § 4313(a)(3).  If Plaintiff's disability prevents him from performing the "essential tasks" of any position, this supports that Defendants' actions in asking Plaintiff to explain his situation were "reasonable efforts" to comply with § 4313(a)(3).

The relevance of the information sought is only magnified by the second-hand information Defendants have now learned regarding Plaintiff's social security disability status, and his statements to the U.S. DOL concerning his medical conditions.  Moreover, the seeming disconnect between this information suggesting serious incapacity, and Plaintiff's allegations in this litigation that he "could have performed" various high-level positions, certainly explains why Plaintiff so strongly (but inappropriately) resists Defendants' legitimate requests for relevant information concerning these issues.[5]

---

[5] Depending on what the information sought may disclose, Defendants may augment their "estoppel" affirmative defense to include judicial estoppel based on any sworn statements to the SSA that contradict Plaintiff's claims for damages herein.  *See, e.g.*, *Acevedo Martinez v. Coatings & Co.*, 286 F. Supp. 2d 107, 116-17 (D.P.R. 2003) (denying back pay, front pay, and reinstatement where plaintiff "was receiving benefits for a disability that allegedly precluded her from engaging in gainful employment and did not otherwise submitted evidence to prove that she is fit to go back to work"); *Cavaliere v. Adver. Specialty Inst. Inc.*, 853 F. Supp. 2d 472, 487 (E.D. Pa. 2012) (plaintiff estopped by her representations before SSA that she was disabled on the date of her termination from asserting ADA claims, or claims for back and front pay).

Defendant is entitled to make the defense arguments above, and to seek relevant evidence to develop and support them. [6]  Plaintiff's attempt to short-circuit these arguments (and thus related discovery) by complaining they are not spelled out to his satisfaction in Defendants' Answer (Response, at 9), is of no avail.  The case is in the *discovery phase,* and this is a *discovery* motion.  It may be that Defendants' arguments will be changed or augmented, or its pleadings amended, based on information learned in discovery going forward. But Plaintiff has not shown any basis for restricting Defendant's right to discover information relevant to the case and the issues as currently postured.

### C.    The Discovery is Clearly Relevant to the "Undue Hardship" Defense.

Defendants also invoke the statutory affirmative defense of "undue hardship." 38 USC § 4312(d)(1)(B); 38 USC § 4303(15).  Plaintiff tries to neutralize this contested issue by arguing that Defendant has not "addressed any element" of this defense or "connect[ed] medical information" to it.  Response, at 8.  Of course, Defendant is prejudiced in knowing exactly how to connect the disputed medical and disability information to this defense when Plaintiff will not provide it in the first place.

---

[6] As Plaintiff also mentions in his Response at 10, Defendants also argue that the discovery sought here is relevant to Defendants' motive in taking the actions challenged in this matter. Such motive is entirely relevant to Plaintiff's existing claim of USERRA "discrimination" and "retaliation" under 38 USC § 4311. Complaint, ¶¶ 64-66. Defendants' motives for its actions herein were in part based on Plaintiff's failure to disclose any details of his disability, and not due to any exercise of his USERRA rights.  In defense of a discrimination/retaliation claim, Defendants are entitled to show they would have taken the same actions despite Plaintiff's exercise of USERRA rights. 38 USC § 4311(c)(2), at (D).  *See* Amend. Answer, p. 15, ¶ "Second."  The disability information sought would substantiate the logic and good faith of Defendants' reasons for its actions in this case.

"Undue hardship" means employer efforts to accommodate a disability "requiring significant difficulty or expense when considered in light of-…(D) the type of operation or operations of the employer, including the…functions of the work force…" 38 USC 4303(15)(emphasis added). Thus Defendants are entitled to argue that it did make "reasonable efforts" to accommodate Plaintiff's alleged disability by asking him for pertinent information, but his refusal to provide it rendered further efforts to assign him a job subject to "significant difficulty" in light of Frontier's "operations" as a passenger airline, and the consequent "functions" of its "work force. No airline employer would attempt to place someone in the high-level pilot supervision and training jobs Plaintiff only now points to, without knowing more about the "disability" that Plaintiff alleges rendered him unable to obtain FAA medical certification. In light of this argument, and to support it and possibly other similar arguments to evolve later, Defendants are entitled to the discovery they seek here. At a minimum, the discovery sought is at least "reasonably calculated to lead to the discovery of admissible evidence, which is all that is required.

### D.   The Discovery Is Relevant to Plaintiff's Alleged Damages.

Plaintiff also argues that the discovery sought is not relevant to damages because Mr. Quick is not seeking emotional distress damages. This is a "straw man." Defendants have not argued the relevance of the discovery on this basis at any time. Defendants have argued that Plaintiff cannot get front or back pay damages based on a job which he may never have been able to perform due to his disability. Plaintiff has cited no authority to suggest that USERRA allows a returning service member to obtain back or front pay damages when the job to which an employer supposedly should have reemployed the plaintiff is not one the he has proven he is

capable of performing with his disability, with or without reasonable efforts to accommodate such disability.  As stated in Defendant's Motion at 10-11, back or front pay must be tied to a particular position Plaintiff could have performed, not just any position Plaintiff imagines he might have performed.  The discovery information sought would be key to those issues.

Moreover, the social security and other disability benefits application and receipt information is entirely relevant to damages mitigation and/or offset issues.  The situation here is not the same as the cases cited by Plaintiff pertaining to a "collateral source."  Response, at n.32. Those cases involved receipt of disability benefits in the context of a third-party recovery from a tortfeasor who caused the very same injury that qualified the plaintiff to receive the separate benefits. The receipt of disability benefits in this case implicates an entirely different issue. Plaintiff cannot expect the Court to countenance his receipt of wage-replacement disability benefits on the one hand because he claimed in sworn applications to a disability payor that he *can't work at all*, but also collect damages from Defendant here based on the contradictory claim of failure to reemploy him to jobs he claims he actually "could have performed" in the very same timeframe.[7]  Further, Plaintiff is required to mitigate his back and front pay damages in a USERRA case by looking for alternative work.[8] If he will claim he could not do so because he

---

[7] *See supra*, n. 6; s*ee also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)(Although application for and receipt of Social Security benefits does not automatically estop one from asserting ADA claims, a "sworn assertion in an application for benefits that [one] is, for example, 'unable to work,' will appear to negate an essential element of [the] ADA case – at least if [one] does not offer a sufficient explanation."  Under such circumstances, a plaintiff "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim," and must instead "proffer a sufficient explanation."  *Id.*

[8] *See e.g.* 20 CFR § 1002.103(b); *Campbell v. Catholic Community Services of Western Washington*, 2012 WL WL 600696 *3 (W.D. Wash. 2012).

was on social security or other disability, Defendants are entitled to discovery on that issue,

including the details of the relevant disability and the applications for such benefits.

     E.     **Plaintiff's Attempts to Dispute the Facts Alleged in Defendants' Motion to Compel Are Neither Valid nor Material to this Discovery Motion.**

     Plaintiff goes to great lengths to dispute some of the facts and circumstances of this

matter as stated in Defendants' Motion.  Plaintiff is wrong in several respects, and in any event

the most that can be said about these issues is the parties dispute certain facts.  This is not a basis

to deny relevant discovery.

     First, Defendants most certainly did ask Plaintiff to provide information to them about his

service-connected disabilities on multiple occasions.[9]  One of the instances is in a February 9,

2015 email from Defendant Michelle Zeier to Plaintiff *quoted* in Defendants' Motion (Dkt. #

30), at 4:

> If you do not wish to apply for LTD benefits, but would rather return to work for Frontier in a capacity other than as a pilot, you may also pursue open positions for which you are qualified, or for which you could become qualified through reasonable efforts by Frontier. Because the position of pilot in the airline industry is unique, there are no jobs that are closely comparable. **Without <u>more information</u> from you about your interests <u>and abilities</u>, it is impossible for us to know what open positions you are either interested in or <u>qualified</u> – with reasonable training – to hold….**

*See* Exhibit 1, Affidavit of Michelle Zeier, at ¶ 10.

Further, Plaintiff and his counsel are well-aware of a similar email sent on March 6, 2015, in

which Defendants made the following inquires and statements to Plaintiff:

> Fourth – and perhaps most importantly – you suggest in your February 11, 2015, email that you may now be seriously interested in *non-pilot* positions.  However, other than suggesting that you should be reemployed into position at or around a Captain's rate of pay, you have not previously assisted our efforts to identify any such appropriate reemployment position. **Indeed, you have not even identified your claimed disability, which makes it impossible for us to determine**

---

[9] *See* Response, Dkt. # 33 at 4.

**what positions you might be physically capable of performing, with or without a reasonable accommodation (even apart from the question of qualification)...I have previously asked you for information regarding your disability and leave of absence information, yet you have failed to provide it.** We are available to discuss open positions with you.

*See* Exhibit 1, Affidavit of Michelle Zeier, at ¶ 11.  Finally, Defendants repeatedly asked Plaintiff to fill out medical leave of absence paperwork that would have substantiated, at least to some extent, the disability issues needing clarification in order to move forward with identifying an appropriate position.  *See* Exhibit 1, Affidavit of Michelle Zeier, at ¶ 7.  Plaintiff cannot seriously maintain that he may refuse to produce the information now requested in discovery because, paradoxically, Frontier supposedly never inquired about such issues prior to litigation.

Second, Plaintiff is listed in Defendants' Ultipro personnel system as an active employee. *See* Exhibit 1, Affidavit of Michelle Zeier, at ¶ 4.  While Plaintiff may interpret the seniority list he has access to as stating something different, Response, at 5, this is at best a disputed fact, and not a basis to resist the discovery sought.

Finally, Plaintiff is correct that he did send a response to Frontier's July, 2015 letter proposing possible positions, via his attorney, to Defendants' counsel.  Response, at 4. Defendants' Motion mistakenly stated that "no response" was made, when Defendants intended to state that no response was made which included any disability information such as that sought here.  Plaintiff's response letter indeed includes no such information.  *See* Exhibit B to Quick Declaration (Dkt. # 33-1).  The fact remains that Plaintiff never provided to Defendants at any time any disability information that would have substantiated the issue, and allowed Frontier to identify a suitable reemployment position.

**F.      Plaintiff's Motion For Protective Order Should Be Denied.**

Plaintiff also moves for a protective order.  The only basis claimed for such order is that

Mr. Quick believes it would be "embarrassing," that such embarrassment somehow amounts to

"prejudice" in this case, and that this outweighs the obvious relevance of the information.

Defendants reject these assertions.  Any embarrassment could be mitigated fully by subjecting

the information to existing protective orders.  Defendants' citation in their Motion of the

information it was forced to obtain by a FOIA request was neither in bad faith, nor intended to

cause any embarrassment.  Those documents were already public records.  If Plaintiff were

concerned about keeping them under seal, he could have notified Defendants' counsel months

ago when the documents were produced to Plaintiff.  Even so, Defendants have no objection to

an Order placing these motion papers under seal if Plaintiff wishes.  And, it was Plaintiff himself

who disclosed the existence of the social security disability information in his Expert Report.

Plaintiff's citation of the Federal Privacy Act is of no avail.  Response, n 39.  Plaintiff's

own authorities there state that Plaintiff may sign a release for relevant military records, and/or

the Court may order release of those records.  Plaintiff's Protective Order should be denied.

DATED: November 12, 2015.

Respectfully submitted,

*s/William R. Dabney*
William R. Dabney
Brian M. Mumaugh
Bradford J. Williams
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado  80202
Telephone:  (303) 295-8000
Facsimile:   (720) 235-0229
**Attorneys For Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Thomas Gregory Jarrard, Esq.
Law Office of Thomas G. Jarrard
1020 North Washington Street
Spokane, WA  99201-2237
tjarrard@att.net

Matthew Zachary Crotty
Crotty & Son, PLLC
421 West Riverside Avenue
Suite 1005
Spokane, WA  99201
matt@crottyandson.com

s/*William R. Dabney*
William R. Dabney
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado  80202

8183825_1

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00765-REB-KMT

EDWARD K. QUICK,

     Plaintiff,

v.

FRONTIER AIRLINES INC. and MICHELE ZEIER, an individual,

     Defendants.

---

## AFFIDAVIT OF MICHELLE ZEIER

---

I, Michelle Zeier, being first duly sworn, do hereby state and affirm as follows:

1. I am over the age of 21 and have personal knowledge of all the facts set forth in this Affidavit.

2. I am employed by Frontier Airlines , Inc. ("Frontier") as Senior Manager, Labor Relations.

3. I communicated with Plaintiff Edward Quick in late 2014 and 2015 regarding his desire for reemployment at Frontier after his military leave of absence.

4. Frontier sought to reemploy Mr. Quick per its understanding of legal requirements under USERRA. As part of that effort, Mr. Quick was restored to active status on Frontier's Ultipro personnel system, using his prior position as First Officer, A printout of that status, as of May 28, 2015, is attached hereto as Exhibit A. He remains on that status today, pending assignment to an appropriate position.

5. Frontier also restored Mr. Quick's seniority and benefits, including dental and vision benefits. He was also made eligible for medical benefits. Frontier also maintained Mr. Quick's employee identification badge and travel benefits. To my knowledge, Mr. Quick has utilized some or all of these benefits, and continues to do so.

6. Mr. Quick also attended  return to work orientation on January 5, 2015, and Frontier paid him for those hours.

7. Mr. Quick is not on any official leave of absence with Frontier currently, despite the fact that he is not currently assigned to any position. This is because despite my repeated requests to him, he never obtained and filled out any medical leave of absence paperwork to place him in that status. Frontier therefore remained without any information to substantiate why Mr. Quick also repeatedly indicated that he wanted to file a claim for long-term disability benefits with Frontier's insurance carrier.

8. During my communications with him, Mr. Quick stated that his desire was to be reemployed with Frontier so that he could immediately apply for long term disability benefits. He repeatedly inquired about such disability benefits thereafter, but never filled out the application for the same.

9. As part of my communication with Mr. Quick, I sent emails to him on February 6, 2015, and March 9, 2015. These emails are attached hereto as Exhibit B and Exhibit C.

10. In Exhibit B, I stated to Mr. Quick: "Without more information from you about your interests and abilities, it is impossible for us to know what open positions you are either interested in or qualified – with reasonable training – to hold."

11. In Exhibit C, I stated to Mr. Quick:

…other than suggesting that you should be reemployed into position at or around a Captain's rate of pay, you have not previously assisted our efforts to identify any such appropriate reemployment position. Indeed, you have not even identified your claimed disability, which makes it impossible for us to determine what positions you might be physically capable of performing, with or without a reasonable…

I have previously asked you for information regarding your disability and leave of absence information, yet you have failed to provide it. We are available to discuss open positions with you…

In summary, even though you are not currently qualified (and cannot become so through reasonable accommodation and/or training by Frontier) to work as a First Officer, Frontier has provisionally reinstated you into this position to provide you with employee benefits, including long-term disability benefits at a First Officer's rate…You have also – and just recently – suggested that you may be seriously interested in returning to a *non-pilot's* position at Frontier. If you are sincere in this interest, then please engage with us in in a meaningful dialog in the manner indicated above to help us identify another position that you are qualified to perform (including with reasonable accommodation and/or training by Frontier).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Michelle Zeier

STATE OF COLORADO            )
                             )ss
COUNTY OF _Eagle_            )

Subscribed and sworn to before me by Michelle Zeier on this 12th day of November,

2015. Witness my hand and official seal.

_____
Notary Public

My commission expires: 12/14/2017

┌─────────────────────────────────────────┐
│        PATRICIA K. FERGUSON              │
│          NOTARY PUBLIC                   │
│        STATE OF COLORADO                 │
│      NOTARY ID 20094040649               │
│ MY COMMISSION EXPIRES DECEMBER 14, 2017  │
└─────────────────────────────────────────┘

-3-

# EXHIBIT A



# EXHIBIT B

## Elizabeth Marsiglia

| | |
|---|---|
| **From:** | Zeier, Michelle L. <michelle.zeier@flyfrontier.com> |
| **Sent:** | Monday, February 09, 2015 4:02 PM |
| **To:** | ekquick |
| **Subject:** | Follow up |

Dear Ed,

In further considering the issues related to your requested reemployment with Frontier Airlines, and since you stopped by the General Office last Thursday, February 5, a brief summary of where things stand will be useful to all parties.

Prior to your military leave, you were employed as a First Officer at Frontier Airlines. When you notified us of your intent to return from military leave in September 2014, we began the process of returning you to active status. However, at the time you notified us of your intent to return, you also notified us that you were not able to hold an FAA First Class or Second Class Medical Certificate. As you know, a Medical Certificate is a necessary requirement for all pilots, including First Officers.

Under USERRA, an employee must be qualified for any reemployment position. Due to your inability to hold an FAA Medical Certificate, you are not qualified to work as a pilot for Frontier Airlines, either a First Officer or a Captain. In addition, and beyond the impediment of your inability to hold the required FAA Certificate, you have yet to address the successive and multiple training and upgrade failures that you experienced first in 2006, and then again in 2007 immediately prior to your departure for military leave. As you acknowledged in a recent email, you never successfully completed any of your previous attempts to upgrade to Captain. As reflected in your pilot training records, your most recent failure to upgrade to Captain was on June 18, 2007. Thus, even assuming you were able to obtain an FAA First Class Medical Certificate (which you have told us you are not), you would only be eligible for reemployment as a Captain if you were able to successfully train and complete the required upgrade to that position. Similarly, you would only be eligible for reemployment as a First Officer if you were able to successfully train and complete the required requalification training. You would also be subject to the possibility of having your training history reviewed through the Training Review Board (TRB) under the collective bargaining agreement under either of these scenarios.

Because you are unable to hold an FAA Medical Certificate, any attempt to place you into the required training – including upgrade training – to become reemployed as either a First Officer or a Captain would be unproductive. Furthermore, it is indisputable that you never successfully upgraded to Captain prior to your leave, and that you are not currently eligible or able to work as either a First Officer or Captain. If you believe you could qualify for reemployment as a First Officer or upgrade to Captain with reasonable efforts by Frontier (and notwithstanding your inability to hold an FAA Medical Certificate), please notify us immediately.

Currently, because you have indicated no interest in becoming reemployed into a different position at Frontier (*i.e.*, other than as a First Officer or Captain), Frontier has provisionally reemployed you as a First Officer with all of your accrued seniority. You are currently eligible to participate in and use your Frontier employee benefits. However, due to your inability to hold an FAA Medical Certificate, you are currently unable to work, and thus unable to receive First Officer's pay.

Based on our conversations and email exchanges, and because you are not medically qualified or currently trained to work as a pilot, you have indicated that you wish to apply for Long Term Disability (LTD). I have told you a number of times that if you wish to apply for LTD benefits, you must complete the LTD paperwork and submit it. You have not responded to my requests for you to complete the LTD paperwork. We cannot do that for you. If you are having any difficulty completing the paperwork, please let me know. The ultimate decision as to whether you meet the qualifications for LTD benefits is up to the insurance carrier, not Frontier. Frontier anticipates that if you qualify for LTD

FA01052

benefits, these benefits will be awarded based on your current position as a First Officer, even though you are not qualified for that position (and even though you cannot become so through reasonable efforts by Frontier).

If you do not wish to apply for LTD benefits, but would rather return to work for Frontier in a capacity other than as a pilot, you may also pursue open positions for which you are qualified, or for which you could become qualified through reasonable efforts by Frontier. Because the position of pilot in the airline industry is unique, there are no jobs that are closely comparable. Without more information from you about your interests and abilities, it is impossible for us to know what open positions you are either interested in or qualified – with reasonable training – to hold. If you are sincere about pursuing other positions, please go to www.flyfrontier.com/careers and review if there are openings that you would like to discuss. We are available to meet to discuss open positions with you; please let me know if you would like to do that. We cannot guarantee how long any posted position will be available and the openings change frequently.

Finally, we are still missing some of your military paperwork. While you provided copies of orders and discharge papers for almost all of your leave period, we do not have copies of orders for the period from June of 2007 up through October 2007. Further, that period of time is not reflected in your discharge orders that you provided to us. If we missed something you have already provided that covers those months in 2007, please let us know.

Regards,

Michelle Zeier

FA01053

# EXHIBIT C

## Elizabeth Marsiglia

| | |
|---|---|
| **From:** | Zeier, Michelle L. <michelle.zeier@flyfrontier.com> |
| **Sent:** | Friday, March 06, 2015 2:45 PM |
| **To:** | ekquick |
| **Subject:** | FW: E Quick |
| **Attachments:** | UNUM Pilot LTD Certificate 2.pdf |

Ed,

This email responds to your emails of February 11 and 12, 2015. Your emails make numerous inaccurate representations regarding Frontier Airlines' efforts to reemploy you, and your responses to the same. As a threshold matter, it is misleading to suggest that Frontier has delayed in its efforts to reemploy you. As you know, you and Frontier mutually agreed to hold off on any reinstatement until after the holidays. As detailed below, Frontier has been trying to understand your desires with respect to reemployment, but has been hampered by your own actions.

First, despite your claim that you are qualified to perform "many, many other jobs at Frontier," you have repeatedly implied that you must be returned to work at a Captain's rate of pay (or something very similar) before the parties identify a job you can actually perform. You have insisted that you be reemployed at or around a Captain's rate of pay, but have not suggested how you are qualified – with or without reasonable accommodation or training – to hold any job at Frontier at that pay grade. Previously, you indicated you would prefer to return in order to apply for medical leave of absence and secure Long Term Disability benefits. Your argument for being reinstated at a Captain's pay rate indicates you wish to secure benefits at a pay rate and position for which you are not qualified.

Your insistence that you be reemployed at a Captain's rate of pay makes no sense because you have never, by your own admission, been qualified – with or without reasonable accommodation or training – to hold that position. For instance, and as Frontier has repeatedly told you, you cannot be reemployed as a Captain for numerous reasons, including: (1) your inability to hold a First Class or Second Class Medical Certificate; (2) your successive and multiple training and upgrade failures in 2006 and 2007; and (3) the fact that – even assuming you were medically able to fly, which you have told us you are not – your training history would have to be reviewed through the Training Review Board.   Any claim for pay rates based on a Captain "in training" are subject to successful completion of upgrade training, and in your case is subject to the Training Review Board process.

Second, your claim that you have not been reemployed in any position whatsoever since you informed Frontier of your interest to return to work in September 2014 is also untrue. You have been provisionally reemployed as a First Officer, and you are already receiving employee benefits – including travel benefits – based on your reemployment. However, since you have repeatedly told Frontier that you are disabled and unable to fly, you have not performed any actual work as a First Officer, and have accordingly received no wages. We will, however, pay you for the time you spent in new hire orientation after your request to return to work as a pilot. We have not reemployed you in any other position because, as discussed below, you have frustrated our efforts to identify an alternative reemployment position.

Third, with respect to employee benefits issues, Frontier is currently working with Charles Schwab to determine how to properly compensate your defined contribution and 401(k) plans to account for your period of military service. Frontier intends to follow USERRA in all relevant respects. Given the complexity of these issues (related, in part, to multiple changes to Frontier's relevant plans during your military leave) this may take some time. We will inform you when the process is complete. In the meantime, and in light of your request, I will send plan documents pertaining to Frontier's defined contribution and 401(k) plans. Notably, until recently, you have never previously requested these documents from me.

As to your long-term disability benefits, I have previously given you a description of available benefits and forms for applying for the same. You have now requested to see the actual plan documents. Although these plan documents are

1

likely unnecessary for your purposes, are already available to you, and are likely redundant of the information I have already provided to you, copies of the plan documents are nonetheless attached.  As I have repeatedly requested of you before, please advise me if you need help completing the relevant forms to request long-term disability benefits.  We cannot do that for you.  Although the ultimate decision as to whether you meet the qualifications for LTD benefits is up to the insurance carrier, not Frontier, Frontier anticipates that if you qualify for LTD benefits, these benefits will be awarded based on your current position as a First Officer.

Fourth – and perhaps most importantly – you suggest in your February 11, 2015, email that you may now be seriously interested in *non-pilot* positions.  However, other than suggesting that you should be reemployed into position at or around a Captain's rate of pay, you have not previously assisted our efforts to identify any such appropriate reemployment position.  Indeed, you have not even identified your claimed disability, which makes it impossible for us to determine what positions you might be physically capable of performing, with or without a reasonable accommodation (even apart from the question of qualification).

I have previously asked you for information regarding your disability and leave of absence information, yet you have failed to provide it.  We are available to discuss open positions with you.  Your claim that we have asked you to "apply" for these positions like any other candidate is not true.  Instead, positions listed on our website (www.flyfrontier.com/careers) are the currently open positions at Frontier (and we cannot guarantee how long any posted position will be available and the openings change frequently) and this list provides us a basis on which we may begin a dialogue regarding any *non-pilot* jobs in which you are interested.

Finally, the claim in your February 11 and 12, 2015, emails that Frontier Airlines is somehow attempting to "retaliate" against by mentioning a potential Training Review Board, is entirely self-serving and factually inaccurate.  Instead, as my previous emails to you made abundantly clear, the TRB was referenced only as amongst the reasons why you are not currently qualified to be a Captain.

In summary, even though you are not currently qualified (and cannot become so through reasonable accommodation and/or training by Frontier) to work as a First Officer, Frontier has provisionally reinstated you into this position to provide you with employee benefits, including long-term disability benefits at a First Officer's rate.  However, you have nonetheless insisted on being reemployed as a Captain – a position which you never previously held, to which you never successfully upgraded, and which are admittedly medically unable to perform.  This is inappropriate.  You have also – and just recently – suggested that you may be seriously interested in returning to a *non-pilot's* position at Frontier.  If you are sincere in this interest, then please  engage with us in in a meaningful dialog in the manner indicated above to help us identify another position that you will accept, and which you are qualified to perform (including with reasonable accommodation and/or training by Frontier).  Alternatively, please return the long-term disability benefits paperwork as quickly as possible to receive benefits at a First Officer's rate.

Regards,
Michelle Zeier

FA01078