Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3    Case No. 15-cv-00765-REB-KMT

 4    _____

 5    EDWARD K. QUICK,

 6         Plaintiff,

 7    vs.

 8    FRONTIER AIRLINES, INC., et al.

 9         Defendants.

10    _____

11              Proceedings before KATHLEEN M. TAFOYA, United

12    States Magistrate Judge, United States District Court for the

13    District of Colorado, commencing at 9:54 a.m., November 13,

14    2015, in the United States Courthouse, Denver, Colorado.

15    _____

16              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18    _____

19                        APPEARANCES

20              THOMAS JARRARD, Attorney at Law, appearing for the

21    plaintiff.

22              WILLIAM DABNEY, Attorney at Law, appearing for the

23    defendants.

24    _____

25                       MOTION HEARING
```

Page 2

```
 1                   P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE CLERK:  All rise.  Court is in session.
 6              THE COURT:  Good morning, everyone.  Please be
 7    seated.
 8              ALL COUNSEL IN UNISON:  Good morning, Your Honor.
 9              THE COURT:  All right.  We are here today in Case
10    Number 15-cv-765.  This is Edward Quick, plaintiff, versus
11    Frontier Airlines and Michelle Zeier.  Is -- am I saying that
12    right?
13              MR. DABNEY:  Yes, ma'am.
14              THE COURT:  All right.  May I have appearances
15    first for plaintiff.
16              MR. JARRARD:  Yes, Your Honor.  This is Thomas
17    Jarrard on behalf of Mr. Quick.  And Mr. Quick is here with
18    me today.
19              THE COURT:  All right.  Good morning to both of
20    you.
21              MR. DABNEY:  William Dabney on behalf of defendant
22    Frontier Airlines and Michele Zeier.
23              THE COURT:  Great.  We are here today on a motion
24    that was filed before the court.  I appreciate your briefing
25    on this issue.  I know you called for an informal conference.
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 3

1    And I didn't feel comfortable talking about it without

2    looking at some briefing.  And I'm glad after reading your

3    briefs that I didn't even attempt that because I think it's

4    important to understand the statute and the case law.

5            So it's Number 30, motion to compel discovery of

6    medical records and disability-related information filed on

7    October 30th, 2015.  So I have read the briefing of everyone.

8    I've also pulled the statute -- the two statutes that I think

9    are most germane to this case, which is 38 4312 and 38 4313,

10   and looked at them in connection with this request for

11   medical records.  And I -- you know, I'm going to allow you

12   to argue however you want, but I do think it's important that

13   you know kind of where I sit having read these.  I don't

14   think that we're really serving our time well for you to

15   argue with me about 4312.  I understand what that is.  And,

16   basically, I'm not going to comment on whether or not, you

17   know, plaintiff complied with that.  I mean, that's, I guess,

18   the issue before the District Court.  But -- but I think it's

19   pretty straightforward.  It has nothing to do with medical.

20           The problem, as I see it, comes in the

21   interpretation of 4313.  What do you do with a person who

22   does qualify under 4312 who cannot go back to the position

23   they held for whatever reason?  You know, whether the company

24   reorganized, or the job no longer exists, or the person is

25   disabled in some way or form.  Whatever the cause is, what --

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 4

1    what exactly does reemployment mean?  I think that's really

2    the key here.  And it seems to me, although I think there's a

3    lack of -- so far of proof that plaintiff was disabled, he

4    said he could not go back and be a pilot.  And that's what he

5    was.  So with -- a pilot is a unique animal, of course.  Not

6    to call you an animal.  But you know what I mean.

7            It's a unique profession I think that -- that's

8    kind of unique to pilots.  But be that as it may, there's a

9    lot of professions that are unique.  You know, not everybody

10   is a lawyer or a doctor, or whatever your profession is.

11   But -- so -- so I don't consider that to be the real key,

12   although, of course, defendant is an airline so obviously it

13   makes a difference here.  If he was -- if defendant was a

14   hospital it would make a defendant (sic).  It would make a

15   difference if you were a doctor.  So I don't think that's so

16   much the issue.  To me it's what do you do with that person?

17   And I -- in -- in terms of you must reemploy if they qualify

18   under -- under 4312, but to what?  You know, what do they go

19   to?  And to me that's what 4313 says.  And if you are looking

20   at 4313(a)(3), I don't see how you cannot talk about medical

21   records.  I just don't see how you can possibly ask a

22   defendant, no matter what the job is, you know.  So taking it

23   either -- looking at it in context as a pilot, or looking at

24   it in any other context, how can you possibly do anything

25   without telling the company that, you know, you need some

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 5

1   kind of accommodation, training, something, because you can't

2   go back to what you were doing.  And the company is required

3   to give you basically the equivalent in seniority status and

4   pay, but they've got to be qualified for the job that they're

5   being reemployed to.  So you've got to know what they can do.

6           I mean, if the pilot comes back and the pilot is

7   blind, for instance, what -- what are the jobs that a blind

8   former pilot could do?  You know, there's probably a lot.

9   But -- but you have to know that.  And I know this case is

10  different from that, so I'm kind of picking the obvious

11  non-disability.  But I just -- I don't -- and I will tell you

12  I'm not drunk today, so --

13          MR. JARRARD:  Sorry, Your Honor.  I never intended

14  that to -- to appear in -- on a -- on a record.

15          THE COURT:  Right.  I know.  But I thought I'd

16  just acknowledge it.

17          But I -- but I really don't -- I don't understand

18  the argument that you could withhold medical records that are

19  pertinent to what you reemploy the plaintiff as since he

20  can't be a pilot.  And why do you think -- I guess a

21  sideline, which I understand a little bit more, why you don't

22  think you have to share what the disability is in the first

23  place.  I don't necessarily think you have to necessarily

24  prove that because it's in the discharge paperwork, as I

25  understand.  But that puts him, as I see it, in that Number 3

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 6

 1   status under 4313.  I mean, that's put him there squarely

 2   under (a)(3).  And so you have to know what it is to know

 3   what you have to do, and to know what's equivalent, and --

 4   and what he's -- will be qualified for after training or

 5   whatever, so that you can put him in the right position

 6   that's equivalent in seniority status, pay, etcetera.  So

 7   you're going to have to enlighten me, because on my own

 8   that's how I'm putting the pieces together.

 9           MR. JARRARD:  Okay.  Your Honor, you cut to the

10   quick and that really is the issue here in this case.

11   What -- and I don't want to bore the court with any

12   discussion about 4312, but it's integral.  I mean, opposing

13   counsel noticed also that --

14           THE COURT:  Maybe -- could you go to the podium?

15           MR. JARRARD:  Oh, I'm -- I'm sorry, Your Honor.

16           THE COURT:  I know all courts are different.  But

17   we usually stand.

18           MR. JARRARD:  Okay.  I apologize, Your Honor.

19           I think even opposing counsel acknowledged that

20   4312 is integral to -- or 4313 is integral to 4312.  The

21   court's question is what do you do if the service member is

22   not qualified?  Well, you have to bring him back before those

23   kind of decisions can be made.  The statute is very clear on

24   that.  If, and it's in a parenthetical, after reasonable

25   efforts, then we move to the position that's in 4313(a)(3) I

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 7

```
 1   believe it is.  And it's --

 2          THE COURT:  But what do you bring him back as?  I

 3   mean, is it your position that you -- you have to bring him

 4   back as a First Officer?  That in his case that he has to be

 5   brought back as a First Officer or a Captain and put on

 6   active status, and then move him out of that?  Or what's --

 7   what's the -- what's your logic, the practical logic of this?

 8          MR. JARRARD:  Well, just total supposition, Your

 9   Honor.  In practical speak -- for example, at the National

10   Security Agency, they bring the service member back.  They

11   have him in employment.  They begin to assess his

12   qualifications and abilities.  They look internally within

13   the company.  The guy is there at work being paid.  I don't

14   know if he's folding napkins or what he's doing, but he's

15   doing something.

16          THE COURT:  Well, isn't that the point, is that he

17   should be doing something?  And as a first cut, you know, at

18   least an initial cut, when he tells you I can't go out and

19   fly a plane, okay, let's see.  You were a pilot.  So what do

20   we -- what do we do?  Can you see?  Yes.  I can see.  Okay.

21   Well, then you can read.  Okay.  So -- I mean, don't you have

22   to make those first initial cuts to -- to put the person

23   somewhere to do the evaluation?

24          MR. JARRARD:  Yes.  And I don't mean to argue with

25   Your Honor, but what happens first is there's reemployment.
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 8

 1   The event occurs.  The service member comes back to work.  He

 2   puts his uniform on.  He walks through the front door.  He's

 3   working with human resources to determine -- and maybe it's

 4   been -- maybe in a practical sense it's something that human

 5   resources could have analyzed or thought of beforehand.  But

 6   that's not the case in -- in the circumstances of Mr. Quick

 7   or just a civil service member.  They return and they

 8   establish, I'm no longer qualified.  And the qualification

 9   question, the burden, is always on a defendant.  It's not on

10   the service member.  But the service member comes back first.

11   They come into work with a uniform on.  They start working.

12   And, like I said --

13           THE COURT:  With the uniform off actually, right?

14           MR. JARRARD:  Well, I don't know what that --

15           THE COURT:  I mean, because they're not in

16   military service anymore.

17           MR. JARRARD:  Well, I don't know what the protocol

18   is at Frontier Airlines.  I assume that people wear uniforms

19   that are -- probably not, but in any event --

20           THE COURT:  Yeah.  Probably not if you're not a

21   pilot.  See, that's the point I'm getting at.  It's kind of

22   the chicken and the egg, right?  I mean, isn't that what

23   we're talking about?

24           MR. JARRARD:  No, Your Honor.  We're not talking

25   about that.  Please let me proceed.

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 9

```
 1            So as soon as the service member is returned,
 2   whether he's in uniform or not, he begins to work with the
 3   employer.  He's in a paid status.  He's working there.  And
 4   which job are we going to put you into today, Mr. Quick?  You
 5   can't fly a plane, so I guess we're not going to send you
 6   through flight training updates that would be necessary to
 7   fly planes.  What qualifications do you have?  And they begin
 8   to analyze those qualifications.  And they say maybe you'd be
 9   a good fit in a position like this.  Maybe you'd be a good
10   fit somewhere else.  What happened in this case was not that.
11   They did not bring him back.  And then on paper -- they might
12   have some document that said he was brought back to active
13   service on a computer a month after he filed the case,
14   because that's what the record shows.  But that's not what
15   happened.  They put him -- they put him in a fictional
16   status.  And they said, Go to our website and apply for
17   whatever job you think you're qualified for.  That's not his
18   burden.  The burden is on Frontier to place him in a position
19   that would work.  And that burden is fair and appropriate
20   under the statute.
21            USERRA was written to reemploy veterans.  It's
22   broadly construed in favor of the returning service member.
23   All of the burden of the returning -- of the hardships of
24   returning from service are placed on the employer, not on the
25   service member.  And -- but that's exactly what happened
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 10

 1    here.  The employer, Frontier, put all the burden on

 2    Mr. Quick.  Excuse me, Your Honor.  They told him, Go find a

 3    job that you think you're qualified for.  They told him,

 4    Prove to us that you have a disability.  That's -- this is

 5    well after the case -- after the case had commenced.  But

 6    that's not the burden.  The burden is not on the service

 7    member.

 8              And the two arguments that we heard in the

 9    briefing -- and forgive me, I'm not taking potshots, but it's

10    like -- almost like a moving target.  I'm trying to hit a

11    moving target here.  At first it was it's related to an undue

12    hardship defense.  And then in the second briefing I read --

13    I read that it's related to what the reasonable efforts of

14    the employer are.  And the two arguments that we read have

15    already both been rejected.  The both argument was that

16    Mr. Quick's medical information is relevant to the issue of

17    whether Frontier took reasonable efforts.  But when we look

18    at the statute and the definition of what undue hardship is,

19    it does not incorporate whatsoever anything with regard to

20    the medical information.  Neither does reasonable efforts.

21              The second argument that we heard was that the

22    defendants also required Mr. Quick's medical information in

23    the reemployment process such -- because it was entirely

24    proper.  And then they use the terminology that this argument

25    is entirely logical.  These two arguments, these two legal

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 11

```
 1   arguments, Your Honor, have been rejected twice by two prior
 2   courts that have addressed similar issues.  And those two
 3   cases are the Prairie Farms case and the Petty case.  And
 4   I'll quote from Prairie Farms.  "The defendant," like in this
 5   case, "argues that the plaintiff's lack of communication and
 6   responsiveness to the defendant is to blame for the
 7   defendant's inability to reemploy and accommodate the
 8   plaintiff."  Nothing -- noting also that the plaintiff did
 9   not know if the defendant had ever received his medical
10   forms.  That's from the Prairie Farms case, Your Honor.
11           The court noted in response to the argument,
12   Defendant argues that its efforts to obtain medical
13   documentation from the plaintiff would satisfy the reasonable
14   effort standard.  That's the same argument we've heard here
15   today or we've heard in the briefing.  However, as discussed
16   above and citing 4302, as well as the Petty case, however, as
17   discussed above, defendant was legally prohibited from
18   requesting this documentation under USERRA.  It's difficult
19   to see how such impermissible request should be considered
20   reasonable efforts under the statute.  And it goes on to
21   quote the Petty case which I quoted in my briefing, Your
22   Honor.  It begins, "At the point at which Petty was entitled
23   to reemployment under 4312 and 4313, Metro had no basis upon
24   which to question his qualification.  Petty had satisfied the
25   only prerequisites to reemployment, those specified in 4312."
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 12

```
 1              THE COURT:  But, see, that's not the case here.
 2   He came back and said, I can't do the job I had.  I can't do
 3   it.  So the -- I -- I agree with you.
 4              MR. JARRARD:  Okay.
 5              THE COURT:  Re -- you know, the chicken or the egg
 6   comes first.  They should come kind of simultaneously.  I
 7   mean, if you qualify under 4312 it doesn't matter whether
 8   you're disabled or not.  I mean, it has -- it has nothing to
 9   do with it.  But he came back and said, I can't do the -- I
10   can't be reemployed at the job I had.  So obviously everybody
11   needs to take some effort to figure out where he should be,
12   not if he should be, but where.  You know, what job is either
13   exactly equivalent in pay status and everything, or the
14   nearest approximation?  You know, depending on whether you're
15   going under 4313, whether you're going under (A) or (B)
16   there, because -- let me find it here what I'm talking --
17   what I'm talking about is under (3).  Okay.  So 4313(a)(3),
18   and then the large (A) or (B).  You know, those are the two
19   things that you have to do.  And if they don't know what's
20   wrong with you, how can they help you to do that?  How can
21   they -- I mean, I kind of understand the chicken-egg
22   frustration with the employer if the -- if the returning
23   service member won't say what's wrong with you.  You can't
24   just say, Okay, I can't be a pilot.  Well, why can't you be a
25   pilot?  Let's see if that eliminates you from being, for
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 13

1    instance, I think the expert said a trainer of pilots, a
2    simulator trainer, all these things that apparently he's
3    perfectly competent and capable of doing.  But -- but they
4    have to -- to get to that.  They have to talk to the person
5    and say, What -- what is it?  What can you -- what can you do
6    and what can't do you?  Right?  If you have a back problem,
7    you can't sit.  Can you do it standing?  You know, all those
8    kind of considerations require communications to get him to
9    the place that he is entitled to be after serving his country
10   all these years.
11           MR. JARRARD:  Your Honor, we don't deny that that
12   would be the ideal circumstance.  And I agree that -- that
13   that could occur simultaneously, that that would be the
14   ideal.  But I do not agree that -- that everybody has a
15   burden here.  And let me -- and I'll answer your question.
16   What -- what should have happened was they brought Mr. Quick
17   back to work.  And maybe he would have been there for a day
18   or two days or three days by the time that they worked
19   through these questions, appropriately worked through these
20   questions.  Mr. Quick, what can you do?  What can't you do?
21   Since you left, this is what we understood that your -- your
22   personnel records shows with regard to your training.  What
23   other additional training and -- and qualifications did you
24   receive on active duty?  What other additional -- what are --
25   what are your limitations?  We know his limitations are that

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 14

1  he cannot obtain an FAA certificate.  He told them that.

2          THE COURT:  But -- but why not?

3          MR. JARRARD:  The expectation being that bring me

4  back to work in a position that doesn't require me to fly so

5  that -- and, like I said again, that the conversation would

6  occur upon reemployment, not that he's -- that he's compelled

7  to answer.  There's a factual -- the underlying problem here

8  is the huge factual dispute about whether they ever made any

9  inquiry to Mr. Quick.  So I just want to make note of that,

10  that that's the underlying factual dispute here.

11          But, however, back to the process, in that first

12  two or three days all of this work should have been done.

13  That's the -- that's the -- that's the returning veteran's

14  expectation.  That's what the law requires.  That they

15  reemploy first.  And then after reemployment they have the

16  obligation to look at the qualifications of the service

17  member.

18          THE COURT:  Yeah.  Reemploy as to what?  I'm not

19  disagreeing with you.  But I -- and I'm not trying to -- I'm

20  not trying to get to the ultimate issue of the case.  What

21  I'm trying to say is that they disagree with that.  Their --

22  their defense here is that if they had an obligation to

23  reemploy -- and I'm sorry I'm putting words in your mouth,

24  Mr. Dabney.  I'll let -- allow you to put your own words out

25  there.

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 15

```
 1              But as I read it, if -- if he qualified under
 2   4312 -- and I don't know whether there's an issue with time
 3   or -- or anything like that.  But if he did, yes, we have to
 4   reemploy.  But -- but we have to look -- we are mandated to
 5   look at 4313 and get you to the closest job that you can do,
 6   you having told us you can't do the pilot thing anymore.  So
 7   that's their defense, that he wouldn't cooperate with them
 8   and they couldn't do it.  And they didn't know what to do
 9   with him because he wouldn't cooperate with them under 4313.
10   So that -- that may be a good defense or bad defense.  It may
11   be the worst defense in the universe.  But if it's their
12   defense, then they're entitled to discovery to go with that.
13   And that's what I have to look at is just, you know, 26(a),
14   and is it -- is it relevant?  And that's why I started out by
15   telling you it seems to me very relevant.  Whether it's a win
16   or not, it has nothing to do with me, right?  That's going to
17   be your other judge.
18              MR. JARRARD:  Yeah.  I understand that, Your
19   Honor, truly I do.  But two things that I would mention is
20   USERRA does anticipate time for the employer -- a reasonable
21   amount of time for the employer to reemploy the service
22   member.  4313(a) says they have to reemploy the service
23   member promptly.  And that promptly is defined as within two
24   weeks.  And Mr. Quick communicated with Frontier when he --
25   immediately when he came back.  Mr. Quick immediately told
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 16

```
 1   them I can't fly.  And then he said, I want to come back to
 2   work.  And what happened next was not just two week's of time
 3   delay, which is what's appropriate under the statute, it
 4   became seven months.  Seven months of back and forth.  Give
 5   us more paperwork.  Give us more paperwork.  Give us more
 6   paperwork.
 7            Now, I'm not conceding that they asked for
 8   anything regarding to his disabilities, because I don't
 9   believe they did.  But even if they did ask for anything with
10   regard to his disabilities, that was inappropriate under the
11   statute itself.  It states you can't require additional
12   prerequisites to reemployment.  I mean, that's what these
13   are.  These are arguments that it's okay to have additional
14   prerequisites to reemployment.  So in a practical sense,
15   in -- if there's anything balancing of the scales here
16   they're all in favor of the veteran.  But with a reasonable
17   look at the statute, we understand that the employer has
18   about two weeks to kind of respond and react to this, and
19   then give the service members -- get back to work.  Come back
20   on Thursday.  We think we have a spot for you over here.
21   We'll work it out.  And that's when the questions happen.
22   That's when there's, like, Oh, wow.  Are you qualified to
23   instruct?  Are you qualified to fold napkins?  Whatever it
24   may be.  What are you qualified to do?  That's when the
25   working happens.
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 17

 1          THE COURT:  And it's got to be the highest level.

 2   I mean, it really isn't folding napkins unless that's really

 3   all you can do, right?

 4          MR. JARRARD:  Well, I -- I -- I only use that as

 5   an example, Your Honor.

 6          THE COURT:  Yeah.  I mean, he's got to --

 7          MR. JARRARD:  It does need to be --

 8          THE COURT:  -- he's got to be in an equivalent job

 9   of status, and pay, and everything else.  And a pilot is one

10   of the highest levels in an airline I would think.  I mean, I

11   don't know that for sure, but I would think it is.  And so

12   they've got to -- they can't just -- just bring him back to

13   work stuffing envelopes.  They can't do that.  That would be

14   illegal.  They've got to employ him at the best, highest

15   level that they can do that's the closest to the equivalent,

16   as I read the statute.  And, you know, please don't think I'm

17   arguing with the statute --

18          MR. JARRARD:  No.

19          THE COURT:  -- because I'm not.  I agree with it

20   100 percent.  But -- but you've got to give some leeway to

21   the employer when -- when the employer -- the service member

22   himself comes back and says, I can't do my job.  I can't do

23   that job.  So I need at least enough accommodation to find

24   one that's the equivalent, or you've got to maybe raise my

25   pay.  I mean, maybe you don't normally pay flight instructors

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 18

1    the same thing you pay as pilots, but probably you're going

2    to have to pay him.  So you can do all those things, but you

3    have to know what his -- his limitations are.  You have to

4    know in order to find a job for him.  And that's their -- all

5    I'm saying is that's their defense here is that they didn't

6    know.  Now, maybe it's because they didn't ask and they

7    didn't do what they should have done.  That's your case.

8            MR. JARRARD:  Yes, Your Honor.

9            THE COURT:  But for discovery purposes I think

10   they're entitled to discover the medical information that

11   should have been given to them at some point so that they

12   could make a decision about reemployment.  Not about

13   reemployment, but about where to reemploy.

14           MR. JARRARD:  Your Honor, I understand their

15   argument.  I do.  But the -- I take umbrage to the concept

16   that -- that the employer can require of the service member

17   prior to reemployment additional information beyond that

18   discharge document.  They can't.

19           THE COURT:  Well, I -- okay.  Let's say they

20   can't.  Let -- I -- let's say you're --

21           MR. JARRARD:  They -- they can't.

22           THE COURT:  -- completely 100 percent right.  But

23   within one minute of reemployment they can then get the

24   records they need.  So that they have to get them I would

25   think to make --

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 19

```
 1              MR. JARRARD:  The -- the -- I -- I think --
 2              THE COURT:  -- the proper determination.
 3              MR. JARRARD:  -- I think the appropriate -- well,
 4    let's give them their two weeks to -- to deal with the issue
 5    that they were confronted with when he requested reemployment
 6    in September.  Give them that two weeks.  And during that two
 7    weeks I don't know what they'll come up, but my hope is that
 8    they'll come up with something that's the same, similar
 9    status in pay and responsibilities at least to the job that
10    he left.  And if they don't --
11              THE COURT:  If -- if they know what his
12    limitations are.
13              MR. JARRARD:  -- then which job do they put him in
14    on Monday when he comes into work?  The job they put him in
15    on Monday is Ed, we're going to pay you as a First Officer
16    because that's the way we paid you when we left.  We need to
17    start working through these issues with you.  What are you
18    qualified to do?  We'll send you to a -- to a vocational
19    rehabilitation specialist to see if -- if there's some
20    additional position here.
21              THE COURT:  Sure.
22              MR. JARRARD:  But, you know, Frontier is not
23    blind.  They know who Mr. Quick is.  They know what his
24    service -- what his records look like.  They know he's a
25    returning pilot.  They have hundreds of pilots.  They have
```

Page 20

 1    dozens of pilots that work in positions outside of the flight

 2    line.  And so they have tremendous opportunity.  And they're

 3    the only ones with that information.  And what they're

 4    demanding from Mr. Quick is go find that.  Go look on our

 5    website, see if you can find an open job and -- and say

 6    you're qualified for it.  Then we'll make an assessment

 7    whether or not we'll take you back in that position.

 8              THE COURT:  Okay.  I understand that, but

 9    that's -- that's different.

10              MR. JARRARD:  That's -- that's what happened.

11              THE COURT:  That may be what happened, but that's

12    different from the argument before me today --

13              MR. JARRARD:  Yes.

14              THE COURT:  -- which is, are we entitled to know

15    what his medical disabilities were or are --

16              MR. JARRARD:  I think that --

17              THE COURT:  -- so that -- under 4313?

18              MR. JARRARD:  -- I think that upon reemployment

19    that -- that Frontier would be entitled to know what his

20    limitations and capabilities are.  I don't think that that

21    requires a direct inquiry into Mr. Quick's wartime injuries.

22              THE COURT:  Well, I think it does actually.  I

23    think it does.  And -- and, unfortunately, I mean, that's

24    private information.  It is private.  It's personal

25    information.  But you have to -- it's like everything else.

Page 21

1   You have to make an assessment.  And like, for instance, the

2   Social Security.  To get Social Security Disability you have

3   to tell Social Security what your disability is.  And

4   sometimes you have to go in front of an administrative law

5   judge and actually fight it out.  And what they look at is

6   what -- not only what is -- what is your disability, but how

7   does that limit you?  Because all of us have disabilities of

8   one form or another.  We're all -- you know, like, you're

9   nearsighted or farsighted.  Does that limit you in your job?

10  Well, not if you can wear glasses, right?  I'm putting on

11  mine.  Right?  So -- so they've got -- you've got to know

12  that.  Just because it's personal and private doesn't mean

13  that in certain situations you don't have to know.  And they

14  do have to know what his limitation is before they can say

15  well, it looks to us at least.  Now, it may not look to

16  Mr. Quick, but it looks to us like you could do all of these

17  jobs.  These jobs pay or could pay the equivalent.  Yeah.

18  You'd need some training.  Just like you'd have to go back

19  and get your pilot recertification if you were going to fly.

20  So we'll -- but we'll do all that.

21          Okay.  So your argument is that -- that they

22  should have reemployed with full pay first and then done

23  that.  And I'm not making any finding one way or the other.

24  Their defense is saying we have to do it somewhat

25  simultaneously.  We have -- when he tells us he can't fly, we

Page 22

1  then have to determine, well, what is it you can do?  And if

2  he won't tell us, we don't have any choice but to say, well,

3  okay, here's the open jobs.  Do you think you can do any of

4  these?  Because how else would they know, right?  So it's

5  a -- you know, and we're just talking about discovery.  We're

6  just talking about relevance of discovery.  And I -- I think

7  this is relevant.

8           MR. JARRARD:  Your Honor, Mr. Quick did tell

9  Frontier what his limitations were.  He said, I can't fly as

10  a pilot anymore.  That's what he told them.

11           THE COURT:  Right.  But why?  Why not?  Is it

12  because you're blind?  Is it because you can't sit long

13  enough in a pilot's chair?  Is it -- or for what other --

14  whatever other reason.  It makes a difference what you then

15  might could do, right?

16           MR. JARRARD:  But the -- but the second part of

17  their argument is that -- that if he won't tell us, and

18  that's not what happened.  And that's the underlying factual

19  dispute.  I understand that, Your Honor.  And -- and if -- if

20  Frontier's position -- I understand what Your Honor is

21  saying, but I also read the briefing.  And I see the string

22  together argument that in order to make reasonable efforts we

23  had to know this information.  In order to make reasonable

24  efforts they had to reemploy him first and then take steps.

25  And what my fear is, is in this case as we proceed that --

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 23

1    that an acknowledgment of a defense like that, that truly

2    does not exist in USERRA 4313.  It's a great practical

3    academic mental exercise.  I agree.  But to shoehorn that

4    into a defense later on of undue hardship, I think what we're

5    doing is we're creating a problem.  We're putting something

6    into USERRA that's never been there before.  The defenses in

7    USERRA -- and this is to the issue of relevance.  The

8    defenses in USERRA are narrowly construed against the --

9    against the employer.  That reemployment rights are broadly

10   construed in favor of the service member.  But what we're

11   doing is we're creating a defense, factual disputes aside,

12   for Frontier to argue later on that undue hardship is -- and

13   I'll quote them.  They said that, "undue hardship is" --

14   "includes" -- "means an employer's efforts to culminate a

15   disability."  And that's absolutely not part of the undue

16   hardship defense.  The defense is defined at 4303(15).  And

17   it says nothing about that.  It says nothing about

18   accommodating disabilities.  So I understand the thought of

19   the argument, but it doesn't fit with the defense.  So that

20   defense is not a basis to create relevance here.  Now, so

21   what could it be?  It's not 4312.

22              THE COURT:  Well, here's what it could be.  If he

23   has total disability according to Social Security, is he able

24   to work in any job at any time?  Right?  And if he can't, if

25   he can't work in any job because of his disability, then, you

Page 24

```
 1   know, what -- what are you supposed to do?  Pay him to be a
 2   pilot when he can't do any job and Social Security has
 3   already said that?  That seems to me to be a defense here.
 4          Now, also I see -- I see an undue hardship defense
 5   in that we're trying our best to comply and he won't tell us
 6   what's wrong with him so we can't figure out where to put him
 7   under 4313, and we're trying.  But -- now, I'm not saying
 8   they're doing that.
 9          MR. JARRARD:  Mm-hmm.
10          THE COURT:  I'm just saying that's their defense.
11   And that's an undue hardship because we can't comply.  He
12   won't tell us what he can do and what he can't do.  But he
13   tells Social Security that he can't do anything.  He can't
14   work at all.  So, you know, I can't help but think as a
15   practical matter that these things go together.  And if they
16   do -- and that's the big if in your case that will be decided
17   by Judge Blackburn.  If they do go together, then the
18   defendant is entitled to the information that it seeks.
19   Now -- so that's just a discovery thing.  If you're
20   successful with your argument that none of this matters at
21   all, because from the minute that he told him and proved to
22   them the three points of eligibility under 4312, nothing else
23   mattered, at that point he had -- if you're successful in
24   that, then, yeah, this information won't be probably even
25   presented to Judge Blackburn.  But you've got to make that
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 25

1    argument.  And that's your argument.  And I understand it.

2    But their argument is different.  Their argument is that

3    the -- the undue hardship under 4312 is triggered when --

4    when the person won't -- will tell you they're disabled, tell

5    you they can't be reemployed in the job that you gave them,

6    and won't tell you what else they can do, won't allow you to

7    make the determinations you need to make.

8           MR. JARRARD:  Your Honor, I understand.  What

9    Frontier asked for in discovery wasn't tell us what your

10   three disabilities and limitations are.  That's not what they

11   asked for.  They asked for a detailed description of all his

12   private -- all of his private medical information.  I'm sorry

13   I don't have the cite, but it's in 30-16.  What they wanted

14   is a perfect description of all of his injuries.  How they

15   happened, etcetera.  I mean, it's very broad.  It's very,

16   very broad.  And the idea that -- that -- that Mr. -- somehow

17   I tell you that -- that they were forced to pursue a FOIA

18   request in order to obtain that information, it's just not --

19   just not true.  They made their FOIA request in July.  They

20   got a -- the document shows it was received on the 28th of

21   July.  The document response to the FOIA request stated that

22   in response to your overly broad -- and I'm using my own

23   words.  But your overly broad, we found these items.  And

24   then they received that.  And they didn't propound discovery

25   until later in August.  So they already had --

Page 26

```
 1          THE COURT:  But your -- but your whole --
 2          MR. JARRARD:  -- that information.
 3          THE COURT:  -- your whole theory is that they --
 4   they should have done -- done everything very quickly.  Two
 5   weeks at the most, right?  Had that two-week period.
 6          MR. JARRARD:  Two weeks, maybe three.  I don't
 7   know.  Maybe 21 days because it's a unique situation.
 8          THE COURT:  So their defense here, apparently one
 9   of the defenses, is we couldn't do it because he wouldn't
10   give us the stuff.  He forced us to go try to get a FOIA
11   request to figure out how to reemploy him, where to put him,
12   what job he could do under 4313.  And because he wouldn't do
13   it, that's what caused the delay.  So if delay is going to be
14   part of your argument that they didn't do what they should do
15   quickly, then that's part of their defense, is that we
16   couldn't do it.  So, again, I'm not saying it's a good
17   defense or it's a good argument.
18          MR. JARRARD:  Mm-hmm.
19          THE COURT:  I'm not -- I'm not doing either.  I'm
20   just saying that it seems to me that they're entitled to
21   evidence that supports that, especially given that you've got
22   a protective order in place.  The documents are obviously
23   medical records.  They're sensitive.  They can be sealed, you
24   know, and certainly will not be on the public record here.
25   But -- well, won't be until Judge Blackburn decides whether
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 27

1    or not he's got to rely on them.  And then it's unclear.  But

2    I think all of the things that they've asked for, if -- if --

3    they are generally summarized in Document 30 which is the

4    motion, on page 7.  So medical records and information about

5    plaintiff's disabilities, his ability to perform essential

6    work functions.  And that's not just essential pilot

7    functions, but essential work functions so they could figure

8    out where he would best -- or what -- what fits, not where he

9    should best be, but where he's entitled to be given the --

10   the -- 4313's mandate that he get the same status pay,

11   seniority, etcetera.  And applications for and receipt of

12   military, Social Security, and other disability benefits that

13   he sought during the relevant time frame.  And those seem

14   reasonable to me if he's telling other people that he can't

15   work at all, you know.  I mean, how could those not be

16   relevant to the defense?  And I know you're not crediting the

17   defense, but they're relevant.

18            MR. JARRARD:  Your Honor, they're relevant to a

19   defense under USERRA to -- and I want to emphasize the point

20   that an undue hardship defense does not include inquiries

21   into medical information.  It's just not there.  It's not --

22   it's not anywhere.  And I understand that there's a brief

23   citation -- brief discussion and commentary.  The commentary

24   under the Department of Labor regulations in response to

25   inquiries and comment from the public which is -- I don't

**Edward K. Quick vs.**
**Frontier Airlines, Inc., et al.**

**Motion Hearing**
**November 13, 2015**

Page 28

 1   think is authority that binds anybody to the question of

 2   relevance in a USERRA defense.  But it has to be relevant to

 3   the defense.  And the real defense here does not include any

 4   discussion about medical information.  I understand their

 5   argument.  I do.  And in response to the relevancy question,

 6   the -- for the court today -- for the court today to say

 7   that -- and this is -- and it's not a limited inquiry.  It's

 8   a very detailed inquiry into Mr. Quick's private medical

 9   information.  Describe in detail any and all facts, reasons,

10   medical conditions or causes of any kind, description,

11   demonstrating why you're unable to obtain FAA certification.

12   Everything.  Tell us everything about your medical history.

13   And there's other requests as well.  That's --

14           THE COURT:  But limited -- limited to why you

15   can't get FAA certification, right?  So if -- if -- it has

16   nothing to do with whether or not he has pertussis as a kid,

17   right?

18           MR. JARRARD:  No, it doesn't.

19           THE COURT:  I mean, that -- those things are all

20   out.  They don't have anything to do with FAA certification.

21   It's only that.  It's limited to that.  And -- and that's

22   important because he says he can't get that.  Well, okay.  So

23   he can't be a pilot.  But does that exclude him from other

24   things?  I mean, I don't know.

25           MR. JARRARD:  If -- if -- if that had been the

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 29

```
 1   inquiry here, Your Honor, it hadn't have been this broad

 2   request, I think there's four of them in the interrogatories.

 3   And I'm looking at Document 30-1.  If that had been the only

 4   request, Mr. Dabney and I might have been able to resolve

 5   that by now.  But that was not the request that was made

 6   here.  It's a very broad set of requests.  They want all the

 7   information about Mr. Quick's medical history, how he was

 8   injured, where did it happen, what happened on active duty.

 9   It wasn't -- the inquiry was not limited to solely why

10   can't -- why do you believe you can't obtain an FAA medical

11   certificate.  If that had been the issue --

12               THE COURT:  Which one are you reading from?

13               MR. JARRARD:  I'm sorry?

14               THE COURT:  Which one are you reading from?

15               MR. JARRARD:  Oh, Your Honor, I was looking at

16   Docket 30-1, reproduction of our responses to the discovery

17   requests.

18               THE COURT:  I mean, I'm there, but which exact

19   number?

20               MR. JARRARD:  It will start with, I believe it

21   is -- was it Number 4, Bill?

22               MR. DABNEY:  4.  Yes.

23               THE COURT:  Maybe 4, 5, 6, 13, 15?

24               MR. JARRARD:  Beginning -- beginning with Number

25   Four, proceed -- and, in fact, they're probably listed in my
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 30

1    proposed order.  Interrogatories Number 4, 5, 6, 13, and 15.

2    Request for production 4, 11, and 15, Your Honor.

3              As I was saying, if the request had been limited

4    to solely an inquiry as tell us what medical conditions or

5    limitations you have -- or, I'm sorry, medical conditions you

6    have that would limit your ability to obtain an FAA medical

7    certificate, that -- that might have been an issue that we

8    could have resolved by now and we wouldn't be here today.

9    But what we got was a shotgun approach to discovery to find

10   everything with regard to Mr. Quick's private medical

11   information.  And so my fear when I see that is -- first of

12   all, I've never seen it in a USERRA reemployment case ever.

13   And if it's a question of just merely his qualifications,

14   then -- then the inquiry may have been what qualifications do

15   you have?  Or the inquiry could have been what certifications

16   have you obtained?  But that wasn't the limit of it.  It was

17   very broad.  It was a shotgun.  And my client was reasonably

18   shocked by that inquiry, and I was reasonably shocked, too.

19   I was, like, why -- why is all this related to whether or

20   not -- and we tried.  We worked hard to figure it out.  But

21   there's such a broad approach that there's no -- there really

22   is nowhere to get to.  Not that we can't get to agreement

23   because we've agreed on many things.  But there's just no way

24   to get to consensus when the approach to the request for

25   information is so dramatically broad.

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 31

```
 1              Like I was saying, Your Honor, if the inquiry had
 2   been simply tell us why you believe you would not be able to
 3   qualify for an FAA certificate, and they can use that, take
 4   that into account, for what?  I don't know.  That he couldn't
 5   have an FAA certificate?  The burden is on the defendant in
 6   these cases to show that an employee is not qualified.  The
 7   burden is not on the employee.
 8              THE COURT:  Well, except that the service member
 9   said I'm not qualified to be a pilot.
10              MR. JARRARD:  That's a fact.
11              THE COURT:  He said that.
12              MR. JARRARD:  He -- that's --
13              THE COURT:  So -- so the thing is that's a fact I
14   think they took into account.  They didn't really question
15   him.  There's some indication that there's some kinds of
16   disability in his discharge papers.  So it's fine.  But what
17   next, right?  What next?  Okay.  So you can't be a pilot.  We
18   understand that.  So let's figure out what -- what is the --
19   what's next?
20              MR. JARRARD:  That's the inquiry they could have
21   made within the -- you know, within the first two weeks.
22   They're being asked --
23              THE COURT:  Well, they're -- they're saying
24   basically that they did.  I mean, their -- their defense is
25   we tried to get to this and you wouldn't tell us, and so we
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 32

1   can't figure it out.  And so it looks like it degenerated.

2   They're going to say we tried to figure it out other ways by

3   going to FOIA.  You know, that's their defense to your

4   whole -- the delay of game kind of -- so --

5           MR. JARRARD:  Your Honor, the -- I don't want to

6   start losing track with the court.  But I do -- I do want to

7   emphasize that before the court is Mr. Quick's motion for a

8   protective order.  And we have argued why the request for

9   information are not relevant to the claims and defenses.  I

10  understand the logical arguments that opposing counsel has

11  made.  I do not believe that those are part of the defenses

12  in USERRA.

13          Setting that issue aside, the -- this court may

14  under either Rule 37 or Rule 26 for good cause limit or -- or

15  prohibit inquiry into certain information.  So before the

16  court is an opportunity here to constrict these really,

17  really, really broad requests for information about

18  Mr. Quick's private information and put it into the context

19  of the court's question.  And the court's question I think is

20  what qualifications do you have?  Why can't you get an FAA

21  certificate?  If that had only been the inquiry here, then a

22  protective order might have been an appropriate way to

23  resolve that question for Frontier and not inhibit or

24  prejudice them whatsoever in their defenses that they allege.

25  I'm not saying I give credit to them, but not in any way harm

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 33

1   them.  So with regard to Mr. Quick's protective order --

2          THE COURT:  Well, let me just --

3          MR. JARRARD:  Okay.  I'm sorry.

4          THE COURT:  -- not to put too fine a point on

5   this, but this is a motion to compel brought by the

6   defendant, not a motion for protective order brought by

7   plaintiff in front of me.

8          MR. JARRARD:  Your Honor, I did in response -- and

9   it was replied to also by -- by Mr. Dabney.  I did move this

10  court --

11         THE COURT:  In your -- in your response?

12         MR. JARRARD:  Yes.  In the response.

13         THE COURT:  That's a violation of the local rules.

14  So we don't consider that a motion.  You can't make a motion

15  in a response.  You have to file a separate motion if you

16  want it.  Now, again, that's -- that's a fine point.  That

17  I'm not -- you know, I understand that you're -- you're

18  protecting -- trying to protect the documents, but --

19         MR. JARRARD:  Okay.  Then, Your Honor, as -- as a

20  motion -- then maybe it was inappropriate.  I did look at the

21  local rules and I apologize for not being more attune to it.

22  The -- in the motion I noted to the court that under Rule 37

23  in response to the -- the motion to compel, this court may

24  grant a protective order.

25         THE COURT:  Right.

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 34

```
 1              MR. JARRARD:  So I'm well within the bounds of
 2   Mr. Dabney's motion.  I'm not quite sure which -- which local
 3   rule, but I guess I'll look it up again.
 4              THE COURT:  Yeah.  If I had it right here in front
 5   of me I could probably tell you.  But, again, I'm not trying
 6   to squeeze you on that.
 7              MR. JARRARD:  Honest to God, Your Honor --
 8              THE COURT:  I'm just trying to keep the record
 9   straight.
10              MR. JARRARD:  -- procedurally I looked and I --
11   because I was, like, you know, some courts want that, some
12   courts don't.  Some courts want a separate piece of paper and
13   memo, you know.  So I looked and I did not see that.
14              MR. DABNEY:  Well, I would add, Your Honor, that,
15   you know, as far as a motion for protective order, we
16   discussed how we would approach this.  We thought we'd call
17   for an informal conference.  And then when the judge
18   requested briefing we agreed that I'd file a motion to compel
19   first.  The motion for protective order wasn't discussed with
20   me until it showed up in my mailbox to the extent that's
21   relevant.
22              THE COURT:  Okay.  Well, I -- and, you know, if
23   you want me to, I'll look it up because I -- it is a
24   violation of one of the rules.  But that's --
25              MR. JARRARD:  I'd get in trouble with --
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 35

1    THE COURT:  -- that's neither there -- here nor

2    there.  I gave full credit to your response.  I read it.  I

3    understood it.  You know, I looked at your exhibits.  So, you

4    know, it's not like I didn't consider it.  I just consider it

5    as a response.

6    MR. JARRARD:  Okay.  Well, as response under Rule

7    37, Your Honor, we'd ask the court to protect Mr. Quick's

8    private medical information, to restrict the inquiries.  If

9    the court intends to allow some inquiry that allows Frontier

10   to pursue its alleged defense, that the court limit that

11   inquiry.  It has to be limited to -- to less than -- than

12   what's requested in the litany of interrogatories and

13   requests for productions that -- that I cited.  It should be

14   limited to only to that information that was necessary for --

15   at best, and I don't give credit to the defense, for Frontier

16   to make its argument that a factual issue had to be explored

17   with regard to Mr. Quick's reemployment.  That really should

18   be the limit.

19   THE COURT:  Where?  What position do they employ

20   him in?  Not necessarily his reemployment, right?  But the

21   4313 analysis.

22   MR. JARRARD:  When I said a factual issue with

23   regard to his reemployment, I'm talking about the fact that

24   he alleged that -- and I don't think it's disputed.  He

25   alleged that he's disabled.  He provided documentation which

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 36

1   is undisputable documentation that he's disabled from the

2   military.  And that it be limited to that.

3           In addition, we did -- we did -- aside from our

4   objections, aside from the overly broad requests, we did

5   provide all the factual basis for paragraph Number 21 in the

6   complaint.  They have the factual basis.  We gave that to

7   them in the initial disclosures.  We gave that to them in

8   discovery.  It's listed in my objection.  It's very clear

9   that they have all the factual information to support the

10  claim -- the factual claims that Mr. Quick alleged in the

11  complaint.  And more so, it's undisputable.  The court and

12  employers -- and I cite it in my briefing.  The courts and

13  employers don't get to look beyond the service records of the

14  service member.

15          So for those reasons, Your Honor, these discovery

16  requests are far too broad.  They're far too invasive.

17  They're far too intrusive into Mr. Quick's private life.

18  They have to be limited.  I don't think they should be

19  granted at all.  I think we should proceed on the case on the

20  merits based on the facts that we have before us.  If

21  Frontier wants to attempt to construct defenses, they can,

22  you know, attempt to do that.  But with regard to relevance,

23  I don't think that these requests are relevant even if -- and

24  I hear what the court is saying, that it's leaning towards

25  this concept that there's a question of relevancy here with

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 37

 1   regard to an alleged defense.  If it's just that, then under
 2   Rule 37 in denial of their motion to compel it can't -- this
 3   court may restrict an inquiry to something very, very narrow.
 4   And it should be very, very narrow, if at all.
 5           Does Your Honor have any questions about the
 6   plaintiff's position --
 7           THE COURT:  No.
 8           MR. JARRARD:  -- beyond this?
 9           THE COURT:  No.
10           MR. JARRARD:  Thank you, Your Honor.
11           THE COURT:  All right.  And for defendant.
12           MR. DABNEY:  Well, thank you, Your Honor.  It's
13   difficult to know where to start.  A lot of -- a lot of
14   information that we just heard I profoundly disagree with
15   both on the facts and the law.  I guess I'll try to start
16   with just the things that seem to be most on Your Honor's
17   radar.
18           First, with respect to the breadth of discovery,
19   you know, the response is, well, we're not going to respond
20   to anything along these lines at all, except to tell you to
21   go look at the discharge record that says he has an
22   unspecified disability.  Other than that, if you look at the
23   response to interrogatory Number 4, it doesn't even claim
24   overbreadth.  It just says he was never reemployed, so,
25   therefore, you don't get the information.  Of course, we

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 38

1    dispute that.  But, you know, that's the whole problem with

2    the approach to this that, you know, opposing counsel has

3    taken and that we tried to work out and which I couldn't -- I

4    just couldn't ultimately countenance, and that is that, you

5    know, this is a discovery motion.  We're here to determine

6    what information must be exchanged under the very broad

7    parameters of discovery under federal law relevant to claims

8    and defenses.  And I've never seen that particular inquiry

9    devolve into a very long discussion picking apart the merits

10   of those claims and defenses at this -- what's essentially

11   still the pleading stage since we're barely into discovery,

12   given -- given that there's this hold up and we haven't taken

13   depositions just yet.  So the contentions of the parties are

14   what they are in the pleadings.  And unless one is wildly out

15   of balance with the law or wildly illogical, you know, I

16   think the court is exactly right.  We get -- we get the right

17   under the discovery rules to have the information that's

18   relevant under the broad definition of relevance and we move

19   on.  If the claims or defenses turn out to be poor on the

20   merits, then the discovery issue is moot.  But you don't moot

21   the discovery issue before you get to the merits, which is

22   the approach his objections, you know, as they were given to

23   me in written form took.  So that was what I concentrated on

24   in the initial brief.  And then, you know, the response was,

25   again, well, USERRA doesn't allow you to do this.  No defense

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 39

1   could possibly encompass the inquiry you're making.  Well, I

2   respectfully disagree.  And I think Your Honor does, too.

3               You know, Number 1, if you want to say that the

4   law doesn't encompass this kind of inquiry, you only have to

5   look as far as the definitions of reasonable efforts to

6   accommodate a disability, or the Department of Labor's

7   guidance that was published as a long and substantive

8   preamble to the regulations that were promulgated in 2005

9   where in response to comments, you know, the agency said, The

10  returning service member is expected to provide information

11  to the extent of the disability.  And then the employer

12  discloses the positions that only it knows about that could

13  be congruent with those -- with -- with that information.

14  The -- another comment referred to the interactive process in

15  the ADA.  And the -- you know, the department said, well,

16  we're reluctant to wholesale and power concepts of the ADA

17  into USERRA, but, nevertheless, the employee is expected to

18  cooperate in his own request for reemployment.

19              And that couldn't be more correct.  And there is a

20  scarcity of case law on the issue.  And I think the reason

21  for that is pretty -- it should be pretty clear, is that who

22  comes back and requests reemployment, says they can't do

23  their old job because of a disability, and then says, where

24  are you going to put me, and expects that to be enough?  I

25  mean, nobody, not even the Prairie Farms case which counsel

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 40

```
 1   cited in all of his objections to the discovery.  Were those
 2   even remotely the facts?  The guy had a wrist injury.  He
 3   said he had a wrist injury.  He provided various medical
 4   records.  The employer did not do what Frontier did.
 5   Frontier said, Okay, Mr. Quick.  Let's start the process.
 6   We're working on reinstating your benefits.  We've got your
 7   benefits reinstated.  We're -- here's your badge.  It's
 8   renewed.  When he asked for it as the process went on,
 9   he's -- he's part of the Frontier family.  He's certainly not
10   told, as the Prairie Farms employee was told, to go down the
11   road because he won't provide something.  That's entirely
12   different.  Same with the Petty case.  You know, that
13   employer, before it would reemploy him, before it would make
14   any effort to do it, said, you know, you need to go through
15   this process first.  That's not what Frontier did.  Frontier
16   tried to do what the statute imposes.  And it's an onerous
17   burden, as counsel referred to, reemploy into a position.  If
18   he comes back and he's got some issues, well, you're going to
19   have to -- you're going to have to work those out.  But, you
20   know, the fact that it's a quick process that's required only
21   enhances the fact that the employee has to cooperate for it
22   to work as intended.
23            Now, we don't know why they're so reluctant to
24   give the information, either at the time or now.  I mean, I
25   get that it's private.  But as Your Honor said, at some point
```

Page 41

```
 1   you have to know.  You go in for Social Security Disability,
 2   you have to tell.  On an ADA claim you have to tell.  Why
 3   USERRA is different, I can't see logically.  The -- the
 4   imperative there, you know, just seems to me to be square in
 5   the face of the parties as they were confronted with the
 6   issue back last year.  And it's square now for the court in
 7   trying to, you know, administer the discovery rules.  So, you
 8   know, to the extent that, you know, this is supposed -- this
 9   is going to be a real intellectual exercise dissecting the
10   statute in order to determine whether our defenses are any
11   good which allows you to determine whether we get the
12   discovery, I think that's backwards.  And I think the court
13   understands our position based on the court's comments.
14           A few other -- a few other issues.  You know, it
15   is a chicken and egg situation, but there -- they are -- they
16   have to be accomplished more or less simultaneously in order
17   to do what the statute requires.  You have to be reemployed
18   into a position.  This business of, well, you can -- we'll
19   start paying you as a First Officer, and then we'll figure
20   out where to put you, that's nowhere, nowhere in the statute,
21   nowhere in the regulations, nowhere in any case that I have
22   found.  All the disputes about reemployment and what position
23   that you can find in the case law, they have to do with these
24   exact issues that we're discussing.  There's never been an
25   argument that I've seen that says, well, you say you can't go
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 42

```
 1   back to your old job, but we'll put you there temporarily,
 2   start paying you, and then maybe you'll help us figure out
 3   what you can do.  That's just not it.  If that had been it,
 4   Congress could have written the statute that way.  They
 5   didn't.
 6              I know that practitioners for plaintiffs in this
 7   area like to say that, you know, it's -- reemployment is only
 8   dependent on these four criteria in 4312, and after that we
 9   get everything we want.  Well, it is an onerous statute on
10   employers.  It is broadly construed for the service member.
11   The defenses are narrowly construed in some cases.  But at
12   some point you cannot hide the ball.  You cannot use the
13   statutory mechanism set up by Congress as a sword or as a
14   shield for information that you don't want to disclose that
15   the employer needs in order to comply.  You can't do that.
16   And the commentary to the regulations recognizes that.
17   Those -- that commentary is -- is entitled to deference.
18   It's given more deference at least, if not otherwise, and it
19   provides a basis for the discovery we seek in spades.
20              A word about -- about, you know, what's contested
21   and what's not.  I mean, if any more support is needed for
22   why -- why the information sought is relevant, you know,
23   because the system is so favorable to the service member it's
24   ripe for abuse.  Employees can say what they want to say.  It
25   turns out not to be true.  And employers have to fight to get
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 43

1    any of the potentially relevant issues that might come from

2    that disingenuousness, you know, in front of a court.  And

3    the Petty case is a good example.

4              Well, he lied to you, but you weren't supposed to

5    ask the question.  Well, I guess that's legitimate.  But here

6    we're supposed to ask the question.  The statute requires us

7    to do this, as you say, not just to put him in a job, but to

8    find him in the right job with the -- not only that he can

9    perform with any disability, but that is commensurate with

10   equivalent pay, and equivalent status, and etcetera.  So this

11   is not the Petty case and it's not the Brown -- or it's not

12   the Prairie Farms case.  And to the extent I cited either

13   one, it was just to show why defendants' (sic) argument is

14   incorrect -- why the plaintiff's argument is incorrect.  I

15   think the court has recognized that -- you know, the argument

16   that, well, you never asked means we don't have to give it to

17   you now, doesn't make sense either.  I mean, that's a

18   dispute.  We've put enough before the court to the extent it

19   was even necessary beyond the pleadings to say that, you

20   know, we sent you these emails.  We're asking about your

21   capabilities.  There was a whole long factual litany about

22   what was said and not said, and why questions were asked in

23   the way that they were.  And they were all based on what

24   Mr. Quick's desires were.  When he came back he said I want

25   to be reemployed and my first preference is to go on

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 44

```
 1   long-term disability and then retire.  I don't know what the
 2   company is supposed to do with that.  Is that what you want,
 3   or do you want a job?  Well, I want a job so I can get on
 4   long-term disability.
 5            If you look at what was -- the Exhibit that was
 6   filed with our motion, the document from the Department of
 7   Labor, he flat-out says it.  You know, I want to go back to
 8   Frontier so I can get disability and retire.  We -- that's
 9   coming through loud and clear.  I want to file a disability.
10   But what job do you have for me?  When do I come to work?
11   Well, to do what?  You want disability, or do you want a job?
12   You know, eventually we said, well, come to orientation.  And
13   the website is here.  It's a starting point.  We need to know
14   in order -- as the regulations say, to disclose the jobs that
15   are appropriate or could be appropriate, we need to know what
16   the extent of your capabilities, abilities, any disabilities.
17   And it was never forthcoming.  It's still not.  To me that's,
18   you know, a very good defense, but besides that, it provides
19   a basis for relevancy that you can't really deny at this
20   point.
21            So with respect to our -- our requests, I have one
22   thing to point out.  The footnote that lays out the requests
23   that we're seeking and order regarding, they are
24   interrogatories 4, 5, 6, 13, and 14.  That's a typo.  15
25   doesn't exist.  And that's in the first set of requests for
```

Page 45

1   production that is Exhibit 1 to our motion.  And then it also

2   includes the requests for productions Numbers 4, 11, and 15,

3   which also includes asking for Mr. Quick to sign a medical

4   release and so we can send for appropriate records to

5   appropriate physicians once he identifies who they are.

6   Exhibit 2, which is also a subject of our motion, is a

7   separate request for the Social Security Disability records.

8   We asked in the first set of interrogatories for military

9   disability records.  Didn't get those.  Then found out

10  through Mr. Quick's expert report that he is actually

11  receiving Social Security Disability and so we sent out a

12  subsequent request.  They're not due for a response as of

13  yet, but I gather from Mr. Jarrard's briefing that he does

14  not intend to respond.  He says it's not relevant.  Well, I

15  think we've -- you know, we've covered that the -- why it's

16  relevant to our defenses.  It's also relevant to damages,

17  potential estoppel defense, mitigation, any number of issues

18  as well.  And even though there's not an objection and a

19  refusal before the court now, because they're not quite due

20  yet, I think the briefing shows that plaintiff doesn't intend

21  to respond.  And we would want the court's order to address

22  that and compel them to respond to Exhibit 2 to our brief as

23  well.

24          And then, finally, the court may have seen our

25  discussion in my -- in my motion about the scheduling of

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 46

1    depositions and such and why we asked for a forthwith

2    hearing.  And I much appreciate the court's indulgence of

3    that scheduling and getting it on the docket quickly and

4    hearing our arguments.  You know, our deposition is set for

5    Friday the 20th of Mr. Quick.  Obviously we won't probably

6    get a lot of these medical records and things before then.

7    So my request, you know, with respect to a motion -- to an

8    order on our motion on the deposition side is as follows:

9    That, you know, the court order us -- Mr. Quick to, you know,

10   answer questions in the deposition that are reasonably

11   related to the discovery requests that we hope will be

12   ordered to be complied with, and that the general subject of

13   the disability referred to in the complaint and how it may

14   affect the ability to perform essential tasks of any

15   positions that he's claiming he should have been reemployed

16   to, Social Security Disability, all applications for that,

17   the basis for that, questions in the deposition on those

18   subjects ought to be allowed or we're going to be right back

19   here again in the middle of the deposition if -- if plaintiff

20   refuses to answer them on whatever basis.

21          So those would be -- you know, and finally with

22   respect to the deposition, it may be that, you know, once we

23   get the records that we asked for sometime ago the deposition

24   will have come and gone.  And so I intend to try to work it

25   out with Mr. Jarrard to reserve some time for additional

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 47

```
 1   deposition questions on the records when they arrive, not
 2   going over the seven hours that's otherwise allowed.  And,
 3   you know, to the extent the court can facilitate something on
 4   those -- along those lines in its order, that would be
 5   appreciated.
 6           Any questions on any of the aspects of this, Your
 7   Honor?
 8           THE COURT:  I do.  Would -- would you look at
 9   interrogatory Number 4 which is the one that we focused on?
10   And I think it's appropriate that we discuss whether or
11   not -- I understand that the objection is not overbreadth on
12   there, nevertheless, it seems to me that it is somewhat
13   overbroad because it -- you know, you kind of -- what you
14   have a right to know is what affects the ability of Mr. Quick
15   to be reemployed at Frontier.  So you don't really have a
16   right to know everything for his whole life or anything.  And
17   that's kind of what this asks.  So I think it -- I think
18   before I'm going to order he has to respond to this, I want
19   it to be narrowed in some meaningful way that goes to the
20   factors I'm concerned with, which is the 4313, reemployed as
21   what, and to what?
22           Now, I think the issue of whether or not it's even
23   relevant, that he wanted to file for long-term disability
24   benefits, I don't -- I don't know anything about that.  I
25   mean -- I mean, I -- it's not that I disbelieve you.  It's
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 48

1   just that I don't think that has any relevance to anything at

2   this point.  Judge Blackburn may disagree with me, but I --

3   you know, if he wants to go do that he's entitled to do it,

4   and it's legally permissible to do it, why not?  You know,

5   maybe that's the -- I just don't see anything -- there's

6   nothing inherently to me that strikes me as odd about that.

7           MR. JARRARD:  Your Honor --

8           THE COURT:  I can see that being the case.

9           MR. JARRARD:  -- I don't mean to interrupt, but we

10  fully answered that interrogatory Number 7.  And there's --

11  it's really --

12          THE COURT:  I'm on Number 4.

13          MR. JARRARD:  Oh.  Oh, okay.  I see.  I apologize,

14  Your Honor.

15          THE COURT:  Yeah.  Number 4.

16          MR. JARRARD:  Yeah.  I didn't --

17          THE COURT:  Because a lot of them kind of spin off

18  of Number 4.  And this -- and this is the factual allegation

19  in paragraph 21.  This is the -- the injury on active duty.

20  So it is limited to injuries on active duty.  But to me it

21  should be -- it should be limited both in time.  I don't know

22  if he had active duty before he separated.  You know, did he

23  have active duty 20 years ago?  It shouldn't involve that.

24  That doesn't make any difference.  And it should be relevant

25  to the factors that Frontier is required to consider under

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 49

```
 1   4313.  So not every injury or illness might be relevant to
 2   that.  It's really only things that would affect his ability
 3   to work at a job at Frontier that we care about, right?
 4           MR. DABNEY:  Well, that's correct, Your Honor.
 5   And that's why I tried to tie it back to paragraph 21.  I'm
 6   not asking for things that didn't pertain to that allegation,
 7   but only to that allegation.
 8           THE COURT:  Okay.
 9           MR. DABNEY:  So if there were disabilities or
10   injuries on -- on duty that's not relevant to their
11   complaint, I don't -- you know, we're not interested.  I
12   mean, to some degree anything reasonably calculated to lead
13   to what Your Honor is referring to I think would be fair game
14   as opposed to, you know, surgically trying to just say you
15   only get this stuff that's right on this point.  But --
16           THE COURT:  So I'm going to take that to be the
17   phrase in paragraph 21.  Mr. Quick informed Mr. Tebidoe that
18   he, Mr. Quick, had incurred disabilities on active duty that
19   may impact his employment at Frontier.  So that's the
20   limitation you're talking about.
21           MR. DABNEY:  And I guess I should have caught the
22   rest of it because that -- I think that was the intention,
23   Your Honor.
24           THE COURT:  Okay.  So I think that's an
25   appropriate limitation.  If you -- if you combine what's
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 50

```
 1   alleged in 21 with the request, that limits that.  So, in
 2   other words, disabilities on active duty or injuries on
 3   active duty that don't -- that he is not claiming affect his
 4   employment at Frontier would not be part of that.
 5            MR. DABNEY:  Does Your --
 6            THE COURT:  Or reemployment.  Excuse me.
 7            MR. DABNEY:  -- does Your Honor wish to receive an
 8   edited proposed order reflecting that or how do you want me
 9   to handle that?
10            THE COURT:  No.
11            MR. DABNEY:  Okay.
12            THE COURT:  No.  I don't need that.  I just -- I'm
13   just going to be directing that that be the limitation.  I
14   think it's in there.  Okay.  I didn't read it quite -- I
15   didn't really read that together.  And perhaps, Mr. Jarrard,
16   you didn't read it quite as tightly as I'm reading it now,
17   but I think that's what it says, is your allegation only goes
18   to Mr. Quick informed Mr. Tebidoe that he, Mr. Quick, had
19   incurred disabilities on active duty that may impact his
20   employment at Frontier.  So that's the only medical issues
21   that are asked -- are being inquired about in that paragraph.
22            MR. JARRARD:  If that's -- if that's the
23   interpretation, Your Honor, just to be clear, my perception
24   of what the request was, was a set of very broad requests
25   linked up and tied to one, in my view, insignificant factor,
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 51

1    but alleged allegation of fact.  But what I hear Your Honor

2    saying today is that interrogatory 4 and the subsequent

3    interrogatories would be -- the responses would be limited to

4    disabilities incurred on active duty that would affect

5    Mr. Quick's employment at Frontier.

6              THE COURT:  Right.  Because that's what it's

7    limited to, right?  Paragraph 21.

8              MR. DABNEY:  That's -- that was the intention,

9    Your Honor.  Yes.  I mean, to the extent that additional

10   medical information that might be contained in Social

11   Security applications would be -- would be relevant to the

12   same question, then that's what -- then that's what we're

13   asking for.  I mean, it seems to me that --

14             THE COURT:  Well, but that's different I think.

15             MR. DABNEY:  Yeah.

16             THE COURT:  I mean, I really think that's

17   different.  I think the request to find out what he told

18   Social Security to get disability benefits, that's a

19   different -- a little bit different issue.  That doesn't --

20   that has to do with this case.  That has to do with

21   impeachment material and that sort of thing.  I mean, there's

22   so many relevant -- it's so relevant in so many different

23   ways that that's -- that's kind of a different thing.  But

24   this -- the injuries that he suffered, and I'm using

25   injuries -- paragraph 21 doesn't really say injuries.

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 52

1    Paragraph 21 says disabilities on active duty.  So to the

2    extent that that's different from injuries, I take it as

3    disabilities, that's a very narrow question.  And that's

4    the -- that's the preliminary question that Frontier needed

5    to know the answer to in order to determine where to reemploy

6    Mr. Quick under 4313.  And so that's -- that's relevant under

7    that theory, right?

8              MR. JARRARD:  I agree.

9              THE COURT:  The Social Security questions I think

10   are relevant for different reasons which you've set forth

11   already for many -- several different reasons.  And -- and

12   not the least of which is the question of how can you be

13   reemployed anywhere if you're fully disabled?  So are you

14   telling Frontier one thing and telling Social Security

15   another?  That's relevant to the case I think.  Yeah.  Or

16   maybe.  I mean, may lead to relevance.

17             MR. JARRARD:  I can answer.  I mean, it's not

18   difficult to do.  A 59-year-old who requests disability

19   benefits from Social Security has a very low threshold, and

20   has shown that they cannot be reemployed in their --

21   reemployed in their primary occupation, because re -- you

22   know, at that age retraining is something that -- that's not

23   likely to assist him to full employment.  And I'm not a

24   Social Security attorney.  However, having been fully

25   reemployed, Mr. Quick's Social Security income, disability

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 53

1    income would have stopped after a nine-month period because

2    that's what's allowed for under Social Security is a

3    retraining period with a new employer.  And if you're back to

4    full employment then your benefits stop.

5              THE COURT:  Right.

6              MR. JARRARD:  So it's not a question in my mind

7    about credibility or impeachment.  I'm sure that will be

8    brought up.  But it's simply a process that Social --

9              THE COURT:  See, I don't think it is such a low

10   threshold.  I mean, I deal with those all the time.  I have

11   Social Security appeals all the time.  I deal with it.  It

12   doesn't seem very low to me.  You know, a lot of people are

13   put through the ringer that seem pretty disabled to me.  But

14   they put them through the ringer anyway because they think

15   they can be employed doing something.  Can he be a

16   dishwasher, you know?  Can he -- can he sit and fold napkins

17   was your example.  You know, that -- they go that far on

18   Social Security.

19             MR. JARRARD:  With -- within the --

20             MR. DABNEY:  I mean, based on the information that

21   we have, he applied in 2013, didn't get the benefits for a

22   year which suggests to me that there was an appeal, but --

23             THE COURT:  I mean, I think it -- I think it's

24   relevant for discovery purposes, not necessarily for trial

25   purposes, but for discovery purposes for certain aspects.

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 54

1   Maybe impeachment, maybe not.  Maybe it's not -- doesn't

2   have -- there's nothing in there that would impeach anything

3   he said, but I think that they're entitled to find out given

4   the claims in this case.  So with the -- with the

5   understanding of how interrogatory 4 has -- is actually

6   written, it's not quite as broad as it looks on first glance,

7   because I agreed with you, Mr. Jarrard, it looked pretty

8   broad at first glance.  But with that limitation, which is in

9   there, it's in the written document, I think that's -- that's

10  okay.  It's not overbroad.

11          So that's the only other question I had.

12          MR. DABNEY:  Well, Your Honor, I'm -- I've -- I

13  think I've covered everything that I think is pertinent to

14  your inquiry that you started out our session with.

15          If you have any -- no further questions, then

16  I'll -- I'll sit down.

17          THE COURT:  All right.  Mr. Jarrard, anything you

18  want to follow-up on?

19          MR. JARRARD:  Yeah.  I think a very important

20  clarifying question, Your Honor.  I do understand the court's

21  ruling with regard to the responses to interrogatory Number

22  4 -- Number 4.  My concern is about the follow-on

23  interrogatories, whether or not the court determines that

24  those are relevant, because there are a number of them.  And,

25  I'm sorry, I don't have the -- right off the top of my -- I

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 55

1   can go through them really quickly though.

2            THE COURT:  Well, Number 5 --

3            MR. JARRARD:  And it seems to me that the

4   follow-on interrogatories and the -- the requests for

5   production all stem from interrogatory Number 4.  And my

6   guess is that's how it was constructed so, therefore, with

7   the limitations imposed on Number 4, is that the same

8   limitations imposed on the remaining interrogatories, or are

9   those just --

10           THE COURT:  Sure.

11           MR. JARRARD:  Okay.

12           THE COURT:  Because it says that.  The response to

13   interrogatory Number 4, okay, who are the people?  So if --

14   if -- if Number 4 has two people in it, then those are the

15   only two people we're talking about.  Not another 10 that may

16   or may not have treated him or had anything to do with other

17   injuries that he's not claiming affected his work, right?

18   But, remember, it is employment at Frontier.  So I consider

19   that employment in whatever capacity would be ultimately

20   decided upon.  So it may be only one thing that kept him from

21   being a pilot, but if there's something else that keeps him

22   from -- and I'm just using these basic physical things

23   because they're easy.  It keeps him from sitting or standing

24   or lifting or, you know, those kind of common things.  Then

25   those would affect his employment at Frontier, his

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 56

1    reemployment, because it would affect what job he could be

2    assigned to other than a pilot.

3              MR. JARRARD:  Okay.

4              THE COURT:  So --

5              MR. JARRARD:  Your Honor, I'm all about getting

6    things done and putting everything in one basket.  Mr. --

7    which I agree with Mr. Dabney for -- with regards to our

8    discussion.  But I can tell the court and I can tell

9    Mr. Dabney here, the response to Number 4 won't be an

10   objection.  It's going to be simply that the -- the

11   identification of his three disabilities that prohibit him

12   from obtaining an FAA certificate.  And that the follow-on to

13   that is going to be he doesn't have access to his military

14   medical records.  He doesn't -- I don't know if he has a

15   perfect recollection of the name of the physicians.

16              There's a little bit of factual basis that I just

17   need to inform the court of.  Mr. Quick was injured on active

18   duty during wartime.  And when returned to the United States

19   he was placed in an assignment called the Wounded Warrior

20   Regimen.  It's where folks with injuries in combat are put to

21   recover.  And they go through a process of recovery,

22   rehabilitation, other things.  Notices on how to apply for VA

23   disability, notices on how to apply for Social Security.  So

24   the Army puts people back in the world fixed as best they

25   can.  That's the process that occurred here.  That's a

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 57

 1   two-year process and it occurred four years ago.  So
 2   Mr. Quick's response in discovery is going to be simple.
 3   It's not going to be a comprehensive analysis of every single
 4   doctor that he spoke with because, frankly, I don't know if
 5   he even recalls that information.  And in those types of
 6   circumstances, as I'm sure Your Honor can imagine, and in my
 7   own life experiences as a Marine coming back from Iraq, when
 8   you're injured and hurt, I mean, you're -- you work with,
 9   like, 30 different people.  You know, you've got a nurse that
10   you see every day who's worried about what you eat.  You've
11   got a nurse that you see every day who's worried about
12   whether or not you're mentally engaged.  You know, you have
13   doctors that you go to for a particular specialty, in and
14   out, in and out.  You have a doctor that's responsible solely
15   for, you know, what prescriptions you have to receive so that
16   things aren't conflicting with each other.  So kind of with
17   that context in mind, Your Honor, Mr. Quick's responses here
18   are not going to be greatly detailed.  And I just want to
19   warn the court and that -- Mr. Dabney as well, that there's
20   not a lot of depth here.  And I heard him use the word
21   "depth."  If we limit interrogatory Number 4 to the -- to the
22   disabilities that he incurred on active duty that would
23   affect his reemployment at Frontier, it's going to be a
24   pretty simple response.  My disabilities prevent me by
25   statute from obtaining an FAA commercial passenger

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 58

 1   endorsement.  And that's going to be what it is.  So --

 2           THE COURT:  Okay.  Well, he needs to say what they

 3   are.  I mean, how -- why do they, because, you know, they

 4   need to know what it is, and then where -- I mean --

 5           MR. JARRARD:  Oh, it will have the three

 6   identities, Your Honor.  And the statute is what precludes

 7   the award of the certificate.  I mean, the FAA has its rules

 8   that it follows.

 9           THE COURT:  Well, I'm sure they have a lot of

10   rules that would preclude you from getting that.  They need

11   to know which ones he violates, right?

12           MR. JARRARD:  All right.

13           THE COURT:  So -- and -- and the basics of his

14   medical treatment.  They've asked you for releases.  Now,

15   whether or not, you know, you can get releases from the

16   military is a whole nother question.  But that's not really

17   your issue as long as you sign the releases.  If you can't

18   get them, you can't get them.  But I've seen military medical

19   records before and they've been here in court, so I know

20   they're obtainable.  I don't know if they -- what -- under

21   what circumstances.  But, anyway, I mean, those are -- those

22   are out there.  And if he's continuing treatment.  You know,

23   it's the same kind of things that I'm sure you had at -- or

24   not you, but that he had to give to Social Security to get --

25   you'd have to give to the VA.  Now, the VA has better access

Page 59

```
 1   to the military records, of course.  But, you know, it's just
 2   the common sense things.
 3            MR. DABNEY:  I would like to add, Your Honor, just
 4   with respect to the issue of whether Mr. Quick has custody of
 5   his military records, it's like any discovery issue.  If you
 6   have control, then you have to produce.
 7            THE COURT:  Right.
 8            MR. DABNEY:  And to the extent that Mr. Quick's
 9   memory is only what it is, that's the same in every case.
10   But that's the reason for asking for the pertinent records
11   because --
12            THE COURT:  I mean, if he can get the records,
13   then he has to go get them.  And I'm telling you that because
14   that's the -- that's the law in Colorado for one thing, not
15   that this is a State of Colorado case.  But if he's -- if he
16   can get them, he has control of them.  So you're going to
17   have to produce them.  If he can't get them either, if they
18   won't give them to him, then the best you can do is a
19   release.  That's fine.  But I'm telling you that these
20   records need to be produced.  I think it's reasonable.  It's
21   relevant.  And so don't -- don't say I was in the Wounded
22   Warrior project and I don't remember anything.  That isn't
23   going to get it.  He remembers he can't qualify for an FAA
24   license.  So he needs to do the best that he can.  That's all
25   I'm saying.
```

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 60

 1            MR. JARRARD:  All right.  Your Honor, we -- the

 2    plaintiff will do the best he can to respond to interrogatory

 3    Number 4 and the follow-on interrogatories with regard to

 4    the --

 5            THE COURT:  Right.

 6            MR. JARRARD:  -- circle that's been drawn around

 7    it I guess.  We'll do the best, Your Honor.

 8            THE COURT:  Okay.  And then the request for

 9    production of documents are all relevant to the same things,

10    so they're limited the same way by paragraph 21.

11            MR. JARRARD:  Thank you, Your Honor.

12            THE COURT:  So the request in document -- or the

13    motion Number 30 which is the defendants' motion to compel is

14    granted for the reasons that we have gone over in great

15    detail already from beginning to end in this hearing.  I do

16    find that they're relevant under the very broad brush of Rule

17    26.  And, frankly, not marginally so.  I think they're very

18    relevant to defendants' defenses.  And that's not a

19    commentary on whether the defenses are, you know, going to

20    prevail or anything.  It's just that that is their defenses.

21            So how long do you think it will take you to

22    respond to the interrogatories and to produce the documents

23    that you already have in your possession, if any, and get the

24    releases signed?

25            MR. JARRARD:  Your Honor, just one moment.  Your

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 61

1    Honor, it's going to be with -- I forgot the date of the

2    deposition -- or the date of the deposition, Your Honor.

3              THE COURT:  The 20th.

4              MR. DABNEY:  Friday, the 20th.

5              MR. JARRARD:  We'll make every effort to have the

6    documents to Mr. -- we'll make every effort to make the

7    responses provided to Mr. Dabney well before the 20th.

8              THE COURT:  So, like, the 18th maybe?

9              MR. JARRARD:  Yeah.  The 18th for -- there, again,

10   Your Honor, I'm requesting documents from outside agencies

11   and I don't want to draw too big of a circle around a date.

12   But we'll make every effort to have those obtained well

13   before the deposition.  What I did not want to do is create a

14   situation where Mr. Dabney has had an order by the court to

15   have documents produced and then all of a sudden it's, you

16   know, backed up against a deposition date.  That's unfair.  I

17   wouldn't do that.  At the same time, I have to -- we have

18   obstacles to overcome and I need to overcome those obstacles.

19             THE COURT:  Right.  I don't know if it's -- you

20   know, if you want to keep the 20th date.  I mean, I -- that's

21   just another thing to think about.  If you think you'd be

22   better off pushing the date -- you have a trial date, right?

23   Because this is Judge Blackburn.

24             MR. DABNEY:  We do.  We do.  I guess I can discuss

25   that with Mr. Jarrard.  I think I did suggest the idea of

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 62

 1   possibly going forward with reserving another hour and a half

 2   for questions regarding discovery that comes later.  And I

 3   can consult with my client and see whether they want to do

 4   one or the other and talk to Mr. Jarrard, but --

 5          THE COURT:  Right.  I'll leave you to that to work

 6   that all out, understanding that you've got -- I can't move

 7   your trial date.  That doesn't mean it can't be moved, but

 8   Judge Blackburn has to do that.  I can't do it.  So I can

 9   only give you extensions that are within the time frame that

10   would allow for the final pretrial conference to be, you

11   know, 60 days or so ahead of the trial date at least, because

12   you want to get everything -- you have to get ruling on

13   summary judgment motions, etcetera, and you need to have all

14   the documents I would think because this may be a case where

15   summary judgment has some real meaning.  Right?  I think

16   under your theory of the case that's -- it probably would

17   have some meaning.

18          MR. JARRARD:  Oh, absolutely, Your Honor.

19          THE COURT:  Okay.  So I don't think there's

20   anything else that I -- oh, the guidance on the deposition.

21   He should be answering questions based on paragraph 21,

22   right?  Medical issues that affect his reemployment at

23   Frontier.

24          MR. DABNEY:  And with respect to the Social

25   Security, Your Honor, do you have any further guidance?

Page 63

1          THE COURT:  Well, I think you -- that's free game.

2     You can ask the questions on Social Security because

3     that's -- that's really a different issue.  That's really a

4     different point of relevance.  So disability benefits that

5     come from something different, I mean, that's a whole

6     different thing.  And then medical issues that relate to his

7     ability to be reemployed at Frontier, but nothing outside of

8     that.  So with a female I'd say don't -- don't ask about, you

9     know, the last baby you had and whether you had a cesarean

10    and all that because -- obviously I'm using that as an

11    example because it obviously doesn't apply here.  So -- but

12    don't go too far outside because that's really -- the only

13    relevance to his medical records is -- you know, as far as

14    the disability is the reemployment issue.

15          MR. JARRARD:  Your Honor, I would ask the court to

16    deny the request for fees and costs with regard to the motion

17    to compel.

18          THE COURT:  That is denied.  I think you made a

19    powerful argument based on what your theory of the case is.

20    I understand the argument.  I don't disagree with it.  I only

21    disagree with it insofar as I think Rule 26 requires that you

22    respond, even though you disagree with the defenses.  So I'll

23    find that the objections were taken in good faith and with a

24    reasonable basis in law, and I will deny the request for cost

25    and fees.  All right.

Edward K. Quick vs.
Frontier Airlines, Inc., et al.

Motion Hearing
November 13, 2015

Page 64

1             MR. JARRARD:  Thank you, Your Honor.

2             THE COURT:  Court will be in recess.

3             MR. DABNEY:  Thank you, Your Honor.

4             THE CLERK:  All rise.

5             (Whereupon, the within hearing was then in

6     conclusion at 11:20 a.m.)

7

8

9             I certify that the foregoing is a correct

10    transcript, to the best of my knowledge and belief (pursuant

11    to the quality of the recording) from the record of

12    proceedings in the above-entitled matter.

13

14

15

16    /s/ Laurel S. Tubbs                    November 19, 2015

17    Signature of Transcriber               Date

18

19

20

21

22

23

24

25