**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:15-cv-765-REB-KMT

EDWARD K. QUICK,

        Plaintiff,

v.

FRONTIER AIRLINES, INC.,
and MICHELE ZEIER, an individual,

        Defendants.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Edward K. Quick moves for summary judgment on his Uniformed

Services Employment & Reemployment Rights Act (USERRA) claims under 38 U.S.C.

§§ 4312 (reemployment) and 4318 (retirement benefits), and Defendants Frontier

Airlines, Inc. (Frontier) and Michelle Zeier's § 4312(d)(1)(A) changed circumstance

affirmative defense.  Frontier violated § 4312 when it failed to promptly reemploy Quick

after a period of military leave that ended in 2014. Frontier concedes it did not reemploy

him for three and a half months after he applied for reemployment. It also failed to make

timely pension contributions for Quick's period of military service, as § 4318 requires.

Quick is still waiting to be reemployed over two years after his military service ended.

## PROCEDURAL HISTORY AND JURISDICTIONAL STATEMENT

On April 13, 2015, Quick filed this action against Defendants Frontier and Zeier,

Frontier's point person who handled Quick's request for reemployment. Quick asserted

USERRA claims for discrimination and retaliation under 38 U.S.C. § 4311, for failing to

reemploy him under §§ 4312 and 4313, for failing to make pension contributions required by § 4318, *inter alia*. Dkt. No. 1, Compl. ¶¶ 60-77. Defendants filed an Amended Answer on June 18, 2015. Dkt. No. 16. The parties agree the Court has subject matter jurisdiction under 38 U.S.C. § 4323(b)(3), and 28 U.S.C. § 1331, and venue is proper under 38 U.S.C. § 4323(c)(2). Compl. ¶¶ 5-6; Amended Answer ¶¶ 5-6.

## STATEMENT OF MATERIAL FACTS

Quick served in the U.S. Army from 1974 to 2014. Second Declaration of Edward Quick ¶ 1, attached as Ex. 1 (hereinafter "2d Quick Decl."); QUICK01-02, attached as Ex. 2 (stating Quick's retirement credit). Since 1978, Quick also served as a professional pilot for non-military, civilian employers. 2d Quick Decl. ¶ 2. In March 2004, Quick began working as a pilot for Frontier as a First Officer. First Declaration of Edward Quick ¶ 3, Dkt. 33-1 (Nov. 9, 2015), attached as Ex. 3 (hereinafter "Quick Decl."); Deposition of Edward Quick, 40:1-3, attached as Ex. 4 (hereinafter "Quick Dep."); 30(b)(6) Deposition of Frontier 16:10-18, attached as Ex. 5 (hereinafter "30(b)(6) Dep."). During his employment at Frontier, Quick was a U.S. Army Reserve member. 2d Quick Decl. ¶ 3. When he took military leave during certain periods of time between 2004 and 2014 from Frontier, he served in the Army Reserve. Quick Decl. ¶¶ 4-6 & Ex. A to Quick Decl. Between March 2004 and June 18, 2007, Quick took brief periods of military leave from Frontier, and overall during that time period he took approximately three months of military leave. Quick Dep. 40:16-41:8; 2d Quick Decl. ¶ 4.

On June 18, 2007, Quick gave written notice to Frontier's then-chief pilot that he was requesting military leave and his military duty would begin on June 19, 2007. Ex. 13

to Deposition of Michelle Zeier, attached as Ex. 6.  According to Frontier, the June 18, 2007 e-mail Quick sent to the chief pilot was "the kind of written notice prior to taking military leave that would be appropriate and satisfactory to invoke [Quick's] right to take military leave" under USERRA. Deposition of Michelle Zeier 104:14-105:24, attached as Ex. 7 (hereinafter "MZ Dep.")[1]; *accord* Deposition of Joseph Thibodeau 113:12-115:13, attached as Ex. 8 (hereinafter "JT Dep.").

From June 19, 2007 to June 28, 2014, Quick continuously served in the Army, including as a pilot supporting combat operations in Iraq and Afghanistan and operations in Colombia. Quick Decl. ¶¶ 4-6; QUICK05-43, attached as Ex. 9 (orders and other forms describing Quick's military service from June 19, 2007 to June 28, 2014); Quick Dep. 41:18-22, 94:2-22. His last day of military service was June 28, 2014.[2]

On September 23, 2014, Quick spoke to and e-mailed Frontier's Chief Pilot Joseph Thibodeau to inform Frontier he wanted to return to work and thus apply for reemployment. JT Dep. 124:17-127:11; Ex. 2 to JT Dep., attached as Ex. 10.  In a September 23, 2014 e-mail, he wrote to Thibodeau: "I have concluded my military service and will be reporting back to Frontier on Thursday the 25th [of September]. . . . Please let me know when and were (sic) you would like to report on Thursday?" Ex. 10. By "contacting Mr. Thibodeau on September 23rd [2014] to seek reemployment, Mr. Quick sought reemployment within 90 days after his service ended." MZ Dep. 138:5-10.

---

[1] Under the parties' stipulation, all substantive answers from the witnesses in their individual depositions are deemed to be the answers of Frontier's 30(b)(6) witness. 30(b)(6) Dep. 9:18-10:9. In addition, the parties have stipulated that all the documents they produced in this action are authentic.  *Id.* 8:21-9:9.

[2] Quick Decl. ¶ 6 & Ex. A to Quick Decl. (stating military orders ended on June 28, 2014, and attaching 05/23/14 Army orders stating "SCHEDULED DATE OF SEPARATION" is "28 JUNE 2014," and attaching Form DD214 stating "SEPARATION DATE THIS PERIOD" "2014 06 28"); Quick Dep. 94:18-22.

His September 23, 2014 application for reemployment was 87 days after his military service ended on June 28, 2014.  *Id.*; Quick Decl. ¶¶ 6-7 & Ex. A to Quick Decl.

On September 24, 2014, Thibodeau e-mailed Quick to request that Quick provide Frontier with "required documentation and related military orders establishing that: (1) your reemployment application is timely; (2) you have not exceeded the five-year applicable limit on the duration of service, subject to those exceptions permitted by law; and (3) your separation or dismissal from military service was not disqualifying." Ex. 3 to JT Dep., attached as Ex. 11. Quick responded he "will provide the documentation."  *Id.*

On September 25, 2014, Quick e-mailed Thibodeau his DD-214 and "disability retirement orders and DD214."  Ex. 5 to JT Dep., attached as Ex. 12; QUICK52-59, attached as Ex. 13. He stated he was "on the temp[orary] disability list" from the military "due to my medical condition," and "[d]ue to my medical condition I cannot obtain a first class FAA medical [clearance]." Ex. 13 at QUICK 52.  The documents Quick attached to the September 25 e-mail stated his June 2014 military discharge was "HONORABLE" and due to his military "RETIREMENT." Ex. 13 at QUICK 57.  Based on the "DD214[]" forms Quick provided to Frontier from late September to mid-October 2014, it was clear to Frontier that Quick's "service was not dishonorable."  MZ Dep. 138:15-17.

While Thibodeau initially handled Quick's reemployment request in September 2014, since October 2014 Zeier was the "point person" on his reemployment, and both Zeier and her supervisor, Jaclyn Peter, were the "decision-makers with respect to Mr. Quick's reemployment." 30(b)(6) Dep. 53:9-54:21; *see also* JT Dep. 147:13-184:4. When Quick sought reemployment—and still to this today—Frontier lacks a "written"

procedure or process for reemploying a servicemember who is disabled and may need an accommodation to return to work. 30(b)(6) Dep. 35:5-37:15.

On October 1, 2014, Zeier e-mailed Quick, noting he "informed CP Thibodeau that [he] cannot hold a first class medical and that you would therefore be unable to resume any duties as a Frontier first officer." Ex. 6 to JT Dep., attached as Ex. 14. Quick immediately responded he had "informed CP Thibodeau that my military service was over and my intention to return to Frontier." *Id.* He also noted he lacked a "first class medical" clearance, but he was "open to all options." *Id.* Frontier understood "all options" to include "being reemployed in an appropriate position at Frontier." MZ Dep. 112:3-113:18. On October 7, 2014, Zeier met with Quick to discuss his options, and sent an October 14, 2014 e-mail to Quick asking him to send "a copy of the orders that [they] discussed." Ex. 16 to MZ Dep., attached as Ex. 15; *see* MZ Dep. 129:12-130:4.

In response to Zeier's October 14, 2014 request and Thiboeau's prior request for Quick to send military orders to show he satisfied USERRA's five-year service limit, on October 15, 2014 Quick e-mailed Frontier a number of military orders and forms that stated his military service was exempt from USERRA's five-year cumulative service limit or that extended a period of active duty that was expressly exempt.  Ex 17 to MZ Dep., attached as Ex. 16. On October 22, 2014, Zeier followed up with Quick about his military orders, asking him to send her military orders for a one-year period from November 2010 to November 2011 for which Quick had not yet given orders. FA940, attached as Ex. 17. In response, on October 30, 2014, Quick e-mailed Zeier "the orders [she] requested," which expressly stated the relevant one-year period of service was

exempt from USERRA's five-year limit.  FA942-943, attached as Ex. 18.  Later that day, Zeier thanked Quick for sending those orders.  FA948, attached as Ex. 19.

After October 30, 2014, Frontier did not ask Quick to provide any additional military orders or documents, nor did he provide any. 2d Quick Decl. ¶ 5.  Based on the military orders he gave to Frontier, by October 30, 2014 Frontier had sufficient information to know the vast majority of Quick's 2007-2014 military service was exempt from USERRA's five-year limit. *See* Exs. 12-13, 16-18. As Quick had only taken approximately three months of military leave from Frontier prior to June 19, 2007, 2d Quick Decl. ¶ 4, by October 30, 2014 Frontier had sufficient information to know Quick's military leave from 2007-2014 did not make him exceed USERRA's five-year limit. *See id.*; Exs. 12-13, 16-18.  By October 30, 2014, Frontier had all the information it needed to know that Quick satisfied the five requirements for an employee to be entitled to reemployment under USERRA.  *See supra* at pp. 2-6.

On November 12, 2014, Zeier informed Quick that Cassie Micklich, a Frontier HR specialist, would contact him "to begin [his] paperwork processing for return to active status" and she would "follow up with [him] about other return detail."  Ex. 20 to MZ Dep., attached as Ex. 20. On December 10, 2014, in response to Zeier's e-mail stating that Quick passed his drug/alcohol test, Quick asked to "let me know my report date to return from work," and clarified two days later: "Please give me your earliest report date as I eagerly [a]wait my return to Frontier."  Ex. 22 to MZ Dep., attached as Ex. 21.

Frontier requires employees returning from a substantial period of leave to attend a new employee orientation before they can be reemployed, and "typically" holds an

orientation "every Monday," and even when orientations are more infrequent Frontier

may "do a one-off . . . orientation for somebody so that they wouldn't have to wait a long

period of time" to return to work. MZ Dep. 50:21-52:10, 45:25-46:15. Frontier did not

schedule Quick for a new employee orientation until January 5, 2015, MZ Dep. 168:6-

170:21; Ex. 27 to MZ Dep., attached as Ex. 22 (forms filled out by Quick at January 5,

2015 orientation).  January 5, 2015 was nearly three and a half months after he first

sought reemployment.  *See* Ex. 10; MZ Dep. 138:5-10.

After he sought reemployment in September 2014, the "first pay" Quick received

from Frontier following his 2007-2014 military service was for "attendance at the new-

employee orientation."  MZ Dep. 147:19-148:10; *accord* MZ Dep. 170:22-171:5. It was

the only pay he has received from Frontier since he sought reemployment in September

2014. Quick Decl. ¶¶ 10-17; 2d Quick Decl. ¶ 6.

Frontier concedes at some point between September and December 2014 it

determined Quick fully met all five requirements to be reemployed under USERRA.  MZ

Dep. 93:11-94:14. Ordinarily, Frontier's goal is to decide if the five reemployment

requirements are met within two weeks after an employee seeks reemployment or as

soon as practicable. 30(b)(6) Dep. 31:21-32:17; MZ Dep. 48:20-49:18. Yet Frontier

concedes it did not reemploy Quick under USERRA before January 5, 2015, the day he

attended orientation—three and a half months after Quick first sought reemployment.

MZ Dep. 171:6-9, 190:6-18, 74:25-80:18; *see also* Ex. 10; MZ Dep. 138:5-10.

Frontier did not reinstate Quick's medical, vision, or dental benefits until late

January 2015, about "four months after Mr. Quick first expresse[d] interest in being

reemployed to Mr. Thibodeau," including because Frontier's HR department erroneously believed a 30-day waiting period should apply to a returning servicemember.  MZ Dep. 178:6-180:17, 183:6-185:25; Ex. 31 to MZ Dep., attached as Ex. 23; *see also* MZ Dep. 170:14-21, 177:25-178:3. By January 27, 2015, Frontier had not "done anything specifically to identify other positions that Mr. Quick would be qualified to be reemployed in," besides the first officer position that Quick could not return to due to his service-related disabilities. MZ Dep. 181:13-17; *see also* Ex. 14.

The first time after September 2014 that Frontier offered to reemploy Quick in a specific position—AOG buyer or crew scheduler—was July 2015, after this lawsuit was filed and nearly 10 months after Quick first sought reemployment. *See* 30(b)(6) Dep. 51:24-52:7; July 31, 2015 Letter From MZ to Quick, attached as Ex. 24.  Both the AOG buyer and crew scheduler positions pay significantly less than "nonflying pilot positions" that do not require the employee to fly passengers and that Quick expressed interest in returning to prior to January 5, 2015. 30(b)(6) Dep. 51:16-53:8; MZ Dep. 125:19-126:9.

From 2007 to 2014, Frontier provided pilots retirement benefits, including defined contributions that did not require the pilot to make a contribution before Frontier would deposit a portion of the pilot's monthly compensation into his defined contribution account and a 401(k) plan in which Frontier would match the contributions of pilots to their 401(k) accounts.  MZ Dep. 80:19-81:23; 30(b)(6) Dep. 114:19-116:6. Frontier understood it had an obligation under USERRA to provide make-up contributions for Quick's defined contribution and 401(k) plans for Quick's 2007-2014 period of military service.  MZ Dep. 80:19-81:23; 30(b)(6) Dep. 118:3-121:19.

Frontier did not deposit a make-up contribution into Quick's defined contribution account until July 31, 2015, 30(b)(6) Dep. 129:3-132:1; Ex. 54 to 30(b)(6) Dep., attached as Ex. 25, over three months *after* this action was filed, Compl., Dkt. No. 1, and a month *after Quick served discovery* on Defendants about his retirement contributions. Req. for Adm. to Frontier No. 19 (July 3, 2015), attached as Ex. 26; Req. for Adm. to Zeier Nos.18, 23 (July 3, 2015), attached as Ex. 27. Frontier did not start collecting information to calculate Quick's make-up defined contribution *until March 2015.* 30(b)(6) Dep. 131:2-19, 139:9-141:18. Frontier had no written policy to calculate a USERRA make-up contribution and did not "refer to" or apply "a written policy" in calculating Quick's make-up defined contribution. 30(b)(6) Dep. 123:17-125:13.

Frontier has never provided Quick with the information that would enable him to make his portion of the 401(k) contribution and receive a matching contribution from Frontier.  Quick Dep. 253:9-254:3; 2d Quick Decl. ¶ 7.  Frontier never calculated the relevant figure and thus has not made a make-up contribution to Quick's 401(k) account. 30(b)(6) Dep. 141:19-143:3, 71:8-11.  Zeier, Frontier's point person on Quick's reemployment, MZ Dep. 142:12-14, did not know if Frontier ever informed Quick on what 401(k) contributions he could make up—even though she admitted Quick has a right to receive 401(k) make-up contributions. 30(b)(6) Dep. 70:4-71:1. Frontier ordinarily provides pilots with information on the amount of their compensation that they can contribute to their 401(k) accounts. 2d Quick Decl. ¶ 8.

Since 2014, Frontier has experienced significant growth in its workforce, including its pilots (at least overall 400 positions), MZ Dep. 27:24-29:11; JT Dep. 32:5-

25, and was a profitable airline. Laura Keeney, *Frontier Airlines launches to fifth-most profitable airline in the U.S.*, Denver Post (Sept. 29, 2015), attached as Ex. 28.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment on a claim if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the issue could be resolved in favor of either party," and "[a] fact is 'material' if it might reasonably affect the outcome of the case." *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, 12 F. Supp. 3d 1355, 1358 (D. Colo. 2014) (citations omitted).

## ARGUMENT

### A.    Quick Is Entitled to Summary Judgment on His Reemployment Claim

In this Motion, Quick asks the Court to hold that Frontier violated § 4312 by failing to promptly reemploy Quick before January 5, 2015. He seeks partial summary judgment on liability for his § 4312 reemployment claim, as it is undisputed that (1) Frontier failed to reemploy him prior to January 5, 2015, and (2) long before January 5, 2015 he was entitled to be reemployed, since he met USERRA's five reemployment requirements when he applied for reemployment on September 23, 2014 and he showed Frontier no later than October 30, 2014 that he had met those requirements.[3]

Under USERRA § 4312(a), an employee who returns from military service "shall be entitled to" reemployment if he meets five basic requirements:

---

[3] Thus, in this Motion Quick does *not* seek a ruling that Frontier violated § 4312 *after January 5, 2015*. While Frontier claims it "provisionally reemployed" Quick on January 5, 2015, the date it had Quick attend new employee orientation, MZ Dep. 171:6-9, 190:6-18, 74:25-80:18, Quick will prove at trial he was *never actually* reemployed or offered an appropriate position under USERRA.

(1) he was absent from employment "by reason of service in the uniformed services[.]" 38 U.S.C. § 4312(a); 20 C.F.R. § 1002.32(a);

(2) he gave the employer "advance written or verbal notice of the uniformed service," 38 U.S.C. § 4312(a)(1); 20 C.F.R. § 1002.32(a)(1);

(3) "the cumulative length of the absence and of all previous absences" for military service with an employer "does not exceed five years" (excluding periods of service exempt under § 4312(c)), 38 U.S.C. §§ 4312(a)(2), (c); 20 C.F.R. § 1002.32(a)(2);

(4) he "submits an application for reemployment" to his employer "not later than 90 days after the completion of the period of service" in the case of a person who served "for more than 180 days," 38 U.S.C. §§ 4312(a)(3), (e)(1)(D);

(5) he was not discharged from the service under dishonorable circumstances, *see* 38 U.S.C. § 4304, 4312(a); 20 C.F.R. § 1002.32(a)(4).

It is well established that once these five requirements are met, a veteran is entitled to be "promptly reemployed" and an employer is not "permitted to delay or otherwise limit [his] reemployment rights in any way." *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 441-42 (6th Cir. 2008); *accord Brown v. Prairie Farms Dairy, Inc.*, 872 F. Supp. 2d 637, 645 (M.D. Tenn. 2012) ("[O]nce Plaintiff has satisfied the prerequisites in § 4312 . . . then Plaintiff must be reemployed, and only then, when determining the particular position in which to reemploy Plaintiff, can Defendant consider Plaintiff's qualifications."); *United States v. Nevada*, No. 3:09-CV-00314, 2012 WL 1517296, at *2 (D. Nev. Apr. 30, 2012) ("The basic entitlement to USERRA rights and benefits under § 4312 and the general right to be reemployed under § 4313 do not turn on qualifications.").  Prompt reemployment "means as soon as practicable under the circumstances of each case. Absent unusual circumstances, reemployment must occur

within two weeks of the employee's application for reemployment." 20 C.F.R. § 1002.181.

Frontier concedes these five requirements qualify a veteran to be reemployed, and there are no other requirements for a veteran to be entitled to reemployment, MZ Dep. 42:23-44:11, and that at some point between September and December 2014 it knew Quick fully met all five requirements to be reemployed. MZ Dep. 93:11-94:14.[4] Here, there is no dispute when Quick sought reemployment on September 23, 2014, he satisfied all five reemployment requirements, and shortly thereafter—but no later than October 30, 2014—he gave Frontier information that was sufficient for Frontier to confirm he satisfied all five requirements. Nevertheless, as Frontier concedes, it did not reemploy him before January 5, 2015.  MZ Dep. 171:2-9, 190:6-18, 74:25-80:18.[5]

First, the parties agree Quick's June 19, 2007 to June 28, 2014 service in the U.S. Army Reserve—an Armed Forces component—was "service in the uniformed services[.]" 38 U.S.C. § 4312(a); *see* MZ Dep. 105:25-106:7 (when Quick "serv[ed] in the Army from 2007 to 2014 [he] was performing service in the uniformed service").[6]

---

[4] Ordinarily, Frontier's goal is to determine if the five reemployment requirements are met within two weeks after an employee seeks reemployment or as soon as practicable. 30(b)(6) Dep. 31:21-32:17; MZ Dep. 48:20-49:18. This is the same standard the Department of Labor has established for employers to reemploy returning servicemembers. *See* 20 C.F.R. § 1002.181.

[5] While not necessary to resolve this motion, it is undisputed that Frontier did not offer Quick a specific position until July 31, 2015, ten months after he first sought reemployment, 30(b)(6) Dep. 51:24-52:7; Ex. 24, and he has not received any pay from Frontier since he sought reemployment except for attending orientation on January 5, 2015. MZ Dep. 147:19-148:10, 170:22-171:5; 2d Quick Decl. ¶ 6.

[6] Quick Decl. ¶¶ 4-6 & Ex. A to Quick Decl. (stating he served in the military from June 19, 2004 to June 28, 2014, and attaching military orders that state his service was in Army Reserve); 38 U.S.C. § 4303(16) ("uniformed services" includes "the Armed Forces"); *id.* § 4303(13) ("service in the uniformed services" includes "performance of duty on a voluntary or involuntary basis in uniformed service").

Second, the parties agree Quick gave "advance written [] notice" of his military service. 38 U.S.C. § 4312(a)(1). On June 18, 2007, he sent an e-mail to Frontier's Chief Pilot that "attached [his] request for military leave"—a "Department of the Army" memo to "Jim Colburn (Chief Pilot)" "[r]equest[ing]" "Quick" "be granted military leave starting 19 June 2007[.]" Ex. 6.  As Frontier agrees, the e-mail is "the kind of written notice prior to taking military leave that would be appropriate and satisfactory to invoke his right to take military leave[.]" MZ Dep. 104:14-105:24; *see* JT Dep. 113:12-115:13 (Frontier's policy is to accept written or oral notice of leave to chief pilot, assistant chief pilot or other supervisors who ordinarily pass request to HR department). Indeed, DOL regulations make clear that an "employee's notice to the employer may be either verbal or written," and "does not need to follow any particular format."  20 C.F.R. § 1002.85(c).

Third, Quick's cumulative military service during his Frontier employment did "not exceed five years," 38 U.S.C. § 4312(a)(2), as the vast majority of his 2007-2014 service was exempt under § 4312(c). *See* MZ Dep. 106:8-18 (stating Frontier determined Quick satisfied five-year limit). In response to requests that he provide military orders to show he satisfied the five-year limit, on October 15, 2014 Quick e-mailed Frontier many military orders and forms that stated his military service was exempt from USERRA's five-year limit or was extended a period of active duty that was exempt from the limit.[7] On October 22, 2014, Zeier asked Quick to send military orders

---

[7] *See* Ex 16 (10/15/14 e-mail From Quick to Zeier providing "previous DD214 and orders showing exempt from the 5 year limit, including QUICK80 that states 11/1/07 to 11/08/10 period "IS EXEMPT FROM THE 5 YEAR CUMULATIVE SERV LIMIT ON REEMPLOYMENT RIGHTS UNDER TITLE 38, USC, SEC 4312(C)(4)(B), QUICK82 that states same for 11/09/11 to 07/01/12 period, QUICK83 that states same for 06/07/2012 to 08/05/12 period, QUICK84 that states same for 08/03/12 to 09/30/12 period, QUICK 85 that states Quick is retained on active duty from 12/11/12 to 06/26/13, and QUICK86 that amends prior

for a one-year period from November 2010 to November 2011 for which Quick had not previously given orders. Ex. 17.  In response, on October 30, 2014 Quick e-mailed her the "requested" "orders" that expressly stated the one-year period was exempt from the five-year limit. Ex. 18. Thus, by October 30, 2014 Frontier knew about 6 of the 7 years of his 2007-2014 service was exempt from USERRA's five-year limit. Exs. 12-13, 16-19.

At that time, Frontier knew that prior to June 2007 Quick had only several months of military leave that would count towards the five-year limit. 2d Quick Decl. ¶ 4 (stating before June 19, 2007, he took three months of military leave from Frontier).  Since the vast majority of Quick's 2007-2014 service was exempt from the five-year limit, by October 30, 2014 Frontier had all the information it needed to know Quick had not exceeded the five-year limit. Exs. 12-13, 16-19. Indeed, thereafter Frontier did not ask him to provide any more orders and did he not provide any. 2d Quick Decl. ¶ 5.

Fourth, Quick made an "application for reemployment" to Frontier "not later than 90 days after the completion of the period of service" following his 2007-2014 service that lasted "for more than 180 days." 38 U.S.C. §§ 4312(a)(3), (e)(1)(D); *see* MZ Dep. 138:5-10 ("agree[ing] that by contacting Mr. Thibodeau on September 23rd [2014] to seek reemployment, Mr. Quick sought reemployment within 90 days after his service ended."). Quick ended his military service on June 28, 2014. Quick Decl. ¶¶ 6-7 & Ex. A to Quick Decl. (stating military orders ended on June 28, 2014, and attaching 05/23/14 Department of Army orders stating his "SCHEDULED DATE OF SEPARATION" is "28

---

order retaining Quick on active duty until 06/28/14). And though Quick received medical treatment for less than a third of the 2007-2014 service period, the period of medical treatment would be exempt if there were any question that that time would result in him exceeding the "five-year period," as he was "unable to obtain orders releasing him" and that "inability was through no fault of" Quick. 38 U.S.C. § 4312(c)(2).

JUNE 2014," and attaching Form DD214 stating "SEPARATION DATE THIS PERIOD" "2014 06 28"). And Quick contacted Frontier's chief pilot on September 23, 2014, stating he wanted to report back to work at Frontier. JT Dep. 124:17-127:11; Ex. 10 (09/23/14 E-mail informing Thibodeau "I have concluded my military service and will be reporting back to Frontier on Thursday the 25th [of September]. . . . Please let me know when and were (sic) you would like me to report on Thursday?"). Thus, his September 23, 2014 request was 87 days after his June 28, 2014 discharge—within 90 days. MZ Dep. 138:5-10. By September 25, 2014, Frontier knew Quick satisfied this requirement.[8]

Fifth, Quick was not dishonorably discharged or for any reason in 38 U.S.C. § 4304. By September 25, 2014, Frontier knew Quick's discharge was not dishonorable, as Quick sent Thibodeau his DD-214 that stated his June 28, 2014 discharge was "HONORABLE" and due to military "RETIREMENT." Ex. 13 at QUICK57.[9]

Based on these undisputed facts, by October 30, 2014 Frontier had all the information it needed to confirm that Quick met USERRA's five reemployment requirements. Yet Frontier admits it did not reemploy Quick before January 5, 2016. MZ Dep. 171:6-9, 190:6-18, 74:25-80:18; *see also* Ex. 10; MZ Dep. 138:5-10.

---

[8] As Frontier admitted, based on the "DD214[]" forms that Quick provided Frontier from late September to mid-October 2014, it was clear "his service was not dishonorable." MZ Dep. 138:15-17. On September 23, 2014, Quick told Thibodeau his last day of military service was June 28, 2014 and provided records stating June 28 was the end of his military service. QUICK 52-59 (stating "[m]y last day was 28 June 2014" and attaching "temporary disability retirement orders and DD214," including a 05/23/2014 Army order stating Quick's "EFFECTIVE DATE OF RETIREMENT" is "28 JUNE 2014"); Ex. 14 (10/01/2014 e-mail from Zeier to Quick stating "Chief Pilot Thibodeau informed me that you have contacted him about re-employment at Frontier Airlines," and Quick's response that "I informed CP Thibodeau that my military service was over and my intention to return to Frontier").

[9] *See* MZ Dep. 131:20-132:7 & Ex. 17 to MZ Dep. (stating DD214 is "the type of information that service member provides to show the period of service, that [he] was not dishonorably discharged"); JT Dep. 138:20-140:18 (Frontier requested DD214 forms to "figure out if he's qualified for reemployment" and there is "not disqualifying" service); Ex. 11 (09/24/14 e-mail asking Quick to send "military orders establishing that [] your separation or dismissal from military service was not disqualifying.").

An employee who is deployed for over 90 days must be "promptly" re-employed either: (1) in the job the employee had before he deployed; or (2) in a job of like seniority, status, and pay to that of the pre-deployment job following reasonable efforts by the employer to qualify the employee for that job. 38 U.S.C. § 4313(a)(2)(A)-(B).  If options (1) and (2) fail, then the employer must re-employ the employee in "any other position" that nearly approximates the employee's pre-deployment job with full seniority. *Id.* § 4313(a)(4); 20 C.F.R. § 1002.197. Here, Frontier admits that before late January 2015 it had not "done anything specifically to identify other positions that Quick would be qualified to be reemployed in," besides the first officer position that he could not return to due to his service-related disabilities. MZ Dep. 181:13-17; *see also* Ex. 14. Based on these undisputed facts, Frontier violated § 4312 by failing to reemploy Quick for *at least* three and a half months from the time he sought reemployment and *at least* two months after it confirmed he met all the reemployment requirements.[10]

## B.    Frontier Cannot Prevail on its Changed Circumstances Affirmative Defense

Frontier cannot establish a changed circumstances defense to Quick's § 4312 claim. *See* Amended Answer p.16 (7th Defense). This defense only applies when an "*employer's circumstances* have so changed as to make such reemployment impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A) (emphasis added).  As Frontier's labor force grew significantly and it was highly profitable since Quick's reemployment request,

---

[10] *See Petty*, 538 F.3d at 441-42; *Brown*, 872 F. Supp. 2d at 645; *Nevada*, 2012 WL 1517296 at *2; *see also Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*, 658 F.3d 85, 93 (1st Cir. 2011) (holding a one-month delay between requested return date of veteran who was entitled to be reemployed and his reemployment constituted an "unlawful[] delay[]" in violation of § 4312 and "entitled him to back-pay").

MZ Dep. 27:24-29:11; JT Dep. 32:5-25; Ex. 28, Frontier cannot claim—as a matter of law—that its *own* changed circumstances made it impossible to reemploy Quick.[11]

## C. Quick is Entitled to Summary Judgment on His § 4318 Pension Claim

USERRA § 4318 identifies "the right to pension benefits of a person reemployed" under USERRA. 38 U.S.C. § 4318(a)(1)(A). Returning veterans must be treated "as not having incurred a break in service with the employer [] by reason of such person's period or periods of service in the uniformed services[,]" *id.* §4318(a)(2)(A), making an employer "liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits" for a veteran's period of military service. *Id.* § 4318(b)(1). An employer must make its "employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service." *Id.* § 4318(b)(2). Under DOL's regulations, when "the employee is not required or permitted to contribute" to the pension plan, "an employer must make the contribution attributable to the employee's period of service no later than ninety days after the date of reemployment" or "as soon as practicable" "[i]f it is impossible or unreasonable" to make the contribution within 90 days.  20 C.F.R. §1002.262(a).

In the case of Frontier's defined contribution plan to which Frontier makes contributions into a pilot's account whether or not the pilot personally contributes, MZ. Dep. 80:19-81:23; 30(b)(6) Dep. 114:19-116:6, Frontier must provide a make-up

---

[11] *See Munoz v. InGenesis STGI Partners, LLC*, No. 14cv1547, 2016 WL 1620367, at *10-11 (S.D. Cal. Apr. 22, 2016) (changed circumstances defense applies "'where there has been an intervening reduction in force that would have included that employee'") (quoting 20 C.F.R. § 1002.139(a), and following *Nevada*, 2012 WL1517296 at *5 (stating "'[t]he purpose of the exemption is to allow employers who have eliminated a reservist's position or otherwise drastically changed their business to avoid rehiring someone for a job that no longer exists'") (quoting *Cole v. Swint*, 961 F.2d 58, 60 (5th Cir. 1992))).

contribution within 90 days after reemployment. 20 C.F.R. §1002.262(a).[12] But here, Frontier plainly failed to make a timely pension contribution to Quick within 90 days.

Quick sought reemployment on September 23, 2014.  MZ Dep. 138:5-10; JT Dep. 124:20-127:11. Between September and December 2014, Frontier determined Quick met the five requirements to be reemployed. MZ Dep. 93:11-94:14. While the parties dispute whether Quick was ever *actually* reemployed by Frontier, Frontier claims it provisionally reemployed Quick on January 5, 2015, MZ Dep. 171:6-21, 76:13-80:3; 30(b)(6) Dep. 47:16-49:5, and knew it had an obligation to calculate and provide make-up pension contributions to Quick.  MZ Dep. 80:19-81:23; 30(b)(6) Dep. 118:3-121:19.

Despite knowing it had to provide make-up pension contributions, Frontier did not provide the make-up contribution to Quick's defined contribution account until at least July 31, 2015. 30(b)(6) Dep. 129:3-132:1 & Ex. 25. Thus, Frontier did not make the contribution to Quick's account until nearly *seven months* after Frontier believes it reemployed him in January 2015, and over 10 months after Quick first sought reemployment in September 2014. In fact, Frontier did not make the contribution until three and a half months *after Quick filed this action*, Compl., Dkt. No. 1, and a month *after* he *served discovery* on Defendants about his pension contributions. Exs. 26-27.

---

[12] DOL's regulation establishing a 90-day deadline for making pension contributions should be treated as having the force of law. Its interpretation is entitled to *Chevron* deference. Congress delegated DOL authority to "prescribe regulations implementing the provisions of [USERRA]," 38 U.S.C. § 4331(a), USERRA does not clearly set a specific deadline for when pension contributions should be made, 70 Fed. Reg. 75246, 75281 (Dec. 19, 2005), and DOL's 90-day rule is a reasonable interpretation of § 4318 adopted in a final rule via notice-and-comment rulemaking. *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1108 (10th Cir. 2015) ("[s]tatutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency") (citationomitted); *Wildearth Guardians v. United States EPA*, 728 F.3d 1075, 1082 (10th Cir. 2013) (contrasting "notice-and-comment rulemaking" that receives *Chevron* deference with informal guidance that may not).

Frontier failed to make the contribution "as soon as practicable." 20 C.F.R. §1002.262(a). While Frontier knew that Quick met the requirements to be reemployed between September and December 2014, MZ Dep. 93:11-94:14, it did not even begin *to collect the information* to calculate his make-up defined contribution *until March 2015.* 30(b)(6) Dep. 131:2-19, 139:9-141:18. Thus, for over five months after Quick sought reemployment, Frontier did *nothing* to even begin the process of calculating his make-up contribution. It is no surprise Frontier sat on its hands for nearly half a year before collecting the information to calculate Quick's make-up defined contribution. Its 30(b)(6) witness—who calculated Quick's contribution—testified "there's no written policy" for calculating a make-up contribution under USERRA and he did not "refer to" or apply "a written policy" in calculating Quick's make-up contribution. 30(b)(6) Dep. 123:17-125:13.

Finally, Frontier violated § 4318 by refusing to provide any make-up contribution to Quick's 401(k) account.  Although Quick repeatedly asked Frontier to inform him of the amount *he* can contribute to his 401(k) plan for his 2007-2014 military service, Frontier never provided him with the information that would enable him to make his portion of the 401(k) contribution and receive a matching contribution from Frontier. Quick Dep. 253:9-254:3; 2d Quick Decl. ¶ 7.  Indeed, Frontier's 30(b)(6) witness—who was responsible for Quick's make-up contributions—said that Frontier never calculated the relevant figure and thus has not made a make-up contribution to Quick's 401(k) account. 30(b)(6) Dep. 141:19-143:3; *accord* MZ Dep. 71:8-11.  Zeier, Frontier's point person on Quick's reemployment, MZ Dep. 142:12-14, did not know if Frontier ever

informed Quick on what 401(k) contributions he could make up—although she admitted Quick has a right to make up contributions for his 401(k). 30(b)(6) Dep. 70:4-71:1.

By refusing to provide Quick with the information that he needs to make his portion of make-up contributions to his 401(k) account, Frontier deprived him of his § 4318 rights, and also impermissibly "establish[ed]" an "additional prerequisite[] to the exercise of" his § 4318 "right[s]."  38 U.S.C. § 4302(b). While an employer's contribution is contingent on the employee making his own make-up contribution (in a plan where employees must contribute to receive an employer's matching contribution), 38 U.S.C. § 4318(b)(2); 20 C.F.R. §1002.262(c), § 4318 contemplates that an employer must give an employee information so he knows the amount he can contribute and the employer will match.  Indeed, § 4318 expressly requires contributions to be made "in the same *manner* and to the *extent*" as for employees who are not serving in the military. 38 U.S.C. § 4318(b)(1) (emphasis added). Frontier ordinarily tells pilots the amount of their compensation they can contribute to their 401(k) accounts. 2d Quick Decl. ¶ 8.

## CONCLUSION

For the reasons stated above, the Court should grant Quick's motion.

September 9, 2016                                        Respectfully submitted,

| | |
|---|---|
| /s/ Peter Romer-Friedman<br>Peter Romer-Friedman<br>Outten & Golden LLP<br>718 7th Street NW<br>Washington, DC 20001<br>prf@outtengolden.com | Joseph A. Whitcomb, Esq.<br>Brandon M. Selinsky, Esq.<br>Daniel C. McAuliffe, Esq.<br>Whitcomb, Selinsky, McAuliffe, PC<br>1391 Speer Blvd., Suite 705<br>Denver, CO 80204<br>joe@whitcomblawpc.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2016, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record in this action.

/s/ Peter Romer-Friedman
Peter Romer-Friedman
Outten & Golden LLP
718 7th Street NW
Washington, DC 20001
prf@outtengolden.com